

IN THE CIRCUIT COURT OF THE EIGHTH  JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,                                   CASE NO:   00-2753-CFA
    Plaintiff,                                                      00-2660-CFA
vs

BRIAN HERLIHY,
    Defendant.
_____/

## UNNOPOSED MOTION TO CONTINUE TRIAL

COMES NOW, the Defendant, **BRIAN HERLIHY**, by and through his undersigned

attorneys, and files this Motion to Continue the trial presently set for February, 2002, and

the Defendant says as follows:

1.    The Defendant is charged with First Degree Murder and in excess of 100

state witnesses were listed by the State Attorney's Office in their response

for the Defendant's demand for discovery previously filed in this cause.

2.    Assistant State Attorney, Jeanne Singer, and undersigned counsel actually

had a meeting several weeks ago wherein both the state and the defense

attempted to "trim down" the witness list and at this time it is believed that

there are still approximately fifty witnesses yet to depose in this cause.

3.    The last time that we were in Court on a Motion to Continue this trial, this

Honorable Court stated to both the state and the defense that..."if we needed

another continuance to just file it and let the Court know".

4.    The Defendant has already waived his right to a speedy trial and remains in

custody both on these charges and on local charges in South Florida.

5.    Undersigned counsel has spoken to Assistant State Attorney, Jeanne Singer,

and she states that she has no objection to the Court granting this motion.

**WHEREFORE,** the Defendant, **BRIAN HERLIHY,** respectfully moves this Honorable

Court to grant this Motion to Continue.

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been

delivered via Hand Delivery to Jeanne Singer, Esquire, State Attorney's Office, P.O. Box

1437, Gainesville, Florida 32602, on this _6_ day of November, 2001.

LAW OFFICES OF GROLAND, QUIRK & SALTER, P.A.

**Gordon H. Groland, Esquire**
Florida Bar #137259
Post Office Box 2848
Gainesville, FL  32602
Phone: (352) 373-4669
Fax: (352) 373-2885

**IN THE CIRCUIT COURT OF THE EIGHTH  JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA**

STATE OF FLORIDA,                              CASE NO:   00-2753-CFA
    Plaintiff,                                                  00-2660-CFA

vs

BRIAN HERLIHY,
    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO CONTINUE

**THIS CAUSE** having come on to be heard before me upon the Unopposed Motion

to Continue filed herein by the Defendant, Brian Herlihy, and after hearing argument of

counsel and having no objection to this motion from the Office of the State Attorney, and

after taking into account the State has listed more than 100 witnesses in this case, many

of whom still need to be deposed, it is considered :

**ORDERED AND ADJUDGED** that the Defendant's Motion be and the same is

hereby granted and this case is rescheduled for Pre-Trial Conference on March 20, 2002

at 1:30 am/pm with trial to be scheduled commencing the week of May 13, 2002

**DONE AND ORDERED** in Chambers on this 30 day of November, 2001.

_____
Circuit Court Judge

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been
furnished by US Mail to: Gordon H. Groland, Esquire, PO Box 2848, Gainesville, FL 32602
and to Jeanne Singer, State Attorney's Office, PO Box 1437, Gainesville, FL 32602 this
___day of November, 2001.

_____
Judicial Assistant

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,                          CASE NO:   00-2753-CFA
    Plaintiff,                                       00-2660-CFA

vs

BRIAN HERLIHY,                      FILED IN OPEN COURT
    Defendant.                          11·30, 2001
_____/         S·Hill c
                                  D.C.

## ORDER GRANTING DEFENDANT'S MOTION TO CONTINUE

THIS CAUSE having come on to be heard before me upon the Unopposed Motion

to Continue filed herein by the Defendant, Brian Herlihy, and after hearing argument of

counsel and having no objection to this motion from the Office of the State Attorney, and

after taking into account the State has listed more than 100 witnesses in this case, many

of whom still need to be deposed, it is considered :

ORDERED AND ADJUDGED that the Defendant's Motion be and the same is

hereby granted and this case is rescheduled for Pre-Trial Conference on March 28, 2002

at 1:30 am/pm with trial to be scheduled commencing the week of May 13, 2002

May & Trial Stats?

DONE AND ORDERED in Chambers on this 30 day of November, 2001.

_____
Circuit Court Judge

I HEREBY CERTIFY that a true and correct copy of the foregoing has been
furnished by US Mail to: Gordon H. Groland, Esquire, PO Box 2848, Gainesville, FL 32602
and to Jeanne Singer, State Attorney's Office, PO Box 1437, Gainesville, FL 32602 this
__day of November, 2001.

_____
Judicial Assistant

0000076

### IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
### IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,                           CASE NO:    **2000-2753-CFA**
     **Plaintiff,**                                                                  **2000-2660-CFA**

. **vs**

**BRIAN HERLIHY,**
.    **Defendant.**
_____/

### MOTION FOR COURT ORDER ALLOWING DEFENDANT
### TO GET COPIES OF CHILD PROTECTION TEAM RECORDS

    **COMES NOW** the Defendant, **BRIAN HERLIHY,** by and through undersigned

counsel, and files a Motion for a Court Order directing the Child Protection Team to

turn over records to the Defendant, and we say as follows:

    1.    That in response to the Defendant's demand for full discovery in this

cause, and following a conversation with the Assistant State Attorney assigned to this

case, it appears that there are medical records relevant to this case that are in the

custody of the Child Protection Team and those records are necessary for undersigned

counsel to determine what further discovery and/or depositions should be taken of

experts, including medical experts in this cause.  These records are of the examination

and interview of the examination of the alleged victim, Robbie Quirello, age 4 months.

    2.    The State does not have an objection to the Court granting this Motion.

    **WHEREFORE**, the Defendant, **Brian Herlihy,** respectfully moves this

Honorable Court to grant this Motion.

    **I HEREBY CERTIFY** that a copy of the foregoing has been furnished by US
Mail/Hand Delivery to Jeanne Singer, Esquire, State Attorney's Office, PO Box 1437,
Gainesville, FL 32062, on this ⟩/ day of January, 2002.

Filed _January 22 2002_
Clerk of Circuit Court and County Court
    Alachua county, Florida
By: _____ Date: _1-23-02_
    __ Deputy Clerk

**LAW OFFICES OF GROLAND, QUIRK P.A.**

_____

**Gordon H. Groland, Esquire**
Florida Bar #137259
Post Office Box 2848
Gainesville, FL  32602
(352) 373-4669 / 373-2885

0000077

**IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT,
IN AND FOR ALACHUA COUNTY, FLORIDA**

**STATE OF FLORIDA**
**Plaintiff,**

**CASE NO.   00-2753-CFA**
**00-2660-CFA**

**vs.**

**BRIAN HERLIHY**
**Defendant.**

_____/

## UNOPPOSED MOTION TO CONTINUE TRIAL

**COMES NOW,** the Defendant, **BRIAN HERLIHY**, by and through his undersigned

attorney's and files this second Unopposed Motion to Continue the trial presently set for the

week of May 13, 2002, and the Defendant says as follows:

1.     The Defendant is charged with first degree murder and there are in excess of

100 state witnesses were listed by the State Attorney's Office in response to the Defendant's

demand for Discovery previously filed in this case. In addition, other supplemental

witnesses have been added the State's original response.

2.     As of the date of the filing of this Motion, the State has received a supplemental

witness list wherein the Defense has listed as a potential expert witness, John Plunkett,

M.D., from Hastings Minnesota. Arrangements have still not been made to take the expert

witnesses' depositions, but the State will be setting those depositions in the near future.

3.     In addition, a new attorney has joined the Law Firm of undersigned counsel,

Daniel W. Clark, Esquire, will be working together with undersigned counsel on this case

and he needs additional time to take further depositions and otherwise familiarize himself

with this file.

4.     The Defendant, *BRIAN HERLIHY*, is still in custody in South Florida on local

charges in that jurisdiction.

5.    Undersigned counsel has spoken to Assistant State Attorney Jeanne Singer

and she indicates that she has no objection to the Court granting this Motion. The

Defendant has already waived his right to a speedy trial in this cause.

*WHEREFORE*, the Defendant, ***BRIAN HERLIHY***, respectfully moves this Honorable

Court to grant this motion to Continue.

*I HEREBY CERTIFY* that a true and correct copy of the foregoing has been furnished

via US Mail/Hand Delivery to Jeanne Singer, Esquire, State Attorney's Office, P.O. Box

1437, Gainesville, Florida 32602 on this $\underline{3\ 1}$ day of January, 2002.

**GROLAND & QUIRK, P.A.**

**Gordon H. Groland, Esquire**
Florida Bar No.  137259
P.O. Box 2848
Gainesville, FL 32602
352-373-4669 / 373-2885 Fax

EIGHTH JUDICIAL CIRCUIT

ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA

Filed in Open Court

-vs-

*Brian Herlihy*
          Defendant

Date

_____

Deputy Clerk

## FIRST APPEARANCE ORDER
*Amended    As To Bail*

Defendant was before the Court on this date for First Appearance and was fully advised as required by Florida Rules of Criminal Procedure 3.130(b). Having considered all available relevant information necessary to determine the conditions of Defendant's release, and finding probable cause except as indicated below, it is

ORDERED and ADJUDGED that:

(   )   The State Attorney shall provide additional evidence to the Court within 72 hours to establish probable cause as to the following charges.

(   )   The Defendant be held without bail.

( ✓ )   The Defendant be released on standard conditions (F.S. 903.047) and the following conditions:

| CASE NUMBER | CHARGE: | CIRCLE ONE | AMOUNT |
|---|---|---|---|
| 2000-2660-CFA | - Aggravated Child Abuse | ROR / BAIL | $ 100,000 ∞ |
| | | ROR / BAIL | $ |
| 2000-2753-CFA | Murder First Degree (vop) | ROR / BAIL | $ 1,000,000 ∞ |
| | | ROR   BAIL | $ |

(   )   To the supervision of Court Alternatives, Pretrial Services Program, and maintain contact as instructed.

(   )   Screen for substance abuse and participate in treatment as indicated.

(   )   To Court Alternatives, Maximum Supervision Program, participate as instructed.

(   )   Have no contact with victim.

(   )   Maintain alternate residence.

(   )   Other special conditions: _____

_____

APPOINTMENT OF COUNSEL:

(   )   The Court preliminarily finds the Defendant is eligible for and appoints the Office of the Public Defender, pending the filing of a financial affidavit and payment of the $40.00 application fee within seven (7) days of this order pursuant to F.S. 27.52.

(   )   The Court finds the Defendant does NOT qualify for the Public Defender.

(   )   The Court appoints the Office of the Public Defender for First Appearance only.

( ✓ )   The Defendant represents he/she will consult private counsel.

DONE AND ORDERED at Gainesville, Alachua County, Florida, ____*15*____ day, day of, *March* month

*2002*
year

_____
COUNTY/~~CIRCUIT~~ JUDGE

Jeanne D. Crenshaw

EIGHTH JUDICIAL CIRCUIT

STATE OF FLORIDA

-vs-

HEALTHY, BRIAN PATRICK

Defendant

## FIRST APPEARANCE ORDER

Defendant was before the Court on this date for First Appearance and was fully advised as required by Florida Rules of Criminal Procedure 3.130(b). Having considered all available relevant information necessary to determine the conditions of Defendant's release, and finding probable cause except as indicated below, it is

ORDERED and ADJUDGED that:

( ) The State Attorney shall provide additional evidence to the Court within 72 hours to establish probable cause as to the following charges.

( ) The Defendant be held without bail.

(✓) The Defendant be released on standard conditions (F.S. 903.047) and the following conditions:

| CASE NUMBER | CHARGE | CIRCLE ONE | AMOUNT |
|---|---|---|---|
| 2006002660CFA 001 AGGRAVATED CHILD ABUSE | | ROR / BAIL | $1,000.00 |
| CAPIAS/WARRANT REASON: Court Ordered | | | |
| 2006002753CFA 001 MURDER FIRST DEGREE (VOP) | | ROR / BAIL | $100,000.00 |
| CAPIAS/WARRANT REASON: Court Ordered | | | |

( ) To the supervision of Court Alternatives, Pretrial Services Program, and maintain contact as instructed.

( ) Screen for substance abuse and participate in treatment as indicated.

( ) To Court Alternatives, Maximum Supervision Program, participate as instructed.

( ) Screen for Day Reporting Program and release upon acceptance to participate as directed.

( ) Have no contact with victim.

( ) Maintain alternate residence.

( ) Other Special Conditions:_____

_____

Page 1 of 2

APPOINTMENT OF COUNSEL:

( ) The Court preliminarily finds the Defendant is eligible for and appoints the Office of the Public Defender, pending the filing of a financial affidavit and payment of the $40.00 application within seven (7) days of this order pursuant to F.S. 27.52.

( ) The Court finds the Defendant does NOT qualify for the Public Defender.

( ) The Court appoints the Office of the Public Defender for First Appearance only.

(✓) The Defendant represents he/she will consult private counsel. Gordon Kaaland - notify.

DONE AND ORDERED at Gainesville, Alachua County, Florida, on March 15, 2002.

[signature]
COUNTY/CIRCUIT JUDGE

Jeanne D. Crenshaw

___ I.D. Photo not received ✓ Original I.D. Photo in Case No. 2000-2660-CFA

OBTS #: 010203736          Eighth Judicial Circuit

H___ for : _____

Name: HERLIHY, BRIAN PATRICK                    Suffix:     2100
Address: 19401 NW 10TH ST                                   J2-2858
         PEMBROOKE PINES    FL 33029
Birth Place: US FT. Bragg, N.C.          Citizenship: Yes
Race: W  Sex: M  Height: 510  Weight: 185  Hair: BRO  Eyes: BRO  DOB: 10/11/1970
Driver License: FL-H640075703710         SSN: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
Distinguishing Marks: SCAR OVER RT EYE
Bus. Address: Unemployed
SPN: 1993-000969  SO ID/AGNCY #:93-00345
Hm. Phone: (352)271-0466             Bus. Phone: (352)371-3171
Next of Kin: Fiance: Susan Simone Scott  Same address + PX #
-----------------------------------------------------------------------
New/Updated Information :

Home PX : 954-442-1826

        Alternate # : 305-621-0420


        Defendant was transported to ASO DOJ by
State Extraditions.

                                                              MAR 15

-----------------------------------------------------------------------
Juvenile Parents          Address          Phone          Notified

-----------------------------------------------------------------------
Arr. Date | Arr. Time | Arr. Location | Book Date | Book Time | Book Location
3/14/02   | 2035      | ASO DOJ       | 3/14/02   | 2045      | ASO DOJ

Capias Number : 200002660CFA             Booking Number : _____
001   AGGRAVATED CHILD ABUSE             Issue Date 07/20/2001
                                         02-3609
Bail Information:    $100,000.00          Issuance Note: DO NOT ADJUST
     Special Conditions:
          SPECIAL CONDITIONS; NOT SUBJECT TO ADJUST AT FIRST
          APPEARANCE. NO CONTACT WITH THE VICTIM'S FAMILY
          NO CONTACT WITH THE VICTIM IN BROWARD COUNTY. LIVE
          WITH PARENTS. BLANKET BOND W 00-2753-CFA/TURNER
Reason : Court Ordered                   Judge:  LARRY G TURNER
Release Option : Bond Amount /Blanket Bond
-----------------------------------------------------------------------



JAPDMIT    Page : 1 of 2
White: Court    Pink: Agency Copy    Yellow: SAO    Gold: Defendant

SPN: 1993000969   HERLIHY, BRIAN PATRICK

--------------------------------------------------------------------------

Capias Number : 200002753CFA
001   MURDER FIRST DEGREE

Bail Information: $1,000,000.00
Reason : Court Ordered
Release Option : Bond Amount /Blanket Bond

Booking Number :  _____
Issue Date 07/20/2001

*02-3610*

Issuance Note: DO NOT ADJUST
Judge:   LARRY G TURNER

--------------------------------------------------------------------------

02 MAR 15 AM 8: 13

Prepared by: DAVIS, MARY
I swear and affirm that to the best of
my knowledge and belief the defendant
named herein is the subject wanted for
the above listed Warrant(s)/Capias and have executed same by arresting
this defendant this date.

Name : *B. L. Wallace*

signed *B. L. Wallace*

JAPDMIT     Page : 2 of _2_   Alachua County Sheriff Deputy ID # *C48*
White: Court   Pink: Agency Copy   Yellow: SAO   Gold: Defendant

000004

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,                          CASE NO:   00-2753-CFA
          Plaintiff,                                  00-2660-CFA

vs

BRIAN HERLIHY,
          Defendant.
_____/

## MOTION TO REINSTATE PREVIOUS BOND

COMES NOW, the Defendant, **BRIAN HERLIHY**, by and through his undersigned

attorneys, and files this Motion to Reinstate the Defendant's previous bond set at $50,000,

and the Defendant says as follows:

1.    The Defendant's previously set bond at $50,000 was revoked by this

      Honorable Court on July 20, 2001, after the Defendant was arrested for new

      charges in Broward County, Florida.

2.    In fact, this was the second time the Defendant had his bond revoked by this

      Honorable Court. The first time the Defendant's bond was revoked was

      following a misdemeanor for violation of an injunction in Broward County,

      Florida. That charge was later dismissed by the Broward County State

      Attorney's Office. Thereafter, the State filed a second motion to revoke the

      Defendant's bond which was based upon an allegation that the Defendant

      had violated an injunction on a second occasion by re-contacting his ex-

      girlfriend (relative to clothing and other personal items that the girlfriend had

      in her possession which Brian Herlihy wanted returned to him). It was Brian

      Herlihy's position that law enforcement had permitted him to re-contact the

      ex-girlfriend by phone for the purposes of retrieving his personal items only.

3.    In fact, after being arrested on these new local charges in Broward County,

      the Defendant remained in jail in South Florida for some 10 (ten) months,



GCCCJ05

and on Tuesday, March 5, 2002, the jury, after deliberating for approximately 30 minutes, found Brian Herlihy not guilty of all charges.

4.    The Defendant was immediately returned to Alachua County and the Defendant remains in the Alachua County Detention Center at this time with bond set at $1,000,000.

5.    The Defendant is specifically, and most respectfully, asking that this Honorable Court reinstate his original $50,000 bond in this case since the sole basis for the revocation of that bond has resulted in a not guilty verdict by the jury who heard that case on March 5, 2002.

**WHEREFORE,** the Defendant, **BRIAN HERLIHY**, respectfully moves this Honorable Court to grant this Motion.

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been delivered via Hand Delivery to Jeanne Singer, Esquire, State Attorney's Office, P.O. Box 1437, Gainesville, Florida 32602, on this _27_ day of March 2002.

LAW OFFICES OF GROLAND & ASSOCIATES, P.A.

**Gordon H. Groland, Esquire**
Florida Bar #137259
Post Office Box 2848
Gainesville, FL 32602
Phone: (352) 373-4669
Fax: (352) 373-2885

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

FILED

STATE OF FLORIDA,
     Plaintiff,

vs.

Case Nos: ~~2000-0273-CFA~~
2000-2753-CFA
2000-2660-CFA

BRIAN HERLIHY,
     Defendant.

## MOTION FOR ORDER ALLOWING ISSUANCE OF SUBPOENAS DUCES TECUM FOR EMPLOYMENT AND EDUCATIONAL RECORDS OF DEFENDANT

**COMES NOW,** the State of Florida, by and through undersigned counsel, pursuant to Rule 3.220, Fla. R. Cr. P., and hereby moves this court for entry of an order allowing issuance of subpoenas duces tecum for employment and educational records of Defendant Brian Herlihy, and in support of said motion states:

1. The victim in this case, _____, was a four-month-old child who died from having been shaken excessively. Said shaking caused cranial and retinal hemorrhaging.

2. The Defendant, Brian Herlihy, was the only person present when the child first exhibited signs of distress from injuries to his brain.

3. Upon questioning by Detective Helen Legall of the Gainesville Police Department following the admission of the child to the hospital, the Defendant stated that: He knew how to administer cardio-pulmonary resuscitation and that while he was speaking with the 911 operator waiting for emergency medical care to arrive for the child, he "checked the child's airway for obstructions" and did a "sweep" of his mouth; that upon arrival of the paramedics at the apartment where he and the child were located, he "bagged" the child to assist him with breathing; he had graduated from nursing school at Palm Beach Community College; he stated to the child's mother that he was a nurse on the neo-natal floor at Shands Hospital; he was a paramedic; he learned to be a paramedic in the United States Navy; he had worked as a medical technician at Cedar's Sunrise Hospital in Miami, Florida; and that he worked at Dearing Hospital in Miami, Florida.

4. The Defendant's training in medicine and knowledge of medical procedures is relevant to the material facts surrounding his actions toward the deceased child immediately prior to his injury and treatment by emergency medical personnel.

5. Documentary evidence pertaining to the Defendant's statements to Detective Legall, Crystal Quirello, Kevin Putansu, and other witnesses regarding his medical training and experience is relevant and subject to discovery in this matter. State v. Johnson, 27 Fla. L. Weekly S250 (Fla. March 21, 2002), State v. Fahner, 794 So.2d 712 (Fla. 3d DCA 2001).

6. The information sought by the State is neither onerous nor burdensome upon the entities from which the information is requested.

**WHEREFORE,** the State of Florida requests authorization for the issuance of subpoenas duces tecum to:

Palm Beach Community College for educational records of Brian Herlihy

Cedars Sinai for employment records of Brian Herlihy

Shands Hospital for employment records of Brian Herlihy

Dearing Hospital for the employment records of Brian Herlihy

The United States Navy for the training records of Brian Herlihy.

WILLIAM P. CERVONE
STATE ATTORNEY

BY: JEANNE M. SINGER
Assistant State Attorney
Florida Bar No. 0243604
120 W. University Avenue
Gainesville, Florida 32601

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U. S. Mail to Gordon Groland, Esq., Post Office Box 2848, Gainesville, FL 32602 this _15_ day of _April_____, 2002.

Jeanne M. Singer
Assistant State Attorney

2

IN THE CIRCUIT COURT OF FLORIDA EIGHTH JUDICIAL CIRCUIT, IN AND FOR
ALACHUA COUNTY FLORIDA

STATE OF FLORIDA            Case Number: 01-2000-02753-CFA
      Plaintiff,

                                 DIVISION II

vs.

BRIAN PATRICK HERLIHY
Defendant.                   Motion to Continue Trial Term

TO: Gordon Groland, Esquire

Please take notice that the State of Florida, by and through its undersigned attorney, will

call up for hearing the above-captioned cause on Motion to Continue Trial Term, before Martha

Ann Lott of the Eighth Judicial Circuit, on July 11, 2002 at 8:45 A.M. located at the Alachua

County Courthouse, in Room 3-D, Gainesville, Alachua County, Florida.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

hand/mail delivery to GORDON H. GROLAND, ESQ this **26** day of June, 2002.

JEANNE M. SINGER
Assistant State Attorney
Florida Bar No.: 0243604
PO BOX 1437
GAINESVILLE, FL 32602

cc:     Gordon Groland, Esquire

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,
          Plaintiff,

v.                             Case No.  2000-2753 CFA
                                     Division II

BRIAN PATRICK HERLIHY
          Defendant.

## MOTION TO CONTINUE CAUSE

COMES NOW, The State of Florida, by and through the undersigned Assistant State Attorney, pursuant to Rule 3.190 Florida Rules of Criminal Procedure and respectfully requests this Court continue the trial scheduled to take place during the August Trial Term, commencing on Monday, August 9, 2002 and says:

1.     The State of Florida, in issuing subpoenas for trial during the above trial term, has been advised that an essential expert witness will be outside of the continental United States and otherwise unavailable during this time period. This witness is Bernard Maria, M.D. the pediatric neurologist who attended _____, the deceased child who is the subject of this cause and whose expert opinion is critical to proving the criminal act of aggravated child abuse resulting in death (Murder in the First Degree). Dr. Maria is currently Chief of Pediatric Neurology at the University of Missouri.

2.     This is the first request for continuance made by the State of Florida in this cause. This motion is filed in good faith and not for purposes of delay.

WHEREFORE, the State of Florida moves this Court to continue the above-styled cause to the next appropriate trial term.

FILED in good faith this 26th day of June 2002.

                             WILLIAM P. CERVONE
                             STATE ATTORNEY

                             Jeanne M. Singer
                             Chief Assistant State Attorney
                             Fla. Bar No. 0243604
                             P.O. Box 1437
                             Gainesville, Florida 32602

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Gordon Groland, Esq., counsel for the defendant, Herlihy, by interoffice delivery this 26th day of June, 2002.

                             Jeanne M. Singer
                             Chief Assistant State Attorney

2002 JUN 26 PM 3: 24

FILED OF CIRCUIT COURT
COUNTY COURT
ALACHUA COUNTY, FL.

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,
          Plaintiff,

v.                        Case No.   2000-2753 CFA
                                 Division II

BRIAN PATRICK HERLIHY
          Defendant.

## ADDENDUM TO MOTION TO CONTINUE CAUSE

       COMES NOW, The State of Florida, by and through the undersigned Assistant State Attorney, pursuant to Rule 3.190 Florida Rules of Criminal Procedure and respectfully adds the following information to the State's earlier request of this Court to continue the trial scheduled to take place during the August Trial Term, commencing on Monday, August 9, 2002 and says:

       1.    The State of Florida, in issuing subpoenas for trial during the above trial term, has been advised that a second essential expert witness will be unavailable to appear as a witness during the time period scheduled for trial. This witness is John Hellrung, M.D. the pediatrician who attended          ), the deceased child who is the subject of this cause and whose expert opinion is critical to proving the criminal act of aggravated child abuse resulting in death (Murder in the First Degree). Dr. Hellrung is scheduled to be in California during the trial term.

       WHEREFORE, the State of Florida moves this Court to continue the above-styled cause to the next appropriate trial term.

       FILED in good faith this 27th day of June 2002.

                              WILLIAM P. CERVONE
                              STATE ATTORNEY

                              Jeanne M. Singer
                              Chief Assistant State Attorney
                              Fla. Bar No. 0243604
                              P.O. Box 1437
                              Gainesville, Florida  32602

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Gordon Groland, Esq., counsel for the defendant, Herlihy, by interoffice delivery this 27th day of June, 2002.

                              Jeanne M. Singer
                              Chief Assistant State Attorney

### IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
### IN AND FOR ALACHUA COUNTY, FLORIDA

**STATE OF FLORIDA,**          **CASE NO.:  2000-2753-CFA** ·
   **Plaintiff,**                           **2000-2660-CFA** ·

**vs.**

**BRIAN HERLIHY,**
   **Defendant.**
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR COURT ORDER ALLOWING
## CHILD PROTECTION TEAM TO TURN OVER COPIES OF RECORDS

 *THIS CAUSE,* having come before this Court on the Defendant's Motion for a

Court Order directing the Child Protection Team to turn over records to the Defendant's

attorney as relates to  _ _ _ _     _, age 4 months, and after hearing argument of

counsel, and having no objection thereto from the Office of the State Attorney, it is

considered:

 *ORDERED AND ADJUDGED* that the Defendant's Motion be and the same is

hereby *GRANTED,* and either the Child Protection Team or the Office of the State

Attorney, shall make all records relating to  _ _ _ _ _ _     ) available to the Attorney for

the Defendant, *Brian Herlihy.*

 *DONE AND ORDERED* in Chambers in Gainesville, Alachua County, Florida,

on this 2 6 day of _____Aug_____, 2002.

**MARTHA ANN LOTT**
Circuit Court Judge

 *I HEREBY CERTIFY* that a copy of the foregoing has been furnished by US
Mail/Hand Delivery to Jeanne Singer, Esquire, State Attorney's Office, PO Box 1437,
Gainesville, FL 32062, and to Gordon H. Groland, P.O. Box 2848, Gainesville, Florida,
32602, on this 2 6 day of ___August___, 2002.

Judicial Assistant



**IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA**

**STATE OF FLORIDA,**  **CASE NO: 2000-2753-CFA**
**Plaintiff,**  **2000-2660-CFA**

vs.

**BRIAN HERLIHY,**
**Defendant.**

_____/

## DEFENDANT'S MOTION IN LIMINE

**COMES NOW** the Defendant, **Brian Herlihy,** by and through his undersigned

attorney, and files this Motion in Limine directed to the following issues, and the

Defendants says as follows:

I   BRIAN HERLIHY'S IDENTITY, PREVIOUSLY KNOWN TO THE GAINESVILLE
    POLICE DEPARTMENT, SHOULD BE EXCLUDED.

    1.   It has been testified to by various members of the Gainesville Police

        Department at deposition that the Defendant, Brian Herlihy, and the name,

        Brian Herlihy, were known to the Gainesville Police Department prior to

        August 2, 2000.

    2.   The Defendant, through counsel, moves this Honorable Court for an Order

        prohibiting any mention of knowledge of the Defendant, Brian Herlihy, or any

        previous contacts with him, however innocent, by members of the

        Gainesville Police Department during this trial.

II   BRIAN HERLIHY'S AFFINITY FOR, AND COLLECTION OF, FIREFIGHTER
     AND/OR PARAMEDIC, OR NURSING MEMORABILIA, INCLUDING CLOTHING,
     DECALS, AND OTHER ITEMS, INCLUDING HIS LICENSE TAG, SHOULD BE
     EXCLUDED.

    3.   It has been testified to at deposition that the Defendant has been observed

State v. Herlihy
Case No.: 2000-2753-CFA / 2000-2660-CFA
Motion in Limine
Page 2

>       wearing and/or possessing fireman apparel and/or memorabilia, when in fact
>
>       he is not a fireman or a nurse.
>
> 4.    Defendant moves this Honorable Court to prohibit the State to testifying to
>
>       such observations because said testimony is irrelevant and potentially ·
>
>       prejudicial, because it shows a prior bad act, namely the prior bad act of
>
>       fabrication.

III     THE GAINESVILLE POLICE DEPARTMENT'S DEMONSTRATION OF A
        DEMONSTRATION SHOULD NOT BE PERMITTED.

> 5.    Following the Defendant's statement at the Gainesville Police Department,
>
>       he was taken back to his apartment at approximately 6:00 p.m. where he
>
>       offered to do a <u>video demonstration</u> of how the incident under investigation
>
>       occurred.   He demonstrated what happened and his explanation and
>
>       demonstration were videotaped.  Police later discovered that the videotape
>
>       camera malfunctioned and there is no videotape available.  It is anticipated
>
>       that officers of the Gainesville Police Department will attempt at trial to re-
>
>       create and demonstrate Defendant's demonstration, which should not be
>
>       permitted because it is too remote, subject to individual and subjective
>
>       interpretation, and is highly susceptible of being inaccurate.

IV      DEFENDANT'S STATEMENT TO VARIOUS INDIVIDUALS THAT HE WAS
        EMPLOYED IN VARIOUS ENDEAVORS, WHICH REPRESENTATIONS WERE
        FALSE, SHOULD BE EXCLUDED.

> 6.    The Defendant argues that prior bad acts, including the bad act of
>
>       fabrication are prejudicial, potentially inflammatory, irrelevant, and should be

State v. Herlihy
Case No.: 2000-2753-CFA / 2000-2660-CFA
Motion in Limine
Page 3

inadmissible and excluded.

V       THE EIGHT POLAROID PHOTOGRAPHS OF THE INSIDE OF DEFENDANT'S
        APARTMENT TAKEN BY MEMBERS OF THE GAINESVILLE POLICE
        DEPARTMENT ON AUGUST 2, 2000 DO NOT ACCURATELY DEPICT THAT
        APARTMENT AS IT WAS AT THE TIME OF THE INCIDENT UNDER
        INVESTIGATION AND THEREFORE SHOULD BE EXCLUDED.

        7.     Various witnesses, including both lay witnesses and members of the

               Gainesville Police Department, have testified at deposition that the

               apartment in question looked different that afternoon than it did that morning

               when the incident occurred. Witnesses have testified that the bed had been

               moved and the apartment had been cleaned up, and there were no pillows

               noted at the footboard of the bed, whereas pillows were depicted in the eight

               polaroid photographs taken. Therefore, the photographs later taken do not

               accurately depict the scene, and should be excluded.

VI      THE DEFENDANT, BRIAN HERLIHY, WHILE BEING QUESTIONED BY
        OFFICERS FROM THE GAINESVILLE POLICE DEPARTMENT, MADE MANY
        STATEMENTS WHICH ARE NEITHER ADMISSIONS, NOR CONFESSIONS, AND
        ARE OTHERWISE IRRELEVANT HEARSAY, WITHOUT AN EXCEPTION, AND
        SHOULD THEREFORE BE STRICKEN OR REDACTED.

        8.     The Defendant allegedly made statements to Detective Helen Legall for

               three hours on August 2, 2000 from approximately 1:00 p.m. to 4:00 p.m.,

               and then later from approximately 4:00 p.m. to approximately 7:00 p.m. He

               also made statements to  Detective Helen Legall on August 3, 2000 from

               approximately 11:00 p.m. to 12:00 p.m. A great majority of those statements

               are not, and could not be considered to be admissions against interest, and

State v. Herlihy
Case No.: 2000-2753-CFA / 2000-2660-CFA
Motion in Limine
Page 4

> therefore those statements are hearsay, without an exception, and should
>
> be stricken from the record and not testified to at trial.

9.     The same applies to non-admission hearsay statements made to other

individuals before August 2, 2000.  These statements are likewise hearsay

and not relevant and should be stricken as well.

VII    DEFENDANT ALLEGEDLY SAID ON THE 911 TAPE THAT HE "WAS IN THE
       MEDICAL FIELD."  THAT FALSE STATEMENT SHOULD BE REDACTED AND
       STRICKEN.

10.    Such statement by the Defendant is not relevant and is evidence of a prior

bad act, namely fabrication, and should be stricken.

VIII   THE DEFENDANT'S STATEMENT TO CLERGY AT THE SHANDS HOSPITAL ON
       AUGUST 2, 2000 SHOULD BE STRICKEN BECAUSE IT IS PRIVILEGED.

11.    Members of the Gainesville Police Department have indicated that they

spoke to a clergyman who told them what Brian Herlihy had said to him

during the morning hours of August 2, 2000.  That conversation which Brian

Herlihy had with a member of the clergy is privileged and should be

excluded.

IX     DEPUTY KATHY LONG OF THE ALACHUA COUNTY SHERIFF'S OFFICE
       STATED THAT BRIAN HERLIHY ALLEGEDLY MADE STATEMENTS TO HER
       WHILE SHE WAS WORKING AS A BAILIFF IN THE ALACHUA COUNTY
       COURTHOUSE.  THAT STATEMENT SHOULD BE STRICKEN, BECAUSE IT IS
       TOO REMOTE IN TIME, WAS NOT PART OF AN OFFICIAL INVESTIGATION, AND
       ACCORDING TO TESTIMONY THE DEPUTY IS MISTAKEN ON THE DATES SHE
       CLAIMS TO HAVE ALLEGEDLY MET THE DEFENDANT IN COURT.

12.    The testimony of various witnesses, including the case detective and the

mother of the child, indicate that Deputy Kathy Long is mistaken about dates

State v. Herlihy
Case No.: 2000-2753-CFA / 2000-2660-CFA
Motion in Limine
Page 5

on which she claims to have met the Defendant, Brian Herlihy, at the

Courthouse, and as such, the statements which she attributes to the

Defendant, Brian Herlihy, are too remote in time, inaccurate, and prejudicial,

and should otherwise be excluded.

**WHEREFORE**, the Defendant, **Brian Herlihy**, respectfully moves this Honorable

Court to grant the Motion in Limine as to the various issues addressed in this Motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

furnished by hand-delivery to Jeanne Singer, Esquire, State Attorney's Office, P.O. Box

1437, Gainesville, FL 32602 on this 3rd day of September, 2002.

LAW OFFICES OF GROLAND & ASSOCIATES,P.A.

**Gordon H. Groland, Esquire**
Florida Bar # 137259
**John H. Tedder, Esquire**
Florida Bar #0398616
Post Office Box 2848
Gainesville, FL 32602
Phone: (352) 373-4669 / 373-2885 Fax

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA
        Plaintiff,

vs.                Case No. 2000-2753-CF-A

BRIAN HERLIHY,
        Defendant.

_____/

## STATE'S PROPOSED JURY INSTRUCTION
## REGARDING DEMONSTRATION EVIDENCE

The State of Florida by and through the undersigned Assistant State Attorney, provides this proposed special jury instruction regarding the presentation of demonstration evidence:

Members of the jury, The State is about to use a computer demonstration. It is meant to aid you in understanding evidence in this case. The demonstration itself is not evidence, and not to be considered by you as such in this case.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing State's Proposed Jury Instruction Regarding Demonstration Evidence has been furnished to Gordon H. Groland, Esquire by interoffice mail this 3'rd day of September, 2002.

WILLIAM P. CERVONE
STATE ATTORNEY

JEANNE M. SINGER
Chief Assistant State Attorney
Florida Bar No. 0243604
120 West University Avenue
Gainesville, FL 32601
352-374-3680

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA
      Plaintiff,

vs.

BRIAN HERLIHY
      Defendant.
_____/

CASE NO:    2000-2753 CFA
DIVISION II

### REQUEST TO ADJOURN TRIAL AT OR NEAR 5:00 P.M. ON WEDNESDAY, SEPTEMBER 11, 2002 AND WEDNESDAY, SEPTEMBER 18, 2002

      **THE STATE OF FLORIDA,** by and through the Undersigned Assistant State Attorney respectfully moves this Court to allow the trial to be adjourned at or near 5:00 p.m. on Wednesday, September 11, 2002 and the following Wednesday, September 18, 2002 and states that the undersigned is scheduled to teach a class at the University of Florida School of Law on the above dates, commencing at 5:30 p.m. Adjourning the trial at or near 5:00 p.m. would allow counsel the time needed to meet this obligation. Counsel for the defendant has been advised of this request and has no objection to it.

      Filed in good faith this 3rd day of September 2002.

WILLIAM P. CERVONE
STATE ATTORNEY

By: Jeanne M. Singer
Chief Assistant State Attorney
Bar #0243602
120 West University Avenue
Gainesville, Florida 32601

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Gordon Groland, counsel for the defendant, Herlihy by interoffice mail this 3rd day of September, 2002.

Jeanne M. Singer
Chief Assistant State Attorney

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA
        Plaintiff,

vs.                         CASE NO:    2000-2753 CFA
                                 DIVISION II

BRIAN HERLIHY
        Defendant.
_____/

## STIPULATION ON ADMISSION OF MEDICAL RECORDS AND REPORTS

**IT IS HEREBY** stipulated by and between the defendant, BRIAN HERLIHY, and his

counsel, and the State of Florida that all of the medical records and reports generated on behalf of

the deceased           and those records and reports generated as a result of care provided to

his mother, Crystal        while she was pregnant with said       will be admitted into

evidence in this cause without further proof of authenticity.

Filed in good faith this $\underline{4}$ day of September, 2002.

_____          _____
Jeanne M. Singer                  Gordon Groland
Assistant State Attorney          Counsel for the Defendant, Herlihy

FILED IN OPEN COURT
9-5 , 2002
Cbuuwisly
D.C.

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA
      Plaintiff,

vs.                    CASE NO:    2000-2753 CFA
                            DIVISION II

BRIAN HERLIHY
      Defendant.
_____/

## STIPULATION ON ADMISSION OF 911 CALL INTO EVIDENCE

**IT IS HEREBY** stipulated by and between the defendant, BRIAN HERLIHY, and his counsel,

and the State of Florida that the 911 call that was made by the defendant, Herlihy on August 2,

2000, and recorded by the Gainesville Police Department in the routine course of business will

be admitted into evidence in this cause without further proof of its authenticity.

Filed in good faith this _4/_ day of September, 2002.

Jeanne M. Singer
Assistant State Attorney

Gordon Groland
Counsel for the Defendant, Herlihy

FILED IN OPEN COURT
9-5, 2002
_____
D.C.

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

**STATE OF FLORIDA,**

      Plaintiff,

vs.                                                      Case No.      2000-02660-CFA
                                                                       2000-02753-CFA
**BRIAN PATRICK HERLIHY,**                               Division      II

      Defendant.

_____/

## MOTION FOR RECONSIDERATION OF ADMISSIBLITY OF TESTIMONY OF DEPUTY CATHY LONG

      **COMES NOW**, the State of Florida, by and through the undersigned Assistant State Attorney, and moves this Honorable Court to reconsider it's pre-trial ruling on the admissibility of the testimony of Deputy Cathy Long and in support thereof states:

1. During hearing on pre-trial motions in this matter held Thursday, September 5, 2002, the Court ruled that the expected testimony of Deputy Cathy Long was not relevant show intent and would not be admissible for that purpose. The Court indicated it would reconsider this ruling upon presentation of case law that might support admissibility of the expected testimony to show state of mind of for some other purpose.

2. The testimony sought for admission is a statement by the Defendant approximately two months prior to the fatal injury that the child would cry and cry and that he gets so frustrated that he feels like shaking him (the child). The medical testimony to be presented by the State in this case will confirm that the child died as a result of



2002 SEP -6  PH 4: 09

CLERK OF CIRCUIT COURT
& COUNTY COURT
ALACHUA COUNTY, FL.
FILED

"Shaken Baby Syndrome".  The Defendant made statements to Detective Helen

Legall that on August 2, 2002, he swung the child from side to side to get him to stop

crying.  The statements made by the Defendant to Deputy Cathy Long are relevant.

3.  The State cites to the following cases for support of the relevance and admissibility of

Defendant's statements to Deputy Long:

In Santana v. State, 535 So.2d 689 (Fla. 3rd DCA 1988), the defendant was convicted

of second degree murder.  The trial court allowed evidence that several months prior

to the murder the defendant threatened to shoot the deceased.  The admission of this

testimony was upheld on appeal.

In Livingston v. State, 678 So.2d 895 (Fla. 4th DCA 1996), the defendant was

convicted of aggravated battery against the boyfriend of a woman named Martin.  The

trial court allowed the state to present evidence that the defendant had left notes on

Martin's car and attempted to speak with her several times prior to the night of the

incident.  The appellate court held that this evidence was admissible under section

90.402, Fla. Stat. as "being relevant to and inseparable from the battery".  The court

stated, " Evidence of the defendant's prior encounters with Martin place the incident

in the context of his feelings for her and explain the strong emotions which may have

ignited the battery."

In Morrell v. State, 779 So.2d 304 (Fla. 2nd DCA), the defendant was convicted of

robbery, aggravated assault, and fraudulent use of credit cards.  The trial court

permitted testimony from a witness that she saw the defendant with a handgun in the

months before the crimes.  The appellate court held that this evidence was relevant to

more than the defendant's bad character or propensity to commit a crime.  The

evidence was relevant to prove a material fact such as opportunity, preparation, or plan.

In <u>Robertson v. State</u>, 780 So.2d 106 (Fla. 3rd DCA 2001), the defendant was convicted of second degree murder in the shooting of his girlfriend. The defendant claimed that the shooting was accidental. The trial court permitted testimony of the defendant's ex-wife concerning the defendant's previous threat to the ex-wife with a gun. This testimony was permissible for both impeachment purposes and relevancy. The court stated, "Because intent is often the most difficult element to prove in an unwitnessed crime where the victim is dead, evidence reflecting on the defendant's intent is clearly probative with regard to a claim of accidental shooting."

In <u>Walter v. State</u>, 272 So.2d 180 (Fla. 3rd DCA 1973), the defendant was convicted of manslaughter in the death of his child. The defense called the defendant's wife as a witness. After giving favorable testimony for the defense, the state asked her about her statement to police the day after the baby's death about physical punishment administered by the defendant on the baby prior to the day of the baby's death. This testimony was considered relevant and admissible.

4. The Defendant in this case is alleged to have shaken this baby causing fatal injury consistent with the "shaken baby syndrome". This incident occurred when the defendant was alone with the child. His motive for shaking the child and his state of mind at the time of shaking the child are relevant. His statements to Deputy Long are probative and should be admitted.

**WHEREFORE**, the State respectfully requests the Court reconsider it's earlier ruling on the

admissiblity of the testimony of Deputy Long and permit such testimony.  In the alternative, the

State requests and opportunity to proffer the testimony of Deputy Long and thereafter make a

ruling on the admissibility of such testimony.

Respectfully submitted on this __6__ day of September, 2002.

WILLIAM P. CERVONE
STATE ATTORNEY


**H. STEPHEN PENNYPACKER**
Assistant State Attorney
Florida Bar No. 0971944
120 West University Avenue
Post Office Box 1437
Gainesville, Florida  32602
(352) 374-3696


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to
Gordon Groland, Esquire by inter-office mail on this 6 day of September, 2002.


**H. STEPHEN PENNYPACKER**
Assistant State Attorney

LEXSEE 535 So.2d 689

ESTEBAN SANTANA, Appellant, v. THE STATE OF FLORIDA, Appellee

Case No. 88-34

Court of Appeals of Florida, Third District

*535 So. 2d 689; 1988 Fla. App. LEXIS 5733; 14 Fla. L. Weekly 94*

December 27, 1988, Filed

**PRIOR HISTORY:**
[**1]   An Appeal from the Circuit Court of Dade County, Steven D. Robinson, Judge.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant sought review of a judgment rendered by the Circuit Court of Dade County (Florida) that convicted him for second-degree murder and unlawful possession of a firearm during the commission of a felony.

**OVERVIEW:** Appellant was convicted of second-degree murder and unlawful possession of a firearm during the commission of a felony. Appellant sought review of his conviction on many grounds. Appellant challenged his conviction on the ground that there was a discovery violation. The court held that there was no discovery violation below and, consequently, no Richardson hearing was required to be held. Appellant contended that evidence that he threatened the victim should not have been admitted into evidence. The court found that the evidence of the threat to shoot victim was properly admitted in evidence. Appellant contended that evidence of a prior shooting involving appellant and the deceased was inadmissible. The court held that the evidence was admissible to negate appellant's claim of accident in the case. Further, the court held that testimony concerning the incident, although technically inadmissible, was merely cumulative of evidence properly admitted and thus was harmless. The court affirmed appellant's conviction. None of appellant's points on appeal presented reversible error.

**OUTCOME:** The court affirmed the trial court that found appellant guilty of second-degree murder and unlawful possession of a firearm during the commission

of a felony because appellant's multitude of points on appeal did not present reversible error.

**COUNSEL:**
Sharpstein & Sharpstein and Janice Burton Sharpstein, for Appellant.

Robert A. Butterworth, Attorney General and Steven T. Scott, Assistant Attorney General, for Appellee.

**JUDGES:**
Barkdull and Hubbart and Baskin, JJ.

**OPINIONBY:**
PER CURIAM

**OPINION:**

[*689]   This is an appeal by the defendant Esteban Santana from judgments of conviction and sentences for (1) second-degree murder and (2) unlawful possession of a firearm during the commission of a felony which were entered below based on adverse jury verdicts. The defendant raises a multitude of points on appeal, none of which presents reversible error; we, accordingly, affirm.

*First,* the evidence of guilt in this case, although circumstantial, was sufficient to present the case to the jury on the crimes as charged in the information. *See Heiney v. State, 447 So.2d 210, 211* (Fla.), *cert. denied, 469 U.S. 920, 105 S. Ct. 303, 83 L. Ed. 2d 237 (1984); Dellinger v. State, 495 So.2d 197, 198 (Fla. 5th DCA 1986), cert. denied, 503 So.2d 326 (Fla. 1987); Bradwell* [**2] *v. State, 468 So.2d 1113, 1114 (Fla. 3d DCA 1985); Evans v. State, 452 So.2d 987, 988 (Fla. 3d DCA 1984); LaChance* [**2] *v. State, 396 So.2d 1234, 1235 (Fla. 2d DCA 1981). Second,* there was no discovery

violation below, and, consequently no *Richardson* hearing was required to be held. *See Matheson v. State, 500 So.2d 1341, 1342-43 (Fla. 1987); Jackson v. State, 369 So.2d 1029, 1030 (Fla. 3d DCA 1979), cert. denied, 379 So.2d 206 (Fla. 1980).* Third, evidence that several months prior to the murder the defendant threatened to shoot the deceased was properly admitted in evidence. *See Morris v. State, 487 So.2d 291, 293 (Fla. 1986); Jones v. State, 440 So.2d 570, 577 (Fla. 1983); Goldstein v. State, 447 So.2d 903, 906 (Fla. 4th DCA 1984).* Fourth, evidence of a prior shooting involving the defendant and the deceased was admissible to negate the defendant's claim of accident in this case, *see Ruffin v. State, 397 So.2d 277, 280-81* (Fla.), *cert. denied, 454 U.S. 882, 102 S. Ct. 368, 70 L. Ed. 2d 194 (1981); Outler v. State, 322 So.2d 623, 624* (Fla. 3d DCA), *cert. denied, 336 So.2d 107 (Fla. 1976); Andrews v. State, 172 So.2d 505, 507 (Fla. 1st DCA 1965);* other testimony concerning this incident, although technically inadmissible, was merely cumulative [**3] of evidence

properly admitted and thus was harmless. *See Feimster v. State, 491 So.2d 321, 321* (Fla. 3d DCA), *rev. denied, 492 So.2d 1331 (Fla. 1986); Brunelle v. State, 456 So.2d 1324, 1324 (Fla. 4th DCA 1984); Henao v. State, 454 So.2d 19, 20 (Fla. 3d DCA 1984).* Fifth, evidence of (a) the defendant's drug use, (b) a statement made by the defendant's mother, and (c) a statement by the deceased two months before the homicide, although technically inadmissible, were not so prejudicial to the defendant as to upset the instant convictions. § 59.041, Fla. Stat. (1985). *Cf. Pritchett v. State, 414 So.2d 2, 3* (Fla. 3d DCA), *rev. denied, 424 So.2d 762 (Fla. 1982); Ballard v. State, 323 So.2d 297, 300-01 (Fla. 3d DCA 1975); Lopez v. State, 264 So.2d 69, 70* (Fla. 3d DCA), *cert. denied, 268 So.2d 161 (Fla. 1972); Mahone v. State, 222 So.2d 769, 771-72 (Fla. 3d DCA 1969).* Finally, [**4] the remaining points have no merit and require no discussion.

Affirmed.

OCCOIL7

LEXSEE 678 So.2d 895

GEORGE C. LIVINGSTON, Appellant, v. STATE OF FLORIDA, Appellee.

CASE NO. 94-1052

COURT OF APPEAL OF FLORIDA, FOURTH DISTRICT

*678 So. 2d 895; 1996 Fla. App. LEXIS 8854; 21 Fla. L. Weekly D 1887*

August 21, 1996, Filed

**SUBSEQUENT HISTORY:**
[**1] Released for Publication September 6, 1996.

**PRIOR HISTORY:**
Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward Rodgers, Judge; L.T. Case No. 92-13896CFA02.

**DISPOSITION:**
REVERSED AND REMANDED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant sought review of a judgment from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County (Florida), which convicted him of aggravated battery.

**OVERVIEW:** Appellant was convicted of aggravated battery. At trial, an independent witness corroborated the victim's testimony. Appellant's attempt to impeach this witness concerning felony charges he was facing was not allowed. Appellant contended that the trial court improperly restricted his cross examination of the witness concerning his prior criminal charges. The state conceded that it was error but argued that the error was harmless. The court held that the limitation on the cross examination of this important state witness was reversible error. All witnesses were subject to cross examination for the purpose of discrediting them by showing bias, prejudice or interest. This rule was especially applicable in a criminal matter because liberty was at risk.

**OUTCOME:** The trial court's judgment, convicting appellant of aggravated battery, was reversed and remanded because the limitation on the cross

examination of an important state witness who corroborated the victim's testimony was reversible error.

**CORE CONCEPTS**

*Criminal Law & Procedure : Trials : Examination of Witnesses : Examinations Generally*
*Evidence : Witnesses : Examination & Presentation of Evidence*
All witnesses are subject to cross examination for the purpose of discrediting them by showing bias, prejudice or interest.

*Criminal Law & Procedure : Trials : Examination of Witnesses : Examinations Generally*
*Evidence : Witnesses : Examination & Presentation of Evidence*
Because liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness' testimony, to show that the witness has colored his or her testimony to suit a plea agreement or other considerations from the state. Obviously, a defendant has a strong interest in discrediting a crucial state witness by showing bias, an interest in the outcome, or a possible ulterior motive for his in-court testimony. A well-recognized area of cross examination is how pending criminal charges may have influenced a witness' cooperation with the state and the content of in-court statements. To explore even more subtle motivations, where a witness has already been sentenced, a defendant may cross examine concerning any continuing relationship between the witness and the state.

**COUNSEL:**
Evelyn A. Ziegler, West Palm Beach, for appellant.

Robert Butterworth, Attorney General, Tallahassee; and Aubin Wade Robinson, Assistant Attorney General, West Palm Beach, for appellee.

**JUDGES:**
GROSS, J., KLEIN and PARIENTE, JJ., concur.

**OPINIONBY:**
GROSS

**OPINION:**

[*896]  GROSS, J.

Defendant George Livingston appeals his conviction of aggravated battery against victim Michael Piccone.

The state's theory of the case was that the crime grew out of defendant's obsession with Joni Martin. Defendant lived next door to Martin's townhouse. Martin testified that she twice observed defendant standing or sitting outside her property. He had once left a yellow sticky note on her gate. Another time, he asked Martin for jumper cables. Martin felt that defendant was interested in her, although she had done nothing to encourage him.

On November 19, 1992, the night of the incident, defendant appeared at Martin's door and asked to come in so they could get acquainted. [**2] Speaking through the closed door, Martin refused and said she was expecting male company. She believed that defendant then became agitated. About an hour later, Martin looked out her window and saw defendant sitting on a utility box in front of her gate. Feeling apprehensive, Martin called her friend Michael Piccone and asked him to come by and say something to defendant. She was not aware that Piccone had arrived until she heard him tell her to call the police. Piccone did not come into the house with Martin; he walked back to defendant. While she was on the phone with the police, Martin heard slaps. She went outside when the police arrived. Defendant was gone and Piccone was badly hurt. n1 Martin saw nothing of the altercation.

> n1 At the hospital, Piccone was diagnosed with a fractured cheek and nose and a crushed septum. He sustained three wounds which required stitches.

At trial, defendant and Piccone each blamed the other for the incident. Piccone characterized defendant as an unreasonable, excitable aggressor, [**3] who approached him in a threatening manner from the beginning and who attacked him without provocation.

Defendant depicted Piccone as a jealous boyfriend who initiated the fight by rushing him, [*897] fists up, with the words, "I am going to teach you a lesson." On cross examination, defendant admitted that he loved Martin, that he had left notes on her car, and that she had rebuffed him the times he had gone to her home the week before the battery.

An independent witness, Pedro Romero, corroborated Piccone's version of the facts. Romero saw the two men arguing. He heard Piccone trying to calm defendant down and get him to return to his apartment. According to Romero, Piccone asked, "Why don't we just talk this out?" and as he started to walk away defendant pushed him and called him a "m___ f___ wimp." Romero heard Piccone yell, "Call the police!" Romero then went into his girlfriend's apartment for five minutes. When he went back outside, Romero saw defendant punching Piccone, who was not fighting back.

Defense counsel sought to impeach Romero by establishing that in November 1992, when he first gave a statement to the police, Romero was facing felony charges which were resolved a month [**4] later by a sentence of probation with adjudication of guilt withheld. The prosecutor objected that such impeachment was improper under *section 90.610*, Florida Statutes (1995), since adjudication had been withheld. The trial court refused to allow any cross examination into these matters.

Defendant first claims that the trial court erred by allowing the state to present evidence that defendant left notes on Martin's car and attempted to speak with her several times prior to the night of the incident. Classifying this as evidence of "stalking," defendant argues that its admission violated *section 90.404(2)*, Florida Statutes (1995). Setting aside the "stalking" label as legal hyperbole, we hold that the evidence of defendant's prior contacts with Martin was admissible under section 90.402 as being relevant to and inseparable from the battery. It was "necessary to admit the evidence to adequately describe the deed." *Tumulty v. State*, 489 So. 2d 150, 153 (Fla. 4th DCA), review denied, 496 So. 2d 144 (Fla. 1986) (quoting Ehrhardt, Florida Evidence, § 404.16 at 138 (2d ed. 1984)). Evidence of defendant's prior encounters with Martin place the incident in the context of his feelings [**5] for her and explain the strong emotions which may have ignited the battery.

Defendant next argues that the trial court improperly restricted his cross examination of witness Romero concerning his prior criminal charges. The state concedes error, but argues that it was harmless. We hold that the limitation on the cross examination of this important state witness was reversible error.

The proposed cross examination of Romero was proper not under section 90.610 cited by the state at trial, but as evidence of bias or interest pursuant to *section 90.608(1)(b)*, Florida Statutes (1995). All witnesses are subject to cross examination for the purpose of discrediting them by showing bias, prejudice or interest. *Cox v. State, 441 So. 2d 1169 (Fla. 4th DCA 1983).* Because liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness' testimony, "to show that the witness has colored his testimony to suit a plea agreement or other considerations from the state." *Pomeranz v. State, 634 So. 2d 1145, 1146 (Fla. 4th DCA 1994); Harmon v. State, 394 So. 2d 121, 123 (Fla. 1st DCA 1980).* Obviously, a defendant has a strong interest in discrediting [**6] a crucial state witness by showing bias, an interest in the outcome, or a possible ulterior motive for his in-court testimony. *Phillips v. State, 572 So. 2d 16 (Fla. 4th DCA 1990).* A well recognized area of cross examination is how pending criminal charges may have influenced a witness' cooperation with the state and the content of in-court statements. *Blanco v. State, 353 So. 2d 602, 604 (Fla. 3d DCA 1977); Garey v. State, 432 So. 2d 796, 797 (Fla. 4th DCA 1983).* To explore even more subtle motivations, where a witness has already been sentenced, a defendant may cross examine concerning any continuing relationship between the witness and the state. For example, in *Watts v. State, 450 So. 2d 265, 268 (Fla. 2d DCA 1984),* the second district held that a key state witness on probation may properly be questioned about whether he "has a desire to testify so as to please the authorities who [*898] have some discretion over his probationary status."

Romero was facing felony charges in 1992 when he first gave a statement to the police. A month later, he plea bargained for a favorable result - probation and adjudication withheld. The trial court should have permitted cross examination [**7] of Romero on the connection, if any, between the disposition of his criminal case and his statement and testimony in this case. Because Romero was the only objective eyewitness to the beating, we cannot say beyond a reasonable doubt that this error did not contribute to the verdict. *State v. DiGuilio, 491 So. 2d 1129 (Fla. 1986).*

Finally, the state improperly rehabilitated Romero by establishing that his November, 1992 statement to the police was consistent with his in-court testimony. The contents of the prior statement were hearsay, subject to none of the exceptions contained within *section 90.801(2)(b)*, Florida Statutes (1995).

REVERSED AND REMANDED.

KLEIN and PARIENTE, JJ., concur.

LEXSEE 779 So.2d 304

MARVIN MORRELL, Appellant, v. STATE OF FLORIDA, Appellee.

CASE NO. 98-03697

COURT OF APPEAL OF FLORIDA, SECOND DISTRICT

*779 So. 2d 304; 1999 Fla. App. LEXIS 9199; 24 Fla. L. Weekly D 1617*

July 9, 1999, Opinion Filed

**NOTICE:**
[**1]

DECISION WITHOUT PUBLISHED OPINION

**PRIOR HISTORY:**
Appeal from the Circuit Court for Hillsborough County,
Barbara Fleischer, Judge.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant challenged a
judgment of the Circuit Court for Hillsborough County
(Florida) that convicted appellant of robbery, aggravated
assault, and fraudulent use of credit card.

**OVERVIEW:** Appellant was convicted of robbery,
aggravated assault, and fraudulent use of credit card.
Appellant sought review, contending that the lower court
erred in allowing the state to peremptorily strike an
African-American juror; in admitting a witness's
testimony that she saw appellant with a handgun in the
months before the crimes; and in admitting a witness's
testimony that a police detective told her that appellant
had confessed. On appeal, the convictions were affirmed.
The appellate court held that appellant failed to preserve
his point of error concerning the peremptory strike for
appellate review. Next, the appellate court held that *Fla.
Stat. ch. 90.404(2)(a) (1997)* allowed the lower court to
admit evidence of appellant's prior acts when it was
relevant to prove a material fact such as opportunity,
preparation, or plan. Moreover, the evidence of appellant
having a handgun was relevant to the issue of whether he
had access to a firearm, because appellant was on trial
for robbery with a firearm. Finally, the appellate court
held that while the lower court erred in allowing
testimony concerning appellant's alleged confession,
such error was cured and did not affect the verdict.

**OUTCOME:** The court affirmed the lower court's
judgment that convicted appellant of robbery, aggravated
assault, and fraudulent use of credit card, holding that the
lower court did not err in admitting evidence of
defendant's prior wrong acts and that an error committed
by the lower court in admitting witness testimony
concerning defendant's confession was cured.

## CORE CONCEPTS

*Criminal Law & Procedure : Appeals : Reviewability :
Preservation for Review*
An appellant fails to preserve an issue for appeal if he
unsuccessfully moves in limine to exclude the testimony,
but fails to object when the witness testifies.

*Evidence : Relevance : Prior Acts, Crimes & Wrongs*
*Fla. Stat. ch. 90.404(2)(a) (1997)* allows the trial court
to admit evidence of a defendant's prior acts when it is
relevant to prove a material fact such as opportunity,
preparation, or plan.

*Criminal Law & Procedure : Appeals : Reviewability :
Preservation for Review*
See *Fla. Stat. Ann. § 924.051(b) (1997)*.

**COUNSEL:**
Rochelle L. Lefler, Dixon, Lefler & Lorenzen, Tampa,
for Appellant.

Robert A. Butterworth, Attorney General, Tallahassee,
and Jenny S. Seig, Assistant Attorney General, Tampa,
for Appellee.

**JUDGES:**
PATTERSON, C.J., and PARKER and DAVIS, JJ.,
Concur.

So. 2d 304, *; 1999 Fla. App. LEXIS 9199,
24 Fla. L. Weekly D 1617

**OPINION:**

|*304|

PER CURIAM.

Marvin Morrell challenges his convictions for robbery, aggravated assault, and fraudulent use of credit card. We find no merit in his three claims.

First, Morrell claims that the trial court erred in allowing the State to peremptorily strike an African-American juror. Morrell failed to preserve this issue for appeal because he accepted the venire without renewing his objection or making that acceptance subject to his previous objection. See *Franqui v. State, 699 So. 2d 1332, 1334 (Fla. 1997)*, cert. denied, *Florida v. Franqui, U.S.    , 118 S. Ct. 1337, 140 L. Ed. 2d 499, Franqui v. Florida,    U.S.    , 118 S. Ct. 1582, 140 L. Ed. 2d 796 (1998); Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993)*. Moreover, if this |**2| issue were preserved, we would still conclude that the trial court did not abuse its discretion in ruling that the State's reason for the peremptory strike was genuine and race-neutral. See *Melbourne v. State, 679 So. 2d 759, 763-64 (Fla. 1996)*.

Second, Morrell argues that the trial court abused its discretion in admitting |*305| a witness's testimony that she saw Morrell with a handgun in the months before the crimes. Again, Morrell failed to preserve this issue for appeal because, although he unsuccessfully moved in limine to exclude this testimony, he failed to object when the witness testified. See *Lawrence v. State, 614 So. 2d 1092, 1094 (Fla. 1993); Correll v. State, 523 So. 2d 562, 566 (Fla. 1988)*. Even if Morrell had objected, the testimony was relevant to more than Morrell's bad character or propensity to commit a crime. See *Williams v. State, 110 So. 2d 654 (Fla. 1959).    Section*

*90.404(2)(a), Florida Statutes* (1997), allows the trial court to admit evidence of a defendant's prior acts when it is relevant to prove a material fact such as opportunity, preparation, or plan. This evidence was admissible because it |**3| was relevant to the issue of whether Morrell had access to a firearm, since Morrell was on trial for robbery with a firearm. See *Lawrence, 614 So. 2d at 1094*.

Finally, Morrell argues that the trial court erred in admitting a witness's testimony that a police detective told her Morrell confessed. We disagree with the State's argument that Morrell failed to preserve this issue.

"Preserved" means that an issue, legal argument, or objection to evidence was timely raised before, and ruled on by, the trial court, and that the issue, legal argument or objection to evidence was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor.

§ *924.051(b), Fla. Stat.* (1997). Here, Morrell timely objected, and the trial court ruled on the issue. The objection was precise enough to apprise the trial court of its grounds and that the relief he sought was a mistrial. However, the State cured the error when it agreed to question the police detective as to whether Morrell confessed, and the detective testified that he did not. Moreover, we find no reasonable possibility that the witness's |**4| statement affected the verdict. See *State v. DiGuilio, 491 So. 2d 1129, 1135-39 (Fla. 1986)*.

Affirmed.

PATTERSON, C.J., and PARKER and DAVIS, JJ., Concur.

じ〕じし, 12

LEXSEE 780 So. 2d 106

**FLOYD THOMAS ROBERTSON, Appellant, vs. THE STATE OF FLORIDA, Appellee.**

**CASE NO. 3D98-2383**

**COURT OF APPEAL OF FLORIDA, THIRD DISTRICT**

*780 So. 2d 106; 2001 Fla. App. LEXIS 4002; 26 Fla. L. Weekly D 825*

**March 28, 2001, Opinion Filed**

**SUBSEQUENT HISTORY:**
[**1] As Amended April 17, 2001. Released for Publication March 28, 2001.

**PRIOR HISTORY:**
An Appeal from the Circuit Court for Miami-Dade County, Barbara S. Levenson, Judge. LOWER TRIBUNAL NO. 96-36844.

Original Opinion of April 12, 2000, Reported at: *2000 Fla. App. LEXIS 4260.*

**DISPOSITION:**
Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant challenged the judgment, in the Circuit Court for Miami-Dade County (Florida), convicting and sentencing him for second degree murder in the shooting death of his girlfriend, claiming the trial court erred in allowing his ex-wife to testify concerning appellant's previous threat to her with a gun.

**OVERVIEW:** When the victim confided to a co-worker that she was having problems with her live-in boyfriend, appellant, she was upset and nervous. She told her friend she was going to ask the appellant to move out of her apartment that night. Because the appellant alleged the shooting was accidental, and he had never used a gun in a threatening manner toward anyone close to him, the appellate court concluded the ex-wife's testimony concerning appellant's previous threat to her with a gun was properly admitted for both impeachment purposes, and relevancy, to show appellant's motive, intent, and absence of mistake, affirming the trial court. Having

testified he had never threatened anyone with a gun, appellant opened the door to questioning about the prior incident where he threatened his ex-wife. With the door open, it was permissible for the State to impeach his statements and show he was not being truthful.

**OUTCOME:** Judgment was affirmed; the appellate court found no abuse of discretion. The evidence was admitted for the appropriate purpose of showing appellant's motive and intent at the time of the shooting he claimed was accidental. It was admissible pursuant to the motive and intent exceptions to the general exclusionary rule.

**CORE CONCEPTS**

*Criminal Law & Procedure : Evidence : Impeachment Evidence*
*Fla. Stat. ch. 90.608(5),* provides that once a defendant takes the stand and testifies, he or she places credibility at issue and prosecutors are allowed to impeach that credibility with proof by other witnesses that material facts are not as testified to by the witness being impeached. See *Fla. Stat. ch. 90.608(5) (1997).*

*Constitutional Law : Criminal Process : Right to Confrontation*
The truth-seeking purpose of the adversary system is promoted by cross-examination which appropriately challenges the witness's credibility through eliciting testimony favorable to the cross-examining party. Specifically, with regard to impeachment cross-examination, prosecutors are to be allowed wide leeway in order to prevent defendants from being able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge.

*Criminal Law & Procedure : Trials : Examination of Witnesses : Cross-Examination*
The Florida Supreme Court has long held that cross examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief.

*Criminal Law & Procedure : Trials : Examination of Witnesses : Cross-Examination*
Pursuant to Fla. R. Evid. § 608.1: Regardless of the subject matter of the witness' testimony, a party on cross-examination may inquire into matters that affect the truthfulness of the witness' testimony.

*Criminal Law & Procedure : Evidence : Impeachment Evidence : Prior Bad Acts & Uncharged Crimes*
*Fla. Stat. ch. 90.404(2)(a) (1997),* provides: Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity. It is well established that evidence is admissible if it is relevant to prove a material fact at issue, and if it is not precluded by a specific rule of exclusion.

*Evidence : Relevance : Relevant Evidence*
The test for relevancy is whether such evidence casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried.

*Criminal Law & Procedure : Scienter : Actus Reus*
Because intent is often the most difficult element to prove in an unwitnessed crime where the victim is dead, evidence reflecting on the defendant's intent is clearly probative with regard to a claim of accidental shooting.

*Criminal Law & Procedure : Appeals : Standards of Review : Abuse of Discretion*
A trial court has broad discretion not only in determining the relevance of evidence, but also in determining whether its probative value outweighs any prejudicial effect, thereby rendering such evidence admissible. See *Fla. Stat. ch. 90.403 (1997).* Such a determination will not be disturbed on appeal absent an abuse of discretion.

*Evidence : Relevance : Confusion, Prejudice & Waste of Time*
*Fla. Stat. ch. 90.404(2)(a) (1997)* prohibits the introduction of similar fact evidence of other crimes, wrongs, or acts, where such evidence is relevant solely to prove bad character or to show the defendant possesses a propensity for criminal behavior. *Fla. Stat. ch. 90.404(2)(a) (1997)* specifically allows the admissibility of similar fact evidence to prove a material fact in issue, such as intent and absence of mistake or accident. Accordingly, a trial judge has the discretion to admit similar fact evidence when it is relevant as to a non-character aspect in the case.

*Evidence : Relevance : Relevant Evidence*
Almost all evidence to be introduced by the state in a criminal prosecution will be prejudicial to a defendant. However, even evidence which incidentally places a defendant's character in issue is admissible where substantially relevant to show some other purpose than to show propensity.

**COUNSEL:**
Bennett H. Brummer, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.

Robert A. Butterworth, Attorney General, and Margaret A. Brenan, Assistant Attorney General, for appellee.

**JUDGES:**
Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO, and RAMIREZ, JJ. COPE, GODERICH AND GREEN, JJ., CONCUR. SCHWARTZ, Chief Judge (specially concurring). JORGENSON and LEVY, JJ., CONCUR. SORONDO, J. (dissenting). FLETCHER, SHEVIN and RAMIREZ, JJ., concur.

**OPINIONBY:**
GERSTEN

**OPINION:**

[*107]

OPINION ON REHEARING EN BANC

GERSTEN, Judge.

Floyd Thomas Robertson ("defendant") appeals his conviction and sentence for second degree murder in the shooting death of his girlfriend. The defendant claims the trial court erred in allowing his ex-wife to testify concerning the defendant's previous threat to [**2] the

C J J U , . 4

780 So. 2d 106, *; 2001 Fla. App. LEXIS 4002, **;
26 Fla. L. Weekly D 825

ex-wife with a gun. Because the defendant alleged the shooting was accidental, and that he had never used a gun in a threatening manner toward anyone close to him, we conclude this evidence was properly admitted for both impeachment purposes, and relevancy [*108] under *Section 90.404(2)(a)*, Florida Statutes (1997), to show the defendant's "motive, intent, and absence of mistake." We affirm.

On September 16, 1996, victim Maria Nelson ("Maria") confided to a co-worker that she was having problems with her live-in boyfriend, the defendant. Maria was upset and nervous, and told her friend that she was going to ask the defendant to move out of her apartment that night.

Approximately three hours later, the fire rescue department received a call from the defendant, who stated that he had shot "someone." When the police arrived, the defendant led them into a bedroom where a gun was laying on the floor with the slide locked.

Victim Maria Nelson was lying on the bed semi-conscious. The police detective tore off her shirt to see if he could provide medical help. Although the defendant had a medical background as a paramedic, there was no evidence that the defendant attempted [**3] any kind of aid on Maria. Maria was airlifted to the hospital where she eventually died.

The defendant was charged with second degree murder. At trial, his theory of defense was that the gun accidentally misfired while he was taking it out of the closet to clean it. n1 The State's theory of the case was that the defendant shot Maria during a domestic argument and that the shooting was not accidental. Since the defendant was the only witness to the shooting, the critical issue for the jury to determine was whether the defendant's story was credible.

> n1 The detective at the scene testified that he did not find any cleaning materials, and that the trigger had to be pulled in order for the gun to fire. The medical examiner testified that the defendant's story to the police that the gun accidentally discharged, was not consistent with the angle of the bullet's path or the angle of the bed.

Several of Maria's neighbors testified they heard loud thuds coming from the apartment on the evening of the shooting, as though [**4] someone were being thrown against the wall. At one point, the defendant was observed going out onto the balcony and flailing his arms around as if involved in a heated discussion. The defendant then went inside the apartment and Maria came out onto the balcony. A few minutes after Maria went back into the apartment, the neighbors heard a gunshot.

The arresting detective who took the defendant's statement stated that the defendant's version of what occurred varied. At the police station, the defendant stated he and Maria had an argument that evening, but that he had never gotten physical with Maria. The defendant explained he was taking out his semi-automatic .40 caliber Ruger handgun to clean it, when his finger slipped on the trigger and he shot Maria. Later, the defendant testified that he was taking out the gun because he wanted Maria to see it. The defendant further testified his relationship with Maria was an excellent one and that they had not been fighting on the day of the shooting.

The defendant's friend, Steve Angene, testified that the defendant had called him after the shooting. In that phone call, the defendant stated he had been having a dispute with Maria, and that [**5] Maria had followed him into the bedroom. The defendant asked Steve not to tell the police about his fight with Maria.

In contrast to Steve's testimony, the defendant testified at trial that he had a happy relationship with Maria. He also testified that the gun which killed Maria was accidentally stored in a single-action cocked manner. He further stated that he was not very familiar with the gun, and that the gun accidentally fired and hit Maria.

On cross-examination, the State asked the defendant about his knowledge and training with various weapons. Without objection, the defendant was asked about his military experience, and his previous [*109] use of such weapons as M-16 rifles, handguns, M60's, sporting guns, and a Russian rifle. The defense only objected when the State asked the defendant if he had ever purchased an AK-47 rifle. The State then asked if the defendant ever threatened anyone with an assault rifle. When the defendant responded he had not, the State asked if the defendant threatened anyone close to him with an AK-47. The defendant responded, "I have never threatened anybody close to me with a weapon, period, with a weapon, sir." The defendant's ex-wife was later [**6] called on rebuttal and testified the defendant had threatened her with a gun during a domestic dispute. Defense counsel had taken the ex-wife's deposition prior to trial and was well aware of the prior AK-47 rifle incident.

At the conclusion of its deliberations, the jury returned a verdict finding the defendant guilty of second degree murder. The defendant appeals his conviction and sentence to life imprisonment, claiming the trial court

erred in allowing the testimony of the ex-wife regarding the prior incident.

*Florida Statute Section 90.608(5)*, provides that once a defendant takes the stand and testifies, he or she places credibility at issue and prosecutors are allowed to impeach that credibility with "proof by other witnesses that material facts are not as testified to by the witness being impeached." See *§ 90.608(5)*, Fla. Stat. (1997); Charles W. Ehrhardt, Florida Evidence § 608.1 at 385 (1997 ed.).

Our courts have long recognized that the truth-seeking purpose of the adversary system is promoted by cross-examination which appropriately challenges the witness's credibility through eliciting testimony favorable to the [**7] cross-examining party. See *Chandler v. State, 702 So. 2d 186 (Fla. 1997); Shere v. State, 579 So. 2d 86, 90 (Fla. 1991)*. Specifically, with regard to impeachment cross-examination, prosecutors are to be allowed "wide leeway" in order to prevent defendants from being able to "frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." See *Lebowitz v. State, 343 So. 2d 666, 667 (Fla. 3d DCA 1977)* (quoting *Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91, 97 n.7 (1976)*. See also, *Geralds v. State, 674 So. 2d 96 (Fla. 1996)* (cross examination not confined to identical details testified to in chief; extends to all matters that may supplement, contradict, rebut, or make clearer facts testified to in chief).

Applying these principles to the facts of this case, it is clear the defendant placed his credibility at issue by taking the stand. After giving oath and presenting testimony to the jury, the defendant was then subject to cross-examination and potential impeachment like any witness in any case. n2 See *Ivey v. State, 132 Fla. 36, [*110] 180 So. 368 (Fla. 1938); [**8] C.M. v. State, 698 So. 2d 1306 (Fla. 4thDCA 1997); Ashcraft v. State, 465 So. 2d 1374 (Fla. 2d DCA 1985)*.

n2 The dissent suggests it is permissible for a fabulist defendant to lie on the stand regarding facts especially probative to his theory of defense, so long as the lie occurs during cross-examination. We disagree. Although the dissent correctly notes the State may not ask "impermissible" questions during cross-examination to elicit otherwise inadmissible evidence not testified to on direct, see *DeFreitas v. State, 701 So.2d 593 (Fla. 4th DCA 1997)*, the fatal flaw in the dissent's reasoning is that the question in the present case was not "impermissible." Thus the cases cited to by the dissent are unavailing.

Our Florida Supreme Court has long held that "cross examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief." *Geralds v. State, 674 So. 2d 96, 99 (Fla. 1996)* (quoting *Coco v. State, 62 So. 2d 892, 895 (Fla. 1953)); Coxwell v. State, 361 So. 2d 148, 151 (Fla. 1978)* (same).

Here, the issue of the defendant's gun use and whether or not his use of the gun was "accidental", were matters clearly raised during his case in chief. The prosecutor was permitted to ask the question regarding gun use, because it directly related to clarify facts raised on direct, and to contradict the defendant's statements regarding his familiarity with the gun, and his claim the gun fired accidentally in causing Maria's death. Thus, applying well established Florida Supreme Court precedent, see *Geralds v. State, 674 So. 2d at 99*, the follow-up questioning during cross was clearly not "impermissible." See also Charles W. Ehrhardt, Florida Evidence § 608.1 at 385 (1997 ed.)("Regardless of the subject matter of the witness' testimony, a party on cross-examination may inquire into matters that affect the truthfulness of the witness' testimony.") A finding to the contrary would be tantamount to condoning perjury and adverse to the truth-seeking function of trial.

[**9]

The defendant testified he never threatened anyone with a gun. Clearly this statement was intended to buttress his theory of defense and his contention that he shot Maria by mistake while "cleaning" the gun. Having testified that he had never threatened anyone with a gun, the defendant opened the door to questioning about the prior incident where he had threatened his ex-wife with a gun. See *Fletcher v. State, 619 So. 2d 333 (Fla. 1st DCA)*, review denied, *629 So. 2d 132 (Fla. 1993); Hernandez v. State, 569 So. 2d 857 (Fla. 2d DCA 1990)*. With the door open, it was then permissible for the State to impeach the defendant's statements and to show that he was not being truthful on the stand. See *Allred v. State, 642 So. 2d 650 (Fla. 1st DCA 1994); Lusk v. State, 531 So. 2d 1377 (Fla. 2d DCA 1988)*. See also *Howard v. State, 228 Ga. App. 775, 492 S.E.2d 683 (1997)* (evidence defendant shot prior girlfriend 12 years earlier held admissible to impeach testimony regarding gun use).

We also find this evidence admissible as relevant under *Section 90.404(2)(a)*, Florida [**10] Statutes (1997), which provides:

"Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity."

It is well established that evidence is admissible if it is relevant to prove a material fact at issue, and if it is not precluded by a specific rule of exclusion. See *§ 90.402(2)(a)*, Fla. Stat. (1997); *Heiney v. State, 447 So. 2d 210* (Fla.), cert. denied, *469 U.S. 920, 105 S. Ct. 303, 83 L. Ed. 2d 237 (1984); Williams v. State, 110 So. 2d 654* (Fla.), cert. denied, *361 U.S. 847, 80 S. Ct. 102, 4 L. Ed. 2d 86 (1959)*.

The test for relevancy is whether such evidence "casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material [**11] bearing on some essential aspect of the offense being tried." *Williams v. State, 110 So. 2d at 662*.

Here, the critical issue at trial was whether the defendant accidentally shot Maria. Since there were no eyewitnesses to the shooting, the credibility of the defendant and his story, were crucial to the outcome of the case. n3 The evidence that the defendant had previously threatened someone close to him during a domestic dispute with a firearm, directly related to the central issue in the case -- the defendant's claim that he was "cleaning" the gun which "accidentally" discharged while arguing with Maria, as opposed to "threatening" Maria with the gun when she was shot and killed.

> n3 Significantly, the defendant testified during direct examination that the semi-automatic murder weapon was "accidentally" in a single-action mode (cocked and loaded). Thus the defendant raised the issue of intent when he testified that he "accidentally" stored the semi-automatic in a "cocked" position and that Maria was shot because his finger slipped on the trigger as he was removing the weapon from a closet.

[**12] Because intent is often the most difficult element to prove in an unwitnessed crime where the victim is dead, evidence reflecting on the defendant's intent is clearly probative with regard to a claim of accidental [*111] shooting. The former wife's testimony that the defendant threatened her with a gun during a domestic dispute tends to negate the likelihood that the shooting was accidental. We find the ex-wife's testimony was relevant in ascertaining the defendant's motive and intent with regard to the claim Maria's shooting was accidental. n4

> n4 The prior incident admitted into evidence through the ex-wife's impeachment testimony involved significant similarities to the facts of this case. In both incidents, the defendant chose to use a semi-automatic weapon, which requires the weapon to be cocked with safety off and loaded in order to be fired. Both incidents involved a woman with whom the defendant was having an intimate relationship. Both incidents involved acts of violence taking place in a relationship context and circumstances involving domestic disputes.

[**13]

Having established the ex-wife's testimony was relevant, we now determine whether or not it is precluded by a specific rule of exclusion. In this regard, the trial court has broad discretion not only in determining the relevance of evidence, but also in determining whether its probative value outweighs any prejudicial effect, thereby rendering such evidence admissible. See *§ 90.403*, Fla. Stat. (1997); *Rodriguez v. State, 753 So. 2d 29 (Fla. 2000); Williamson v. State, 681 So. 2d 688 (Fla. 1996)*, cert. denied, *520 U.S. 1200, 117 S. Ct. 1561, 137 L. Ed. 2d 708 (1997)*. Such a determination will not be disturbed on appeal absent an abuse of discretion. See *Heath v. State, 648 So. 2d 660 (Fla. 1994)*. Keeping these standards in mind, we determine that the trial court did not abuse its discretion in admitting this evidence.

Section 90.404(2)(a) prohibits the introduction of similar fact evidence of other crimes, wrongs, or acts, where such evidence is relevant solely to prove bad character or to show the defendant possesses a propensity for criminal behavior. Section 90.404(2)(a) specifically [**14] allows the admissibility of similar fact evidence to prove a material fact in issue, such as "intent" and "absence of mistake or accident." Accordingly, a trial judge has the discretion to admit similar fact evidence when it is relevant as to a non-character aspect in the case.

Here, the evidence of a threat against a previous partner involving a gun had the purpose of assisting the

jury to understand defendant's conduct at the time of the shooting with regard to the defendant's intent and his claim of accident. The evidence was admitted for the appropriate purpose of showing the defendant's motive and intent at the time of the shooting he claims was accidental. n5 See *Smith v. State, 232 Ga. App. 290, 501 S.E.2d 523 (Ga. Ct. App. 1998)* (evidence defendant previously attacked estranged wife admissible to show intent and disprove defense of accident); *State v. Grubb, 111 Ohio App. 3d 277, 675 N.E.2d 1353 (Ohio Ct. App. 1996)* (former wife's testimony admissible to prove intent and lack of accident in domestic violence case where defendant claimed injuries were accidental); *State v. Clark, 179 Wis. 2d 484, 507 N.W.2d 172 (Wis. Ct. App. 1993)* [**15] (former girlfriend's testimony admissible to show intent and [*112] rebut defendant's claim of accident). Cf. *Gore v. State, 719 So. 2d 1197 (Fla. 1998)* (evidence not admissible because sole relevance was to demonstrate bad character). We conclude this evidence was admissible pursuant to the motive and intent exceptions to the general exclusionary rule. n6

> n5 The case of *State v. Grubb, 111 Ohio App. 3d 277, 675 N.E.2d 1353 (Ohio Ct. App. 1996)* is particularly instructive with regard to this critical fact. The defendant in Grubb claimed self-defense, and testified that his wife's injuries were "accidental." On rebuttal, the state introduced testimony of a former wife who stated the defendant had assaulted her during their marriage. The court held the former wife's testimony was admissible with respect to the issues of intent and lack of accident stating:

> The defendant not only asserted a claim of self-defense but his testimony also raised an issue regarding whether his wife's injuries were "accidental" and not the result of any intentional (or knowing) conduct on his part. To that extent "intent" and "lack of accident," two matters specifically identified in Evid.R. 404(B), were in issue in this case. Accordingly, the state was entitled to utilize the evidence regarding defendant's assaults on his former wife pursuant to Evid.R. 404(B) not for the purpose of showing that on this occasion defendant acted in conformity with that character, but to prove his intent (culpable mental state) and the lack of accident, in this case.

> *State v. Grubb, 675 N.E.2d at 1356.* [**16]

n6 Many states allow prior misconduct evidence in cases involving domestic violence as

probative of intent, to rebut allegations by the defendant that the injuries suffered by the victim were the result of a mistake. See e.g., *Wetta v. State, 217 Ga. App. 128, 456 S.E.2d 696 (Ga. Ct. App. 1995)* (testimony by defendant's prior girlfriend that he abused her as well was admissible to show defendant's state of mind in battery case); *State v. Jacobs, 939 S.W.2d 7 (Mo. Ct. App. 1997)* (evidence of prior domestic abuse admissible to show intent and motive); *People v. Hawker, 215 A.D.2d 499, 626 N.Y.S.2d 524(N.Y. App. Div. 1995)* (allowing testimony by children in murder case who witnessed the defendants' prior assaults on their mother to show motive, intent, and that murder was continuation of pattern rather than merely product of self defense); *State v. Smith, 868 S.W.2d 561 (Tenn. 1993)* (evidence of two prior unconvicted charges for assault were relevant and admissible to establish motive for murder -- evidence of old threats relevant to show malice, premeditation and defendant's state of mind). These cases reveal numerous states have departed from the traditional hesitancy to admit similar fact evidence in recognition of the significant probative value such evidence has under these unique circumstances.

[**17]

We must next determine whether the trial court properly found that any prejudice in the admission of this evidence was outweighed by its probative value. In this regard, we note that almost all evidence to be introduced by the state in a criminal prosecution will be prejudicial to a defendant. See *Amoros v. State, 531 So. 2d 1256 (Fla. 1988)*. However, even evidence which incidentally places a defendant's character in issue is admissible where substantially relevant to show some other purpose than to show propensity. See *Williamson v. State, 681 So. 2d at 695.*

While we recognize the ex-wife's testimony was undeniably prejudicial to the defendant, it was also critically relevant in tending to establish the defendant's motive and did not lessen the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt. See *Summit v. State, 285 So. 2d 670 (Fla. 3d DCA 1973)* (evidence of similar conduct toward another person, was relevant and admissible to show character of the deed as to motive intent and absence of mistake). See also, *People v. Hawker, 215 A.D.2d 499, 626 N.Y.S.2d 524 (N.Y. App. Div. 1995)* [**18] (evidence of prior assaults probative value with regard to motive and intent outweighed potential for incidental prejudice); *People v. Sims, 110 A.D.2d 214, 494 N.Y.S.2d 114 (N.Y. App. Div.*

Ŭ ʊ ʊ ʊ ɩ . ʊ .

*1985)* (evidence admissible to show absence of mistake; probative value outweighed potential prejudice). Thus we find the trial court properly balanced the import of this relevant evidence against the danger of prejudice, and properly determined it's probative value outweighed its prejudicial effect. See *State v. Jacobs, 939 S.W.2d at 7* (probative value of evidence of violence in relationship with victim established defendant's motive and thus outweighed prejudicial effect); *People v. Hines, 260 A.D.2d 646, 690 N.Y.S.2d 63 (N.Y. App. Div. 1999)* (probative value of prior domestic violence evidence outweighed prejudicial effect). n7

n7 We note that some states have enacted specific evidentiary rules to allow evidence of prior domestic violence acts by the accused to be admitted in domestic violence cases. See Cal. Stat. § 1109 (2000), Col. Stat. § 18-6-801.5 (1999), Alaska R. Evid. 404(b)(4), *Minn. Stat. § 634.20 (1998)*. The significance of these statutes from an evidentiary standpoint is profound. Oftentimes the outcome of a domestic violence prosecution cannot rest upon the credibility of the victim who either recants, fails to appear, or, as in the present case, is dead. The introduction of prior domestic violence acts of the defendant thus becomes critical. Such evidence often means the difference between conviction and acquittal.

[**19]

In conclusion, the ex-wife's testimony was properly admitted pursuant to the motive and intent exceptions to the general exclusionary rule, and also for impeachment [*113] purposes. n8 The prior incident was clearly relevant, and especially probative, in rebutting the defense that Maria's shooting death was a mistake. Finding no abuse of discretion in the trial court's well-reasoned application of established evidentiary principles, we affirm the defendant's judgment and sentence for second degree murder.

n8 Other state courts have recognized that evidence of prior bad acts is especially probative in overcoming a defense based upon mistake in domestic violence cases. See *Smith v. State, 232 Ga. App. 290, 501 S.E.2d 523 (Ga. Ct. App. 1998); People v. Davis, 216 A.D.2d 485, 628 N.Y.S.2d 742, 743 (N.Y. App. Div. 1995); People v. Henson, 33 N.Y.2d 63, 304 N.E.2d 358, 349 N.Y.S.2d 657 (N.Y. 1973)*. As explained by one court:

In cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment. A prior act can show the accused's attitude or mindset (i.e., his bent of mind) as to how children or sexual partners should be treated or "disciplined." A prior act can also show his actual course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern.

*Smith v. State, 501 S.E.2d at 527, 528* (footnotes omitted).

[**20]

Affirmed.

COPE, GODERICH AND GREEN, JJ., CONCUR.

## CONCURBY:
SCHWARTZ

## CONCUR:

SCHWARTZ, Chief Judge (specially concurring).

I agree with those portions of Judge Gersten's opinion which find that the defendant's prior threat was both relevant and not excluded by any pertinent rule of evidence, specifically the one established in *Williams v. State, 110 So. 2d 654 (Fla. 1959)*, cert. denied, *361 U.S. 847, 80 S. Ct. 102, 4 L. Ed. 2d 86 (1959)*. Moreover, unlike Judge Sorondo, I do not believe that there is any procedural obstacle, by way of any cognizable prejudice to the appellant, to the consideration of this ground as a basis for decision. Without reaching, therefore, the "impeachment" issue, I concur in affirmance.

JORGENSON and LEVY, JJ., CONCUR.

## DISSENTBY:
SORONDO

## DISSENT:

SORONDO, J. (dissenting)

I respectfully dissent. In the interest of clarity, I withdraw my concurring panel opinion and incorporate herein all aspects of my position in this case.

The majority holds that evidence of defendant's prior misconduct is admissible. [**21] Judge Gersten, joined

by Judges Cope, Goderich and Green, posits that it constitutes legitimate impeachment because defendant opened the door to this area of inquiry by lying. n9 The majority of this Court holds that the evidence was nevertheless admissible under *section 90.404(2)(a)*, Florida Statutes (1997). My analysis of these issues follows.

> n9 This argument has obviously not secured the approval of a majority of the judges of this Court and is therefore not the holding of this case. Nevertheless, I address the issue in the event the Florida Supreme Court decides to grant discretionary review.

## I. THE IMPEACHMENT ISSUE

The impeachment argument is based on *section 90.608(5)*, Florida Statutes (1997). The statute reads as follows:

Any party, including the party calling the witness, may attack the credibility of a witness by:

....(5) Proof by other witnesses that material facts are not as testified to by the witness being impeached.

The opinion [**22] concludes that this section allows the impeachment of the defendant because he responded untruthfully to the prosecutor's question.

Judge Gersten begins his discussion of this issue at page four of his opinion. The opinion relates defendant's testimony that he was not very familiar with the handgun that fired the shot that killed the alleged [*114] victim in this case. The opinion goes on to note that without objection defendant was asked "about his military experience, and his previous use of such weapons as M-16 rifles, handguns, M60's, sporting guns and a Russian rifle." Maj. op. at 4. n10

> n10 Judge Gersten then points out that the only objection involved mention of the AK-47 rifle. This can be interpreted to suggest that these issues were not properly preserved for appellate review. The opinion correctly indicates that defendant did not object to questions dealing with his prior experience with firearms. However, he did object, and properly preserved, the issue under consideration here. The exact exchange follows:

Q. State : In fact, you are familiar with large assault rifles, weren't (sic) you?

A. Defendant : Several models, yes sir.

Q. State : In fact, you purchased an AK-47, didn't you?

Defense Counsel : *Objection, Judge...*

Court : Overruled.

Q. State : Isn't that correct, Mr. Robertson?

A. Defendant : Yes, right after Hurricane Andrew I did.

Q. State : And in fact, isn't it a fact that you have threatened people with assault rifles before?

Defense Counsel : *Objection, Your Honor...*

Court : Overruled. You can answer "yes" or "no", sir.

A. Defendant : No.

Q. State : You have never threatened anyone close to you with an AK-47, Mr. Robertson?

A. Defendant : I have never threatened anybody close to me with a weapon, anybody period, with a weapon, sir.

(Emphasis added). Accordingly, defendant recorded his objection to the prosecutor's question and properly preserved the issue of the impropriety of the question for appellate review.

[**23]

There is, as defense counsel obviously realized, a significant difference between the general question of defendant's experience with firearms and the issue of defendant's experience with the AK-47 in question. Because the defense was accidental shooting, evidence of defendant's prior experience in the handling of firearms was unquestionably relevant to rebut the likelihood that such an experienced individual could be so monumentally reckless in the handling of the firearm used in the present case. n11 Defense counsel objected to the AK-47 inquiry because he obviously knew where it was going.

> n11 It is important to note that the prosecutor's question about defendant's prior experience with firearms does not raise the issue of any prior bad act committed by defendant. Possession and knowledge of firearms is not a crime. There was no suggestion of impropriety in

Issue.20

defendant's acquaintance with guns, particularly where the nature of the inquiry implied that defendant's experience with firearms was obtained in the military.

**[**24]**

The opinion avoids the central issue presented by this part of its analysis by glossing over the impermissible nature of the follow-up question asked by the prosecutor, "... isn't it a fact that you have threatened people with assault rifles before?" This question is exactly the same as asking, "... isn't it a fact that you have committed aggravated assaults in the past?" Florida law is clear that such a question is forbidden, see *Fulton v. State, 335 So. 2d 280 (Fla. 1976); Watson v. Campbell, 55 So. 2d 540, 541 (Fla. 1951)* ("Evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness."), unless the defendant *preliminarily* opens the door to that area of inquiry by placing his character at issue, by purposely giving misleading or untruthful testimony during his direct examination, or by doing so in an unsolicited manner during cross-examination. See *Bozeman v. State, 698 So. 2d 629 (Fla. 4th DCA 1997)*. n12

> n12 Judge Gersten's direct response to this opinion is contained in footnote 2 of his opinion, where the claim is again made that the prosecutor's question was permissible. I still do not know what facts raised during defendant's direct examination were clarified by the prosecutor's question, nor can I agree that the question served "to contradict the defendant's statements regarding his familiarity with *the* gun, and his claim that *the* gun fired accidentally in causing Maria's death." As discussed herein, the prosecutor asked thorough, permissible, questions concerning defendant's experience with firearms. These questions legitimately served to rebut defendant's claim that he inadvertently mishandled the gun that killed the victim so that it discharged accidentally. This was done without attacking defendant's character. The question at issue here, however, was totally impermissible and a direct attack on defendant's character.

Moreover, the defendant did not say on direct-examination that he was unfamiliar with firearms, he said that he was unfamiliar with the handgun that killed the victim - a Ruger .40 caliber revolver. I fail to see how his alleged threat to his former wife with an AK-47 assault rifle serves to rebut his claim of inexperience with the revolver in question.

**[*115]  [**25]**

The defendant did not place his character at issue during his direct-examination. Nor did he place it at issue by gratuitously volunteering favorable information during cross-examination. He, therefore, did not "open the door" to the alleged prior crime introduced against him. Accordingly, the sole and extremely narrow issue remaining, is whether the state can, by asking a blatantly improper question on cross-examination, open the door to otherwise inadmissible character evidence under the guise of impeachment or rebuttal. The answer is a resounding and inescapable, no.

Ironically, one of the cases cited as an example for Florida to follow, as concerns the Williams rule issue, specifically rejected the proposed impeachment argument. See *State v. Grubb, 111 Ohio App. 3d 277, 675 N.E.2d 1353 (Ohio Ct. App. 1996)*. There, the state argued that the defendant's testimony that he was a peaceful person opened the door to the introduction of two incidents where the defendant assaulted his former wife during their marriage. The Court stated:

> Defendant did not testify on direct examination that he is a peaceful person or that he has never assaulted any woman, including **[**26]** his former wife. Rather, it was the state that elicited that testimony from defendant on cross-examination by the use of specific questions designed for just that purpose. The defense objected, unsuccessfully, to that questioning. Because defendant made no claim at trial regarding his own good character, i.e., did not put his character in issue, the testimony of defendant's former wife, ...,was not admissible ... to rebut same. The prosecution cannot circumvent the limited nature of the exception provided in the rule by putting the character of an accused in issue via its own questions, and then present evidence to rebut the answers.

*Id 675 N.E.2d at 1355* (citations omitted). Although the Court ultimately allowed the introduction of the other crime evidence, it did so on other grounds and not because the defendant had placed his character at issue. Id. at 1356. n13

> n13 As explained below, the facts of Grubb were different than those in the present case. In Grubb, the accused was charged with a completed crime of violence and the prior bad act also involved a completed crime of violence and not just a threat.

**[**27]**

Florida has embraced the same reasoning. In *Bozeman v. State, 698 So. 2d 629 (Fla. 4th DCA 1997),* the Court stated:

> To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled. ... The "opening the door" concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in *direct- examination*.

*Id. at 630-31* (emphasis added). See *McCrae v. State, 395 So. 2d 1145 (Fla. 1980)* (where defense counsel's questioning communicated the erroneous impression that defendant's prior convictions were inconsequential, the state was properly permitted to elicit the nature of the defendant's prior felony conviction on cross-examination); *Allred v. State, 642 So. 2d 650 (Fla. 1st DCA 1994)* (by testifying that he lacked a violent propensity and asserting that he had never hit a woman, defendant opened the door to rebuttal evidence that he had previously physically [**28] assaulted his former wife and a girlfriend); *Fletcher v. State,* [*116] *619 So. 2d 333 (Fla. 1st DCA 1993)* (where defendant testified during his direct examination that he had never pointed a gun at anybody and that he was a responsible user of firearms, the state was properly allowed to introduce evidence of an episode wherein the defendant used a firearm recklessly); *Brown v. State, 579 So. 2d 898 (Fla. 4th DCA 1991)* (where defendant tried to enhance his credibility by telling the jury that he had been a law enforcement officer, the trial court properly allowed the state to bring out on cross-examination that defendant had been fired from his job as a corrections officer); *Hernandez v. State, 569 So. 2d 857 (Fla. 2d DCA 1990)* (where, during cross-examination, defendant *volunteered* statements that he had never done any drug-related deals in his life, he opened the door to questioning about a heroin deal he had arranged two days prior to the instant offenses); *Dodson v. State, 356 So. 2d 878, 879 (Fla. 3d DCA 1978)* (where questions on direct examination of defendant created a basis for inference that there was one [**29] prior conviction for auto theft and that there were other crimes, i.e., crimes other than theft, the state was properly allowed to clarify on cross-examination that the "other crimes included auto theft and theft of other properties"); *Davis v. State, 216 So. 2d 87 (Fla. 2d DCA 1968)* (The trial court did not err in allowing the state to cross-examine defendant about charges of exhibiting a dangerous weapon where, on direct examination, defendant had repeatedly asserted that he never possessed firearms of any nature since moving to Sarasota).

Based on the cases set forth above, I conclude, as did then Judge, now Justice Barbara Pariente in her concurring opinion in *DeFreitas v. State, 701 So. 2d 593, 605 (Fla. 4th DCA 1997),* that "it is ... difficult to understand how the state can claim that defendant opened the door when it was the prosecutor who asked the series of impermissible questions concerning prior acts of misconduct on cross-examination." n14

> n14 *Section 90.404(2)(b)*, Florida Statutes (1997), requires that the state provide the defense with notice of intent to rely on similar fact evidence of other crimes, wrongs or acts, ten days before trial. The state provided no such notice in this case. A fact which, given the state's usual aggressive pursuit of this type of evidence, suggests that it did not believe the evidence in question was admissible under the rule. It is therefore clear that the state did not intend to introduce this evidence to prove intent or absence of mistake or accident during its case in chief. In my view, the only reason why the state listed the witness was in anticipation that defendant might inadvertently open the door to such evidence. Because defendant did not, the state smashed the door open itself during cross-examination and proceeded to introduce the evidence.

[**30]

In support of his position to the contrary, Judge Gersten relies on *Fletcher v. State, 619 So. 2d 333 (Fla. 1st DCA 1993),* and *Hernandez v. State, 569 So. 2d 857 (Fla. 2d DCA 1990).* Neither case supports the legal conclusion for which it is cited. n15

> n15 Judge Gersten's reliance on *C.M. v. State, 698 So. 2d 1306 (Fla. 4th DCA 1997),* and *Ashcraft v. State, 465 So. 2d 1374 (Fla. 2d DCA 1985),* is also misplaced. These cases are clearly distinguishable from the present case. In C.M., the arresting officer testified that after she spoke to the victim and received a description of the defendant she found defendant approximately three blocks away. She further testified that when defendant saw her police car, he ran.
>
> C.M. testified that he ran from the police because he thought he was being sought by them for skipping school. On cross-examination the prosecutor asked him whether he had seen any officers earlier that day. C.M. stated that he had not.

On rebuttal, the arresting officer testified that she had seen C.M. earlier the same day and actually had contact with him. At that earlier time, C.M. did not flee when approached by the police.

The defense objection in C.M. was that the officer's rebuttal testimony constituted impermissible impeachment on a collateral matter. The objection was overruled and the trial court accepted the state's argument that the rebuttal testimony went to the defendant's truthfulness and also to discredit his explanation for fleeing when he saw the police. The appellate court affirmed, holding that "C.M.'s flight was a 'material fact' within the meaning of section 90.608(5), because it was circumstantial evidence that he attempted to rob the victim ..." *C.M., 698 So. 2d at 1307.*

C.M. is distinguishable from the present case in that it does not involve impeachment with the use of character evidence. This alone makes it totally irrelevant to the present analysis. Additionally, C.M. explained on direct examination his reason for fleeing from the police. It was therefore perfectly permissible for the state to pursue that line of questioning on cross-examination. Finally, the state's question on cross-examination was not an improper question on a generally forbidden subject as was the question in the present case.

In Ashcraft, the state introduced evidence of the specific nature of the defendant's prior conviction, rape. It argued that the defendant opened the door to this evidence by testifying that he had never hurt anyone. The Second District Court of Appeal characterized what happened in the lower court as follows:

In his testimony on *direct examination* defendant undertook to relate to the jury what occurred on the date of the crimes for which he was on trial but digressed and referred to prior crimes. In doing so defendant misled the jury by saying that he had never hurt anyone during those prior crimes.

*Ashcraft, 465 So. 2d at 1375* (emphasis added). The Court went on to affirm the defendant's conviction. Although this case did involve character evidence, the state was allowed to impeach the defendant in a manner that would ordinarily be impermissible because the defendant opened the door to such questioning during his direct-examination. I further note that

Ashcraft does not rely upon or even mention section 90.608(5).

[*117] [**31]

In Fletcher, defendant testified *during direct examination* that he had never pointed a gun at anyone and that he was a responsible user of firearms. In response to this assertion, the state questioned defendant about another incident during which he had displayed a gun tucked in his waist. He denied it. The state then recalled the victim of the charged offense who testified that defendant had displayed a firearm in the presence of the victim and another person on an occasion prior to the commission of the charged offenses.

The First District Court of Appeal correctly held that defendant had opened the door to the introduction of the prior incident. *Fletcher, 619 So. 2d at 334.* Fletcher is distinguishable from the present case in that the door to the otherwise impermissible evidence of prior bad acts was opened by the defendant during direct examination.

In Hernandez, the defendant was charged with trafficking in cocaine and conspiracy to traffic in cocaine. The charges arose from a sting operation where a police informant arranged a cocaine purchase between the defendant and undercover detectives. At trial, the defendant testified that he believed [**32] he was working with police to set up his "Colombian connection" at the time he was arrested. During cross-examination, the defendant *volunteered* that he had never done any drug-related deals in his life. In response to this *unsolicited*, self-serving and false statement the state was correctly allowed to ask the defendant about a heroin deal he arranged between the informant and a third person two days prior to the charged offenses. *Hernandez, 569 So. 2d at 859.*

A second issue in Hernandez involved the defendant's testimony on cross-examination that he had not intentionally done anything during the events leading to the charged offense that would have indicated to police that he was not working for them. In response to this assertion, the state was allowed to ask the defendant whether he had made a statement suggesting that he had just "shot up" drugs in another room. He denied that he had.

The state then recalled the undercover officers who testified that at one point during the undercover drug transaction, the defendant had entered the bathroom and upon exiting made a statement to the effect that he had just "shot up."

The Second District [**33] Court of Appeal held that the statement was admissible to rebut the defense since "a person who believed that he was in the presence

of police detectives generally would not state that he had just shot up illegal drugs." *Hernandez, 569 So. 2d at 859.* [*118]

The second issue in Hernandez is distinguishable from the case at bar in that there is no indication that the question posited by the prosecutor in cross-examination in Hernandez, which elicited the defendant's false statement, was an impermissible question. Additionally, the "shooting up" incident occurred contemporaneously with the charged offense and was arguably inextricably intertwined therewith.

I do not challenge the general proposition that evidence of a prior crime may be admissible when it is relevant to rebut a criminal defendant's untruthful testimony. I do, however, reject the suggestion that the prosecution can open the door to otherwise inadmissible evidence by securing an impeachable response from the accused by way of an impermissible question.

## II. THE WILLIAMS RULE ISSUE

The majority's conclusion that the evidence was admissible under the Williams rule is incorrect.

### [**34] A. Inapplicability of the Tipsy Coachman Doctrine.

It should be understood that the Williams rule arguments contained in the majority's opinion were never presented to or considered by the trial judge. The majority considers the Williams rule issue on the basis of the so-called "tipsy coachman" doctrine, which holds that "in some circumstances, even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling." *Dade County School Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999);* see also *Carraway v. Armour & Co., 156 So. 2d 494 (Fla. 1963); Lowery v. State, 766 So. 2d 417 (Fla. 4th DCA 2000).* For the following reasons, this analysis is inappropriate in this case.

The state never filed a notice of intent to rely on evidence of defendant's prior misconduct in this case. Consequently, the admissibility of the evidence in question was never litigated within the parameters of *section 90.404(2)(a),* Florida Statutes (1997). Because the matter was not at issue, defendant did not [**35] have an opportunity to present evidence or arguments against the admissibility of this evidence under the Williams rule. In *State, Dept. of Revenue ex rel. Rochell v. Morris, 736 So. 2d 41, 42 (Fla. 1st DCA 1999),* the First District Court of Appeal stated that "for the appellee to argue affirmance based upon the application of this so-called 'tipsy coachman' rule, ...,the appellee's argument on appeal must be supported by evidence in the

record." The Court went on to conclude that there was an insufficient evidentiary basis in the record to permit such a determination. Id. The same situation exists in the present case.

This case is distinguishable from cases where the state files its notice of intent to rely on evidence of other crimes and the issue of admissibility is thoroughly litigated by both sides. In such cases, if the trial court were to exclude the state's Williams rule evidence and subsequently erroneously admit it on other grounds, the appellate court would be in a position to review the record and make a determination that although the trial judge was wrong to admit the evidence for the grounds stated, it should never have excluded the same [**36] under a Williams rule analysis. In the present case, defendant was never heard on the Williams rule issue because it was never raised. He never received an opportunity to present evidence or make argument as to why the incident involving his ex-wife should not have been admitted under the Williams rule. n16 Two possibly meritorious arguments [*119] are apparent on the face of the record.

> n16 Along this line, I note that defendant was totally unprepared to defend against the ex-wife's testimony. Although she had been listed as a witness and deposed by defense counsel, her testimony was obviously inadmissible in the absence of a notice of intent to rely on evidence of other crimes or defendant somehow opening the door to her testimony. Since the state had not given the required notice, by avoiding the dreaded "door," defense counsel did not have to prepare a defense to her testimony. When the ex-wife was nevertheless allowed to testify to an event she alleged happened but did not report to the police or anyone else, defense counsel was left without any way to challenge her testimony. His only question to her concerned the reason for her divorce from defendant. She explained that she left the defendant when she caught him in their marital bed with another woman.

### [**37]

In order for defendant's prior crimes to be admissible, the trial court must be persuaded by clear and convincing evidence that such crimes were, in fact, committed. See *State v. Norris, 168 So. 2d 541, 543 (Fla. 1964); Audano v. State, 641 So. 2d 1356, 1358-59 (Fla. 2d DCA 1994); Chapman v. State, 417 So. 2d 1028, 1031 (Fla. 3d DCA 1982).* In order to establish the alleged prior crime, the state presented only the testimony of defendant's ex-wife. There was absolutely

no corroboration of her testimony. She did not report defendant's alleged misconduct to the police at the time of the alleged offense, and no investigation was ever conducted. There is absolutely no indication in this record that the trial judge was aware that she needed to make a credibility assessment and the additional determination that the prior crime was established by clear and convincing evidence by the ex-wife's testimony.

The other issue that is potentially meritorious is the temporal remoteness of the alleged collateral crime in this case. Because appellate review of Williams rule issues is extremely fact intensive, the resulting case law is often less [**38] than a model of uniformity. Florida's appellate courts have addressed the question of when a collateral crime is too remote on several occasions. These cases are consistent only in their inconsistency. See *McGough v. State, 302 So. 2d 751 (Fla. 1974)* (collateral crime committed four years earlier was too remote); *Gluck v. State, 62 So. 2d 71 (Fla. 1952)* (collateral crime committed three or four years before crime charged was too remote); *Farnell v. State, 214 So. 2d 753 (Fla. 2d DCA 1968)* (collateral crimes committed eleven and twelve years earlier were too remote). But see *State v. Statewright, 300 So. 2d 674 (Fla. 1974)* (collateral crimes that occurred five years prior to crime charged were *not* too remote); *Duffey v. State, 741 So. 2d 1192 (Fla. 4th DCA 1999)* (collateral crimes which occurred twelve years prior to charged offense *not* too remote); *Townsend v. State, 420 So. 2d 615 (Fla. 4th DCA 1982)* (collateral crimes committed five to six years after the charged offenses were *not* too remote); *Watkins v. State, 363 So. 2d 575 (Fla. 3d DCA 1978)* [**39] (testimony related to a common scheme or plan some six years before the charged offense was *not* too remote); *Crosby v. State, 237 So. 2d 286 (Fla. 2d DCA 1970)* (offenses occurring four years prior to the offense charged were *not* too remote). In most instances, these cases offer little analysis on the issue.

In Duffey, the Fourth District Court of Appeal explained that "under section 90.404(2)(a) the remoteness of a prior crime is one aspect of its relevance, its tendency to prove or disprove a material fact in issue." *741 So. 2d at 1197.* In *Heuring v. State, 513 So. 2d 122 (Fla. 1987),* the Florida Supreme Court stated that when faced with the claim that prior crimes are too remote to be relevant, the trial court must consider not the passage of time alone, but the effect of the passage of time on the evidence. Remoteness in terms of the passage of time precludes the use of evidence that has become unverifiable through loss of memory, unavailability of witnesses and the like.

*Id. at 123* (quoting *Heuring v. State, 495 So. 2d 893, 894 (Fla. 1st DCA 1986),* vacated on other grounds, [**40] *513 So. 2d at 122 (Fla. 1987)).* In addition, the trial court should take into account that the "absence of similar [*120] conduct for an extensive period of time might suggest that the conduct is no longer characteristic of the defendant." Id. at 124.

In the present case, the record simply does not permit a full examination of the factors necessary to determine whether defendant's prior misconduct is too remote to be relevant. Assuming for the sake of argument that the introduction of a prior threat of violence against a different victim is admissible at all, it would be reasonable and relevant to explore whether there were any domestic relationships between defendant's previous marriage and his marriage to the victim in this case. The existence of intervening relationships without any threats of violence would certainly raise the possibility considered by the Supreme Court in Heuring that the prior misconduct "is no longer characteristic of the defendant." Id. As I have already mentioned, defendant did not have the opportunity to explore this or any other potential argument on this issue. In short, the present record does not allow for an affirmance based on the Tipsy [**41] Coachman doctrine.

**B. The Inadmissibility of the Evidence under the Williams Rule.** The majority takes the position that the evidence in question here was admissible under section 90.404(2)(a). I strongly disagree.

Preliminarily, it is important to emphasize that the Williams rule evidence in this case involves a prior bad act or crime allegedly committed by the defendant against someone other than the victim in the charged offense. The analysis that follows does not apply to cases where the accused's prior misconduct was directed against the same victim as in the charged offense. It appears that most courts, for good reason, are far more likely to admit collateral crime evidence such as that in this case, when such prior crime(s) was committed against the victim in the charged offense. n17

n17 See generally *Gattis v. State, 637 A.2d 808 (Del. 1994); People v. Illgen, 145 Ill. 2d 353, 583 N.E.2d 515, 164 Ill. Dec. 599 (Ill. 1991); State v. Williams, 672 So. 2d 1150 (La. Ct. App. 1996); State v. Danikas, 11 S.W.3d 782 (Mo. Ct. App. 1999); People v. Hawker, 215 A.D.2d 499, 626 N.Y.S.2d 524 (N.Y. App. Div. 1995); People v. Johnson, 213 A.D.2d 675, 624 N.Y.S.2d 206 (N.Y. App. Div. 1995); State v. Smith, 868 S.W.2d 561 (Tenn. 1993); Abbott v. Commonwealth,*

*2000 Va. App. LEXIS 17, 2000 WL 29992* (Va. Ct. App. Jan. 18, 2000).

[**42]

In support of its position, the majority cites a total of twelve out-of-state cases. Five of those cases, *People v. Henson, 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (N.Y. 1973), People v. Hines, 260 A.D.2d 646, 690 N.Y.S.2d 66 (N.Y. App. Div. 1999), People v. Hawker, 215 A.D.2d 499, 626 N.Y.S.2d 524 (N.Y. App. Div. 1995), State v. Jacobs, 939 S.W.2d 7 (Mo. Ct. App. 1997),* and *State v. Smith, 868 S.W.2d 561 (Tenn. 1993),* are not applicable to the present analysis because they deal with instances where the defendant's prior misconduct was directed towards the same victim as in the charged offense.

Six of the cases cited, *Smith v. State, 232 Ga. App. 290, 501 S.E.2d 523 (Ga. Ct. App. 1998), Howard v. State, 228 Ga. App. 775, 492 S.E.2d 683 (Ga. Ct. App. 1997), Wetta v. State, 217 Ga. App. 128, 456 S.E.2d 696 (Ga. Ct. App. 1995), People v. Sims, 110 A.D.2d 214, 494 N.Y.S.2d 114 (N.Y. App. Div. 1985), State v. Grubb, 111 Ohio App. 3d 277, 675 N.E.2d 1353 (Ohio Ct. App. 1996),* and *State v. Clark, 179 Wis. 2d 484, 507 N.W.2d 172 (Wis. Ct. App. 1993),* [**43] are distinguishable in that they involve factual scenarios that are different than the one in the present case. Although the collateral crimes in these cases involved victims other than the one in the charged offense, in all six cases the defendants were charged with completed crimes of violence and the collateral crimes were also completed crimes of violence.

The last case, *People v. Davis, 216 A.D.2d 485, 628 N.Y.S.2d 742 (N.Y. App. Div. 1995),* is a fact scant opinion that was decided on the grounds that the appellant did not properly preserve his claims of error. The discussion [*121] of the collateral crimes involved in that case is therefore dicta.

There are, however, out-of-state cases that are more closely applicable to the present analysis. In *Knick v. Commonwealth, 15 Va. App. 103, 421 S.E.2d 479 (Va. Ct. App. 1992),* a case that is virtually identical to the present one, the defendant, a deputy sheriff, was convicted of second degree murder in the shooting death of his wife. Defendant claimed that in an effort to frighten her, he pointed his service revolver at his wife. He testified that she pushed herself up from the floor where she was sitting [**44] and grabbed the barrel of the gun. Her actions, he testified, caused him to fall forward and the gun accidentally discharged and killed her.

In its rebuttal case, the prosecution introduced evidence that the defendant had, on two occasions, assaulted his ex-wife by pulling his service revolver, pointing it at her head and threatening to kill her.

The Court reversed the defendant's conviction saying:

We hold that the trial court erred in admitting this evidence because it did not tend to disprove defendant's contention that he accidentally discharged the firearm. It merely showed that the accused was guilty of prior bad acts and that he was disposed to commit an offense similar to that charged.

*Knick, 421 S.E.2d at 480.* I agree with this decision and similarly believe that the sole purpose served by the evidence at issue here was to establish that the defendant had a propensity to commit violent crimes with firearms - a clearly impermissible purpose. I therefore conclude that evidence of the defendant's prior misconduct against his former wife was not admissible in this case under section 90.404(2)(a), either in the state's case-in-chief or as impeachment or [**45] rebuttal under section 90.404(2)(b).

I am concerned about the far-reaching consequences of the majority's opinion. The Court holds that in a case where the accused is charged with a completed substantive violent offense and defends by raising the defense of accident, evidence of a prior incident involving a threat of violence directed to a person other than the victim in the charged offense is admissible to prove motive, intent or absence of mistake or accident.

The defendant in this case was charged with the completed, violent offense of second degree murder. The prior, alleged misconduct was an offense that threatened violence. Although such a prior threat against the victim in this case, if not too remote, may have been admissible to show intent and the absence of mistake or accident, the same cannot be said of a threat against another. Reducing these events to their simplest and most common form - if the defendant had been charged with aggravated battery by punching his wife in the nose and breaking it, and he defended by claiming that he accidentally struck her while flailing his arms during an argument, under the majority's reasoning, evidence that the defendant [**46] had threatened to punch a former wife in the nose six years earlier would be admissible to rebut his claim of accident. n18 / n19 As morally satisfying [*122] as this type of evidence may be, in my judgment, such evidence serves only to establish defendant's propensity to commit violent crimes.

n18 Without belittling the tragic subject of domestic violence in any way, but in an effort to communicate my concern, I use a light-hearted example which I believe is illustrative. Depending on his or her age, the reader may remember the very popular television comedy series called, "The Honeymooners." Imagine for a moment that the irrepressible fictional character Ralph Kramden divorced his beloved Alice. Assume further that he remarried a woman who during the course of their marriage accused Kramden of punching her in the nose on a particular occasion. Under this Court's holding in this case, if Mr. Kramden claimed that the blow to his wife was an accident, the prosecution would be entitled to introduce into evidence the many times Kramden threatened to send his ex-wife Alice "to the moon," while displaying a clenched fist. This, notwithstanding the fact that he never followed through on the threats and that the marriage was otherwise harmonious. [**47]

n19 Although the introduction into evidence of a previous threat with a gun may seem more compelling than a threat without one, there is no legal difference between them. The majority's opinion is written in general terms and cannot reasonably be read to create a firearm exception to this analysis.

My concerns in this regard have been considered and addressed in other cases. In *Hoes v. State, 35 Md. App. 61, 368 A.2d 1080 (Md. Ct. Spec. App. 1977)*, the defendant was charged with assault with intent to maim by shooting his common-law wife. The state sought to rebut defendant's defense of accidental shooting by introducing evidence that five years earlier he had shot the same woman. The trial court allowed the introduction of the prior incident. The appellate court affirmed and reasoned:

The relevance of the prior conduct rests upon two things: the similarity of the method of assault and the fact that it was upon the same victim. That he had shot her before in like manner is inferentially relevant to his intent to do so this time, especially in light of his admission that he had [**48] discharged the firearm. As the state pointed out, the fact that appellant had shot his common-law wife a few years earlier makes it less likely that shooting her this time was an accident or mistake. *Had the prior assault been directed toward another victim, it would have had little or no relevance in evaluating his intent towards his common-law wife . Indeed, such an inference of intent to do that which was done would be greater the more often it had*

*occurred, in like manner and to the same person. The similarity of nature and victim creates the relevant interrelationship.*

*Id 368 A.2d at 1085* (footnote omitted)(emphasis added).

In *Johnson v. State, 655 N.E.2d 502 (Ind. 1995)*, the accused was charged with murder when he shot a man who came to his door trying to collect money from customers of his children's newspaper routes. The prosecution sought to introduce evidence that approximately two months prior to the homicide, two people from the management of the accused's apartment complex visited his apartment in order to check the fire extinguishers therein. When they received no response at the door, they tried to use their passkey to open the [**49] door. They discovered that the accused was inside and was pointing a gun at them while threatening to shoot them if they entered. After a brief conversation, the defendant allowed them to enter the apartment and check the fire extinguishers. In its discussion of the issue of admissibility of the prior bad act, the Indiana Supreme Court stated:

We do not see how evidence of an incident in which the defendant confronted people other than and unrelated to the victim in this case *and in which a shooting did not occur* makes it more likely either that Johnson knew that he was killing the victim or that the shooting was not an accident.

*Id. at 505* (emphasis added).

Even when dealing with a previous incident involving the same victim, some courts have held prior misconduct such as that in the present case to be inadmissible. In *Walker v. State, 997 P.2d 803 (Nev. 2000)*, the defendant killed her husband, Anthony, and was charged with first degree murder. The defendant confessed to killing Anthony but told police that he had beaten her on the night of his death. She said that during the course of an ongoing argument she picked [**50] up a flare gun that was capable of firing shotgun shells and told Anthony to leave. When he moved in her direction she fired the gun, killing him. She further told police that she did not know she had pulled the trigger.

During trial, the state introduced evidence of two incidents where the defendant had threatened to kill Anthony. The first happened approximately ten years before the killing in the charged offense. While at a picnic, the defendant slapped [*123] her son for not eating all of his food. Anthony was angered by her treatment of their son. The defendant responded by

ﾆ ﾚ ﾚ ﾚ ﾞ ﾚ ﾌ

retrieving a gun from their truck, pointing it at Anthony and threatening to kill him.

The second instance of prior misconduct occurred six years before the charged offense, and involved Anthony's disciplining of the defendant's youngest son. The defendant became angry and pointed a rifle at Anthony, threatening that she would shoot if he came any closer and that she wanted money to give to her kids.

The Nevada Supreme Court explained its reversal of the defendant's conviction as follows:

First, in evaluating the relevance of prior bad acts to the crime charged, we have consistently noted that events remote in [**51] time from the charged incident have less relevance in proving later intent. We conclude that the events here, which are six and ten years old, are clearly remote in time, and thus are less relevant to defendant's intent at the time she shot her husband .

Further, although the prior bad acts involve similar conduct towards the eventual victim in this case, we conclude that there is a crucial distinction between defendant's prior conduct and the charged conduct. Namely, defendant's prior acts do not involved sic the firing or attempted firing of the weapon at her husband . Importantly, defendant was tried for first-degree murder, a specific intent crime requiring, in addition to premeditation and deliberation, willful action that we have said requires an intent to kill. *Therefore, because the prior bad acts offered here do not clearly establish an intent to kill, but more accurately show an intent to threaten, the logical relevance of the acts to show defendant's later intent is further diminished.*

*Id.* at 806-07 (emphasis added). See also *State v. Williams, 427 N.W.2d 469 (Iowa 1988).*

The evidence at issue [**52] here is, of course, probative. I confess that I have often resorted to propensity reasoning when evaluating individuals on personal matters. These individuals, however, were not on trial for their freedom. n20 As Judge Chris Altenbernd stated in his concurring opinion in *Farrill v. State, 759 So. 2d 696, 703 (Fla. 2d DCA 2000),* our human willingness to use propensity logic is what makes Williams rule evidence both useful and dangerous." n21 Regardless of our natural instincts to use propensity reasoning, the law is clear to the point of needing no citation of authority that evidence of prior crimes is not admissible to establish a criminal defendant's propensity to commit crimes.

n20 In *Michelson v. United States, 335 U.S. 469, 475-76, 93 L. Ed. 168, 69 S. Ct. 213 (1948),* the United States Supreme Court stated:

The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

(Footnotes omitted). [**53]

n21 Illustrating the allure of propensity logic, Judge Altenbernd shares a personal note in footnote 3 of Farrill: "My neighbor's dog bit me once. I avoid that dog. No one thinks my use of propensity logic in the matter of the dog is inappropriate." Id.

Had defendant previously threatened the victim in this case with death or great bodily harm, such a prior threat, if not too remote, would certainly be relevant to establish his intent to hurt her and thereby serve to rebut his defense of accident. This, however, is different than the present scenario. The introduction of a threat [*124] made against a former wife six years earlier sheds no light on the issue of whether or not the present killing occurred as the result of an accident. Defendant did not "accidentally" discharge the gun he pointed at his ex-wife. Had the present case been the second "accidental" shooting of this nature, the existence of a previous such accident would reasonably give rise to the inference that neither incident was, in fact, "accidental." The introduction of the previous threat of violence toward a different victim, [**54] however, serves only to establish that defendant has a propensity towards violence - a clearly improper purpose.

For the reasons set forth above, I would reverse.

FLETCHER, SHEVIN and RAMIREZ, JJ., concur.

LEXSEE 272 So.2d 180

Jack L. WALTER, Appellant, v. The STATE of Florida, Appellee

No. 72-701

Court of Appeals of Florida, Third District

*272 So. 2d 180; 1973 Fla. App. LEXIS 7367*

January 24, 1973

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant sought review of his conviction and sentence of manslaughter in the death of his minor child issued by the trial court (Florida).

**OVERVIEW:** A jury found appellant guilty of manslaughter in the death of his minor child. The state called the mother as a witness for the limited purpose of identifying the deceased. Her cross-examination brought out testimony favorable to the defense. The state objected and the trial court properly declared the witness a defense witness. The state then questioned the mother about a statement she had given to police on the day after the baby's death, to which she responded that she was unable to recall such statement. Appellant claimed that the trial court erred in allowing the state to impeach the mother's testimony by using a statement given to the investigating officer that concerned matters that were collateral and irrelevant. The court affirmed and held that the testimony was relevant. Because appellant made no motion to strike the testimony, appellant had no standing to argue the matter, and the evaluation of the witness' testimony was properly to be resolved by the jury.

**OUTCOME:** The court affirmed appellant's conviction and sentence of manslaughter in the death of his minor child and affirmed the trial court's decision to admit testimony from the mother that was used for impeachment purposes. The testimony was relevant and appellant failed to make a motion to strike the testimony and thus lacked standing to argue the matter.

**COUNSEL:**
[**1]

Phillip A. Hubbart, Public Defender and Bennett H. Brummer, Asst. Public Defender, for Appellant.

Robert L. Shevin, Atty. Gen., and Arnold R. Ginsberg, Asst. Atty. Gen., for Appellee.

**JUDGES:**
Barkdull, C.J., and Pearson and Hendry, JJ.

**OPINIONBY:**
PER CURIAM

**OPINION:**

[*181] The appellant was found guilty by a jury of manslaughter in the death of his minor child. The evidence demonstrated that the victim had been beaten and that death resulted from a blow to the abdomen. On this appeal, the appellant does not challenge the sufficiency of the evidence to support the jury's verdict.

The points on appeal urge error because the trial court allowed the State to impeach the mother's testimony by using a statement given to the investigating officer. It is argued first that "the trial court erred in permitting an attempt to impeach a witness by inconsistent statements in that no proper predicate was established and the statement concerned matters which were collateral and irrelevant."

The mother was called as a witness by the State for the limited purpose of identifying the deceased. n1 The defense proceeded on cross-examination to bring out testimony favorable to the defense. The State [**2] objected and the trial court properly declared the witness a defense witness. Upon cross-examination, the State brought out that the mother had given a statement to the investigating officer on the day after the baby's death.

[illegible stamp]

The mother testified that she was in shock n2 and did not remember the substance of her statement to the officer.

n1 The disability of the wife to testify against her husband was removed in Florida in 1892 by the passage of what is now *Fla.Stat. § 914.07, F.S.A.* See also *Funk v. United States, 290 U.S. 371, 54 S. Ct. 212, 78 L. Ed. 369 (1933).* As to civil actions see *Fla.Stat. § 90.04, F.S.A.*

n2 The mental state of the witness at the time that the statement was given would go to the weight of the evidence unless an incapacity of the witness appears.

The appellant argues that some of the questions asked as a predicate to the impeachment of the witness were irrelevant or concerned collateral matters. n3 Specifically, the appellant refers to questions as to physical "punishment" **[**3]** of the baby on days previous to the day on which the baby died. Certainly such testimony was relevant, and **[*182]** since no motion to strike the testimony was made, the appellant has no standing to now urge that the cross-examination should not have been allowed to stand as a predicate for impeachment. Cf. *Mahone v. State, Fla.App.1969, 222 So.2d 769.*

n3 Appellant relies upon *Starke v. State, 49 Fla. 41, 37 So. 850 (1905),* and *Adams v. State, 54 Fla. 1, 45 So. 494 (1907).*

Furthermore, appellant argues that the impeachment was improper pursuant to the holding in *Rankin v. State, Fla.1962, 143 So.2d 193,* because the witness stated that she did not remember the prior statement. In the Rankin decision, which differs factually from the case at bar, several witnesses were called by the court. One of the witnesses stated that he was ignorant of the crime, did not remember making a statement, and could not tell whether the signature at the bottom of the statement was his own. It is worthy of note that the **[**4]** Rankin case

has been significantly distinguished in *Sutton v. State, Fla.App.1970, 239 So.2d 644.* In Sutton, as in the case at bar, the witness acknowledged a prior statement, but offered an explanation as to why the statement was inconsistent. Both statements were considered by the jury. The court found this procedure to be correct under the rule set out in *Brown v. State, 91 Fla. 682, 108 So. 842 (1926).*

In the case at bar, the witness remembered making a statement while under oath, remembered that she had previously examined it, and remembered acknowledging it to the State. As in *Sutton, supra,* the witness endeavored to explain away the inconsistencies. The evaluation of the witness' testimony was properly to be resolved by the jury.

Lastly, appellant urges that the trial court erred in failing to instruct the jury at the time of the admission into evidence of the impeaching statements that the statements were admitted solely for impeachment and not as substantive testimony. Undoubtedly, such an instruction is proper and should be given. See *Slade v. United States, 267 F.2d 834 (5th Cir. 1959).* In the instant case, the instruction was given although it was not directly **[**5]** and forcefully given. n4 If the defense were dissatisfied with the instruction it could have asked for and would have undoubtedly received a more direct and forceful instruction. The appellant was apparently satisfied because the subject was not subsequently mentioned until this appeal. Under these circumstances, the appellant has not shown reversible error. See *Dupree v. State, Fla.App.1967, 195 So.2d 1.*

n4 "MR. O'DAY: All right. Then I would like an instruction to the jury at this time that any inconsistent statements which may be brought out by the State Attorney go to the statements themselves and not to the matter of proof in hand. "THE COURT: All right. Has the jury heard that particular reference by the defense attorney? They are so instructed."

The judgment and the sentence are affirmed.

= 1

# Jurors' Notes
## from
# Jury    Selection
## on
# 9/9/2002

= 2

Jurors' Notes
from
Jury Selection
on
9/9/2002

= 3

Jurors' Notes
from
Jury Selection
on
9/9/2002

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,
     Plaintiff,

CASE NO.   2000-02660-CFA
                 2000-02753-CFA

v.

DIVISION:  II

BRIAN PATRICK HERLIHY
     Defendant.
_____/

FILED IN OPEN COURT
September 9    2002
_____
_____.C.

## DEFENDANT'S MOTION FOR REHEARING AND A DEMAND FOR A RICHARDSON INQUIRY ON THE ISSUE OF THE ADMISSIBILITY OF A COMPACT DISC PURPORTING TO SHOW A DEMONSTRATION OF SBS (SHAKEN BABY SYNDROME)

**COMES NOW**, the Defendant, BRIAN PATRICK HERLIHY, by and through undersigned

counsel, and files this Motion for Rehearing and a Demand for a Richardson Inquiry on the Issue of

the Admissibility of a Compact Disc Purporting to Show a Demonstration of SBS (Shaken Baby

Syndrome), and the Defendant says as follows:

1.    The Defendant, BRIAN PATRICK HERLIHY, has filed his Motion to Disallow Use of the

      Compact Disc Purporting to Show a Re-creation of Shaken Baby Syndrome and in that

      Motion we alleged a Rule 3.220, Florida Rules of Criminal Procedure, discovery violation by

      the Office of the State Attorney.

2.    A Richardson Inquiry was not conducted at the time this Court made it's ruling and the

      Defendant, BRIAN PATRICK HERLIHY, is requesting that this Honorable Court inquire

      as to why, a week before the trial commences, after two full years, the State of Florida first

      provided the defense a look at, (not a copy of) the compact disc in question which purports

      to show how an incident of Shaken Baby Syndrome occurs by utilizing a computer-generated

      animated depiction of a baby being shaken and a cross-sectional view of a baby's skull and

Defendant's Motion for Rehearing
State vs. Brian Patrick Herlihy
Page 2

brain.

3.    Not only is there no proper predicate for the use of this compact disc presentation, it is not

authenticated in any way, nor do we have a clue as to who created this presentation,

testimony regarding that person's credentials, and/or information by way of testimony as to

whether or not this presentation has ever been used in a criminal trial setting before. Lastly,

the Defendant's experts have not been heard as to why this re-created depiction is inaccurate,

misleading, and will be confusing to the Jury.

WHEREFORE, the Defendant, BRIAN PATRICK HERLIHY, respectfully moves this

Honorable Court to grant this Motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the forgoing has been furnished by

hand-delivery to the Office of the State Attorney, Gainesville, Florida, on this 9th day of September,

2002.

LAW OFFICES OF
GORDON H. GROLAND AND ASSOC., P.A.

**Gordon H. Groland, Esq.**
Fla. Bar #137259
P.O. Box 2848
Gainesville, Florida 32602
Phone: (352) 373-4669
Fax:    (352) 373-2885
Attorney for the Defendant

IN THE CIRCUIT COURT, EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,

    Plaintiff,

-vs-

Brian Patrick Herlihy

    Defendant.

FILED IN OPEN COURT
9-69     2002
Steve Donaly
          D.C.

CASE NO.  00-2660-CFA
           00-2153-CFA

## DECORUM ORDER AS TO MEDIA

It is **ORDERED AND ADJUDGED** that media representatives will comply with the directives of this order so as not to disrupt the courtroom proceedings as follows:

1. Media personnel shall remain in the gallery seating during the jury selection and trial.

2. TV20 & the Gainesville Sun

is/are the only media who has/have requested and has/have been authorized to bring a

    ☒    still camera and/or

    ☒    video camera

into the courtroom for jury selection and trial. No unauthorized media will be allowed to bring a camera into the courtroom.

3. Only    ☒    one still camera and/or

    ☒    one video camera

will be allowed in the courtroom. No flashes will be allowed. The still photographer and/or videographer must remain in the gallery. No photographs or video of the jury will be allowed. No disrupted movement will be allowed.

4. No interviews will be conducted inside the courthouse.

**DONE AND ORDERED** in Chambers, this __9__ day of September, ~~August~~, 2002.

Martha Ann Lott
Circuit Judge

cc:    Asst. State Attorney
        Defense Attorney
        Security
        Barbara Dawicke, Senior Deputy Court Administrator
        Media

IN THE CIRCUIT COURT OF THE
EIGHTH JUDICIAL CIRCUIT, IN
AND FOR ALACHUA COUNTY,
FLORIDA

STATE OF FLORIDA,

        Plaintiff,

vs.

                                 CASE NO.   01-2000-CF-2660-A
                                              01-2000-CF-2753-A

BRIAN PATRICK HERLIHY,             DIVISION:   II

        Defendant(s).

_____//

FILED IN OPEN COURT
9-09  2002
Steve Donaly
D.C.

## ORDER DENYING MOTION FOR RECONSIDERATION OF ADMISSIBILITY OF TESTIMONY OF DEPUTY CATHY LONG

**THIS CAUSE** having come before the Court without a hearing in the State's Motion for

Reconsideration of Admissibility of Testimony of Deputy Cathy Long, it is hereby;

**ORDERED AND ADJUDGED** that the State's Motion for Reconsideration of Admissibility

of Testimony of Deputy Cathy Long is hereby *DENIED.*

**ORDERED** in Chambers at Gainesville, Alachua County, Florida this 9 day of September, 2002.

MARTHA ANN LOTT
CIRCUIT JUDGE

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true copy of the foregoing has been furnished on this 9 day
of September 2002, to the following:

H. Stephen Pennypacker, Asst State Attorney
Jeanne Singer, Chief Asst State Attorney

Gordon Groland, Defense Attorney

Judicial Assistant

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,
     Plaintiff,

CASE NO.   2000-02660-CFA
                  2000-02753-CFA

v.

DIVISION:  II

BRIAN PATRICK HERLIHY
     Defendant.
_____/

FILED IN OPEN COURT
September 91, 2002
Phillip Knight D.C.

## DEFENDANT'S RESPONSE IN OPPOSITION TO STATE'S MOTION FOR RECONSIDERATION OF ADMISSIBILITY OF TESTIMONY OF DEPUTY KATHY LONG

**COMES NOW**, the Defendant, BRIAN PATRICK HERLIHY, by and through undersigned counsel, and files this Response In Opposition to the State's Motion For Reconsideration of Admissibility of Testimony of Deputy Kathy Long, and in support thereof states as follows::

1.    The State says in paragraph number two of their Motion that the Defendant made statements that..."he swung the child from side to side 'to get him to stop crying.'" (our emphasis). <u>In fact, the Defendant specifically did not say that at all.</u> According to Detective Legall's report, the Defendant, BRIAN PATRICK HERLIHY, is alleged to have said that, "he did swing the baby back and forth from side to side and <u>the baby was laughing.</u>" (our emphasis) He also stated that to get the baby to "stop crying," he a) checked the diapers, b) put the fan on, c) put some music on, and d) pumped the baby's legs. He did <u>not</u> say that he shook the baby at the moment in time alluded to by the State in their Motion for Reconsideration.

2.    The Defendant, BRIAN PATRICK HERLIHY, respectfully asks this Honorable Court that if the Court is inclined to reconsider it's position <u>excluding</u> this testimony, then at the time of the Court's addressing this issue, there should be a <u>proffer of the testimony</u> with this Court hearing first-hand from Deputy Kathy Long regarding this issue.

Defendant's Response in Opposition
to State's Motion for Reconsideration
State vs. Bryan Patrick Herlihy
Page 2

3.     The State seeks to present a statement allegedly made by the Defendant to <u>show his state of</u>
       <u>mind and motive (at the time of the alleged offense)</u> under section 90.803(3)(a) of the Florida
       Statutes.  However, this subsection does <u>not</u> make admissible. . . "[a] statement made under
       circumstances that indicate its lack of trustworthiness."  F.S. 90.803(3)(b)(2).

4.     The statements attributed to the Defendant should continue to be suppressed pursuant to F.S.
       90.803(3)(b)(2) because they were allegedly made under circumstances demonstrating a lack
       of trustworthiness, namely:

       a.     Deputy Long, the only person who claims to have actually heard the statement, has
              testified that it was made in such a casual and joking manner that she did not take it
              seriously, and felt no need to report it to anybody, including her husband who is also
              in law enforcement.  Thus, the trustworthiness of alleged statement has even been
              questioned from the very beginning by the only person who was actually in a position
              to hear it first-hand and evaluate its credibility;

       b.     Nothing about the alleged statement indicates an intent to actually hurt the child, nor
              any knowledge or realization that such an injury could result.  Thus, the alleged
              statement is insufficient to suggest a state of mind at a later date or motive on the part
              of the Defendant to actually cause any injury whatsoever to the child, much less death.
              This stands in sharp contrast to the caselaw provided by the State in which direct
              threats of physical harm were made to the victim;

       c.     The Defendant has denied ever making the alleged statement; and

Defendant's Response in Opposition
to State's Motion for Reconsideration
State vs. Bryan Patrick Herlihy
Page 3

> d. Deputy Long cannot state with any degree of specificity <u>when</u> the alleged statement was made, and her recollection categorically contradicts the testimony by the mother of the child as to when the Defendant and child were together in the presence of the Deputy at the Courthouse. These inconsistencies and absence of basic facts render the existence and the substance of the alleged statement fundamentally untrustworthy.

5. The case law provided by the State fails to support their request for the admissibility of the alleged statement in the following respects:

> a. <u>Santana v. State</u>, 535 So.2d 689 (Fla. 3rd DCA 1988).
>
> The 3rd DCA affirmed the trial court's holding that "the evidence was admissible *to negate appellant's claim of accident* in this case." In the instant case, the Defendant is not claiming that he killed the child by accident; he is claiming that he did not kill the child at all. Any cases supporting admission of statements or acts to negate a claim of accident are simply inapplicable and irrelevant.

> b. <u>Livingston v. State</u>, 678 So.2d 895 (Fla. 4th DCA 1996).
>
> This case does not even address prior statements or acts directed to or about the victim. Rather, the defendant's behavior toward a third person was ruled admissible to explain the genesis of the fight between the defendant and the victim. In fact, nothing in this case indicates the defendant's state of mind prior to the incident, or even that the defendant was aware of the victim's existence prior to the time that the victim approached the defendant. In the present case, the State seeks to admit the

Defendant's Response in Opposition
to State's Motion for Reconsideration
State vs. Bryan Patrick Herlihy
Page 4

alleged statement as evidence of the Defendant's state of mind and motive *towards*

*the victim* at an unknown point in time. In <u>Livingston</u>, the evidence had nothing to

do with the defendant's feelings for the victim, but instead was admitted simply as a

backdrop to fill in the blanks and explain why the two were fighting to begin with.

The two cases are not analogous.

c.   <u>Morrell v. State</u>, 779 So.2d 304 (Fla. 2nd DCA 1999).

Iin this case, the 2nd DCA held that evidence that the defendant had been seen with a

handgun "was admissible because it was relevant to the issue of whether Morrell had

access to a firearm, since Morrell was on trial for robbery with a firearm." Therefore,

it went to the issue of <u>opportunity</u>. Nothing in this case points to, or even mentions,

state of mind or motive. Again, the Defendant in the instant case is not denying that

he had access to the child or the opportunity to injure him. He is denying that he

shook the victim with the intent to injure him. The alleged statements are being

offered to show state of mind and motive, not opportunity. The fact of the

Defendant's access to the child (i.e., opportunity) is not at issue. Again, this case is

simply not analogous to the case at issue and is a "Williams Rule" case and a different

situation altogether.

d.   <u>Robertson v. State</u>, 780 So.2d 106 (Fla. 3rd DCA 2001).

"Here, the critical issue at trial was whether the defendant *accidently* shot Maria."

<u>Id.</u> at 110 (emphasis added). "The prior incident was clearly relevant, and especially

Defendant's Response in Opposition
to State's Motion for Reconsideration
State vs. Bryan Patrick Herlihy
Page 5

probative, in rebutting the defense that Maria's shooting death was a mistake." Id.

at 113. Once again, the Defendant in the instant case is not claiming accident, and the

alleged statement is not being offered to rebut such a claim.

e.    Walter v. State, 272 So.2d 180 (Fla. 3rd DCA 1973).

Testimony regarding physical punishment to a child on the day prior to his death was

ruled admissible without further comment, except that any objection was waived by

the failure to assert it at trial. The testimony in this case concerned actual physical

violence administered to the victim the day prior to his death, while the testimony

proffered in the present case concerns an isolated statement allegedly made at an

undetermined date in the past. This statement is not directly comparable to the

physical abuse alleged, and cannot be construed as a part of a continuing act, as was

the case in Walter.

6.    None of the cases offered by the State support its contention that the alleged statement

indicates a state of mind or motive on the part of the Defendant at the time of the incident to

cause harm to the child in this case.

7.    The alleged statement, if made at all, was made under circumstances indicating a lack of

trustworthiness.

8.    The probative value of Deputy Long's testimony, if any exists, is substantially outweighed by

the danger of unfair prejudice, confusion of issues, and misleading the jury.

Defendant's Response in Opposition
to State's Motion for Reconsideration
State vs. Bryan Patrick Herlihy
Page 6

     **WHEREFORE,** it is respectfully requested that this Honorable Court maintain its earlier

ruling declaring the testimony of Deputy Cathy Long inadmissible.

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that a true and correct copy of the forgoing has been furnished by

hand-delivery to Jeanne Singer, Esquire, Office of the State Attorney, Gainesville, Florida on this 9th

day of September, 2002.

               **LAW OFFICES OF**
               **GORDON H. GROLAND AND ASSOC., P.A.**


               **Gordon H. Groland, Esq.**
               Fla. Bar #137259
               P.O. Box 2848
               Gainesville, Florida 32602
               Phone: (352) 373-4669
               Fax:   (352) 373-2885
               Attorney for the Defendant

**IN THE CIRCUIT/COUNTY COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY FLORIDA**

FILED IN OPEN COURT
9-10 2002
Steve Donaday
D.C.

_State of Florida_
PLAINTIFF

VS                              CASE NO: _2000-2753-CFA_

_Brian Herlihy_
DEFENDANT

### ORDER GRANTING MOTION FOR RELEASE OF EVIDENCE

This Cause came on for consideration upon the _State's Jt._ Motion for Release Of Evidence. Being advised thereupon, the Court finds said motion to be well-founded. Upon Consideration, it is

**ORDERED and ADJUDGED** that the Motion for Release of said evidence is

Granted. The Following articles shall be released from evidence by the Clerk of the Court

to _Jeanne M. Singer_ said evidence being particularly

described as follows: _24 pgs. of legal correspondence_
_which were part of State's exhibit #5_
_in evidence upon Joint Stipulation of_
_State and Defense._

**DONE and ORDERED** at Gainesville, Alachua County, Florida this _10_

day of _September_, _2002_

_____
Circuit/County Judge

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA
        Plaintiff,

vs.                          Case No. 2000-2753-CF-A

BRIAN HERLIHY,
        Defendant.

_____/

FILED IN OPEN COURT
9-30 2002
Steve Donald
D.C.

## STATE'S PROPOSED JURY INSTRUCTION
## REGARDING DEMONSTRATION EVIDENCE

The State of Florida by and through the undersigned Assistant State Attorney, provides this proposed special jury instruction regarding the presentation of demonstration evidence:

Members of the jury, The State is about to use a computer ~~demonstration~~ animation. It is meant to aid you in understanding ~~evidence~~ the opinion testimony in this case. The ~~demonstration~~ animation itself is not evidence, and not to be considered by you as such in this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing State's Proposed Jury Instruction Regarding Demonstration Evidence has been furnished to Gordon H. Groland, Esquire by interoffice mail this 3rd day of September, 2002.

WILLIAM P. CERVONE
STATE ATTORNEY

JEANNE M. SINGER
Chief Assistant State Attorney
Florida Bar No. 0243604
120 West University Avenue
Gainesville, FL 32601
352-374-3680

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

**STATE OF FLORIDA,**
**Plaintiff,**

**CASE NO:   2000-2753-CFA**
**2000-2660-CFA**

vs.

FILED IN OPEN COURT
_9 - 2C:_ _2002_
_____ _Finucaby_
D.C.

**BRIAN HERLIHY,**
**Defendant.**

_____/

## MOTION FOR REHEARING ON THE ISSUE OF WHETHER THE DEFENSE OR THE STATE OF FLORIDA OPENED THE DOOR SO AS TO CAUSE THE ADMISSIBILITY OF CERTAIN EVIDENCE

**COMES NOW** the Defendant, **Brian Herlihy,** by and through his undersigned

attorney, and files this Motion for Rehearing on the Issue of Whether the Defense or the

State of Florida Opened the Door so as to Cause the Admissibility of Certain Evidence,

and in support thereof states as follows:

1.     Undersigned counsel has ordered the real time transcript of parts of Crystal

direct examination by the State and all of the cross-examination

by the Defense.

2.     Now that this transcript is available to the Court and to all parties,

undersigned counsel respectfully requests either a rehearing or a continuing

hearing on the subject of whether or not the "door was opened," and if so, by

whom.

**WHEREFORE,** the Defendant, **Brian Herlihy,** respectfully requests that this

Honorable Court grant this Motion.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

State v. Brian Herlihy
Case No.: 2000-2753-CFA / 2000-2660-CFA
Motion for Rehearing
Page 2

furnished by hand-delivery to Jeanne Singer, Esquire, State Attorney's Office, P.O. Box

1437, Gainesville, FL 32602 on this 12th day of September, 2002.

                                    LAW OFFICES OF GROLAND & ASSOCIATES,P.A.


                                    **Gordon H. Groland, Esquire**
                                     Florida Bar # 137259
                                    **John H. Tedder, Esquire**
                                     Florida Bar #0398616
                                     Post Office Box 2848
                                     Gainesville, FL 32602
                                     Phone: (352) 373-4669 / 373-2885 Fax

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

**STATE OF FLORIDA,**

       Plaintiff,

vs.

| | |
|---|---|
| Case No. | 2000-02660-CFA |
| | 2000-02753-CFA |

**BRIAN PATRICK HERLIHY,**      Division    II

       Defendant.

_____/

FILED IN OPEN COURT

_9-20_     200-

~~Steve Donaldy~~

          D.C.

## <u>INSTRUCTION TO JURY REGARDING WITNESS TESTIFYING OUT OF ORDER</u>

1.    Ladies and gentlemen, you are now going to hear from a witness for the defense.

This witness is testifying out of order to accommodate his travel plans.

**2.02(a) When there are Lesser Included Crimes or Attempts**

In considering the evidence, you should consider the possibility that although the evidence may not convince you that the defendant committed the main crime of which he is accused, there may be evidence that he committed other acts that would constitute a lesser included crime. Therefore, if you decide that the main accusation has not been proved beyond a reasonable doubt, you will next need to decide if the defendant is guilty of any lesser included crime. The lesser crimes indicated in the definition of First Degree Murder are Second Degree Murder, Third Degree Murder, Manslaughter, Aggravated Child Abuse and Child Abuse.

FILED IN OPEN COURT
9-29       2002
_Steve Donely_
D.C.

Knowing:  Having or showing awareness or understanding;  well informed;  deliberate; conscious.

FILED IN OPEN COURT
9 - 24                2002
~~~~ D~~~~
D.C.

GGGG:50

Intentional Act: An act resulting from the actor's will directed to that end. An act is intentional when foreseen and desired by the doer, and this foresight and desire resulted in the act through the operation of the will.

ILED IN OPEN COURT
9-24        2002

D.C.

Gov...751

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT,
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,

vs.

BRIAN PATRICK HERLIHY
Defendant.

CASE NO: 2000-02753-CFA
DIVISION II

FILED IN OPEN COURT
9-25          2002
Steve Donaly, D.C.

JURY INSTRUCTIONS

## 2.01 INTRODUCTION TO FINAL INSTRUCTIONS

Members of the jury, I thank you for your attention during this trial. Please pay attention to the instructions I am about to give you.

## 2.02 STATEMENT OF CHARGE

### INTRODUCTION TO HOMICIDE

In this case, Brian Herlihy is accused of Murder in the First Degree.

Murder in the First Degree includes the lesser crimes of Murder in the Second Degree, Murder in the Third Degree, Manslaughter, Aggravated Child Abuse and Child Abuse, all of which are unlawful.

A killing that is excusable or was committed by the use of justifiable deadly force, is lawful.

If you find that Robert Quirello was killed by Brian Herlihy, you will then consider the circumstances surrounding the killing in deciding if the killing was Murder in the First Degree or was Murder in the Second Degree, or Murder in the Third Degree or Manslaughter, or whether the killing was excusable or resulted from justifiable use of deadly force.

### JUSTIFIABLE HOMICIDE

The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing.

### EXCUSABLE HOMICIDE

The killing of a human being is excusable, and therefore lawful, under any one of the following three circumstances:

1. When the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or

2. When the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or

3. When the killing is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner.

A "dangerous weapon" is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm.

I now instruct you on the circumstances that must be proved before the defendant may be found guilty of First Degree Murder or any lesser-included crime.

**F.S. 782.04(1)(a)     FIRST DEGREE MURDER**

There are two ways in which a person may be convicted of First Degree Murder. One is known as premeditated murder and the other is known as Felony Murder.

**FIRST DEGREE PREMEDITATED MURDER**

Before you can find the defendant guilty of First Degree Premeditated Murder, the State must prove the following three elements beyond a reasonable doubt:

1.     Robert Quirello is dead.

2.     The death was caused by the criminal act or agency of Brian Herlihy.

3.     There was a premeditated killing of Robert Quirello.

An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.

"Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

The question of premeditation is a question of fact to be determined by you from the evidence.   It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.

If a person has a premeditated design to kill one person and in attempting to kill that person actually kills another person, the killing is premeditated.

**FIRST DEGREE FELONY MURDER**

Before you can find the defendant guilty of First Degree Felony Murder, the State must prove the following three elements beyond a reasonable doubt:

1.     Robert Quirello is dead

2.     The death occurred as a consequence of and while Brian Herlihy was engaged in the commission of Aggravated Child Abuse; or the death occurred as a consequence of and while Brian Herlihy was attempting to commit Aggravated Child Abuse.

3.     Brian Herlihy was the person who actually killed Robert Quirello.

In order to convict of First Degree Felony Murder, it is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.

## F.S. 782.04(2) SECOND DEGREE MURDER

Before you can find the defendant guilty of Second Degree Murder, the State must prove the following three elements beyond a reasonable doubt:

1.   Robert Quirello is dead.

2.   The death was caused by the criminal act of Brian Herlihy.

3.   There was an unlawful killing of Robert Quirello by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.

An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.

An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:

1.   A person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and

2.   Is done from ill will, hatred, spite or an evil intent, and

3.   Is of such a nature that the act itself indicates an indifference to human life.

In order to convict of Second Degree Murder, it is not necessary for the State to prove the defendant had an intent to cause death.

**F.S. 782.04(4) THIRD DEGREE MURDER**

Before you can find the defendant guilty of Third Degree Murder, the State must prove the following three elements beyond a reasonable doubt:

1.     Robert Quirello is dead.

2.     The death occurred as a consequence of and while Brian Herlihy was engaged in the commission of Child Abuse; or the death occurred as a consequence of and while Brian Herlihy was attempting to commit Child Abuse.

3.     Brian Herlihy was the person who actually killed Robert Quirello.

It is not necessary for the State to prove the killing was perpetrated with a design to effect death.

"Child Abuse" means the intentional infliction of physical or mental injury upon a child or an intentional at that could reasonably be expected to result in physical or mental injury to a child.

## F.S. 782.07   MANSLAUGHTER

Before you can find the defendant guilty of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:

1.    Robert Quirello is dead.

2.    Brian Herlihy caused the death of Robert Quirello by culpable negligence.

However, the defendant cannot be guilty of Manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.

I will now define "culpable negligence" for you.  Each of us has a duty to act reasonably toward others.  If there is a violation of that duty, without any conscious intention to harm, that violation is negligence.  But culpable negligence is more than a failure to use ordinary care toward others.  In order for negligence to be culpable, it must be gross and flagrant.  Culpable negligence is a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.

The negligent act or omission must have been committed with an utter disregard for the safety of others.  Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.

## F.S. 827.03(2)   AGGRAVATED CHILD ABUSE

To prove the crime of Aggravated Child Abuse, the State must prove the following two elements beyond a reasonable doubt.

1. Brian Herlihy committed aggravated battery upon Robert Quirello; or maliciously punished Robert Quirello, or knowingly or willfully committed child abuse upon Robert Quirello and in so doing caused great bodily harm, permanent disability, or permanent disfigurement.

2. Robert Quirello was under the age of eighteen years.

In order to prove that an Aggravated Battery was committed, the State must prove the following:

1. Brian Herlihy intentionally caused bodily harm to Robert Quirello.

2. In so doing,  Brian Herlihy intentionally or knowingly caused great bodily harm, permanent disability or permanent disfigurement.

"Willfully" means knowingly, intentionally, and purposely.

"Maliciously" means done from ill will, hatred, spite, or evil intent.

"Child Abuse" means the intentional infliction of physical or mental injury upon a child or an intentional act that could reasonably be expected to result in physical or mental injury to a child.

**F.S. 827.03(1)  CHILD ABUSE**

To prove the crime of Child Abuse, the State must prove the following two elements beyond a reasonable doubt.

1.  Brian Herlihy intentionally inflicted physical or mental injury upon Robert Quirello; or committed an intentional act that could reasonably be expected to result in physical or mental injury to Robert Quirello.

2.  Robert Quirello was under the age of eighteen years.

## 2.03   PLEA OF NOT GUILTY; REASONABLE DOUBT; AND BURDEN OF PROOF

The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the Indictment through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.

To overcome the defendant's presumption of innocence the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.

The defendant is not required to present evidence or prove anything.

Whenever the words "reasonable doubt" are used you must consider the following:

A reasonable doubt is not a mere possible doubt, a speculative, imaginary or forced doubt. Such a doubt must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt. On the other hand, if, after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction of guilt, or, if, having a conviction, it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt and you must find the defendant not guilty because the doubt is reasonable.

It is to the evidence introduced in this trial, and to it alone, that you are to look for that proof.

A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence or the lack of evidence.

If you have a reasonable doubt, you should find the defendant not guilty. If you have no reasonable doubt, you should find the defendant guilty.

## 2.04 WEIGHING THE EVIDENCE

It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence, and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence.

You should consider how the witnesses acted, as well as what they said. Some things you should consider are:

1.  Did the witness seem to have an opportunity to see and know the things about which the witness testified?

2.  Did the witness seem to have an accurate memory?

3.  Was the witness honest and straightforward in answering the attorneys' questions?

4.  Did the witness have some interest in how the case should be decided?

5.  Does the witness' testimony agree with the other testimony and other evidence in the case?

6.  Has the witness been offered or received any money, preferred treatment or other benefit in order to get the witness to testify?

7.  Had any pressure or threat been used against the witness that affected the truth of the witness' testimony?

8.  Did the witness at some other time make a statement that is inconsistent with the testimony he gave in court?

9.  Was it proved that the witness had been convicted of a crime?

10. Was it proved that the general reputation of the witness for telling the truth and being honest was bad?

You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.

## 2.04(a) EXPERT WITNESSES

Expert witnesses are like other witnesses, with one exception - the law permits an expert witness to give his opinion.

However, an expert's opinion is only reliable when given on a subject about which you believe him to be an expert.

Like other witnesses, you may believe or disbelieve all or any part of an expert's testimony.

000763

## 2.04(d) DEFENDANT NOT TESTIFYING

The constitution requires the State to prove its accusations against the defendant. It is not necessary for the defendant to disprove anything. Nor is the defendant required to prove his innocence. It is up to the State to prove the defendant's guilt by evidence.

The defendant exercised a fundamental right by choosing not to be a witness in this case. You must not view this as an admission of guilt or be influenced in any way by his decision. No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in the case.

## 2.04(c) DEFENDANT'S STATEMENTS

A statement claimed to have been made by the defendant outside of court has been placed before you. Such a statement should always be considered with caution and be weighed with great care to make certain it was freely and voluntarily made.

Therefore, you must determine from the evidence that the defendant's alleged statement was knowingly, voluntarily and freely made.

In making this determination, you should consider the total circumstances, including but not limited to:

1.   Whether, when the defendant made the statement, he had been threatened in order to get him to make it, and

2.   Whether anyone had promised him anything in order to get him to make it.

If you conclude the defendant's out of court statement was not freely and voluntarily made, you should disregard it.

## 2.05 RULES FOR DELIBERATION

These are some general rules that apply to your discussion. You must follow these rules in order to return a lawful verdict:

1. You must follow the law as it is set out in these instructions. If you fail to follow the law, your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending upon you to make a wise and legal decision in this matter.

2. This case must be decided only upon the evidence that you have heard from the testimony of the witnesses [and have seen in the form of the exhibits in evidence] and these instructions.

3. This case must not be decided for or against anyone because you feel sorry for anyone, or are angry at anyone.

4. Remember, the lawyers are not on trial. Your feelings about them should not influence your decision in this case.

5. Your duty is to determine if the defendant has been proven guilty or not, in accord with the law. It is the judge's job to determine a proper sentence if the defendant is found guilty.

6. Whatever verdict you render must be unanimous, that is, each juror must agree to the same verdict.

7. It is entirely proper for a lawyer to talk to a witness about what testimony the witness would give if called to the courtroom. The witness should not be discredited by talking to a lawyer about his testimony.

8. Your verdict should not be influenced by feelings of prejudice, bias, or sympathy. Your verdict must be based on the evidence, and on the law contained in these instructions.

## 2.07 CAUTIONARY INSTRUCTION

Deciding a verdict is exclusively your job.  I cannot participate in that decision in any way.  Please disregard anything I may have said or done that made you think I preferred one verdict over another.

## 2.08 VERDICT

You may find the defendant guilty as charged in the Indictment or guilty of such lesser included crime as the evidence may justify or not guilty.

If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt, then, of course, your verdict must be not guilty.

Only one verdict may be returned as to the crime charged. This verdict must be unanimous, that is, all of you must agree to the same verdict. The verdict must be in writing and for your convenience the necessary forms of verdict have been prepared for you. They are as follows:

## 2.09 SUBMITTING CASE TO JURY

In just a few moments you will be taken to the jury room by the bailiff. The first thing you should do is elect a foreperson. The foreperson presides over the deliberations, like a chairperson of a meeting. It is the foreperson's job to sign and date the verdict form when all of you have agreed on a verdict in this case. The foreperson will bring the verdict back to the courtroom when you return. Either a man or a woman may be foreperson of a jury.

Your verdict finding the defendant either guilty or not guilty must be unanimous. The verdict must be the verdict of each juror, as well as of the jury as a whole.

In closing, let me remind you that it is important that you follow the law spelled out in these instructions in deciding your verdict. There are no other laws that apply to this case. Even if you do not like the laws that must be applied, you must use them. For two centuries we have agreed to a constitution and to live by the law. No one of us has the right to violate rules we all share.

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA
    Plaintiff,

Case Number:  2000-02753-CFA

DIVISION II

vs.

BRIAN PATRICK HERLIHY
    Defendant.

LED IN OPEN COURT
9-25        2002
D.C.

## V E R D I C T

We, The Jury, find as follows as to the defendant, Brian Patrick Herlihy, in this case:

_____ 1.    The defendant, Brian Patrick Herlihy, is guilty of Murder in the First Degree, as charged in the Indictment.

_____ 2.    The defendant, Brian Patrick Herlihy, is guilty of Murder in the Second Degree, a lesser included offense.

_____ 3.    The defendant, Brian Patrick Herlihy, is guilty of Murder in the Third Degree, a lesser included offense.

___✗___ 4.    The defendant, Brian Patrick Herlihy, is guilty of Manslaughter, a lesser included offense.

_____ 5.    The defendant, Brian Patrick Herlihy, is guilty of Aggravated Child Abuse, a lesser included offense

_____ 6.    The defendant, Brian Patrick Herlihy, is guilty of Child Abuse, a lesser included offense

_____ 7.    The defendant, Brian Patrick Herlihy, is not guilty.

So say we all, this _25 7th_ day of September, 2002, at Gainesville, Alachua County, Florida.

_____
Foreman

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,
       Plaintiff,

CASE NO.    2000-02660-CFA
                  2000-02753-CFA

v.

FILED IN OPEN COURT
9-25     2002

BRIAN PATRICK HERLIHY
       Defendant.
_____/

                                                          D.C.

## MOTION FOR RE-HEARING ON ISSUE OF
## ADMISSIBILITY OF COMPACT DISC PRESENTATION

      COMES NOW, the Defendant, **BRIAN PATRICK HERLIHY,** by and through undersigned

counsel, and files this Motion for Re-Hearing on Issue of Admissibility of Compact Disc Presentation, and

the Defendant says as follows:

    1.      Undersigned Counsel has found and read caselaw in Florida and other jurisdictions which

              stand for the proposition that some authentication is necessary, even for a demonstrative aid,

              before utilizing such demonstrative aid during trial. (See caselaw attached with this

              motion.).

      **WHEREFORE,** the Defendant, **BRIAN PATRICK HERLIHY,** respectfully moves this Honorable

Court to grant this Motion.

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that a true and correct copy of the forgoing has been furnished by hand-delivery to Jeanne Singer, Esquire, Office of the State Attorney, Gainesville, Florida, on this 12th day of September, 2002.

                        **LAW OFFICES OF GORDON H.**
                        **GROLAND, AND ASSOC., P.A.**

                        **Gordon H. Groland, Esq.**
                        Fla. Bar #137259
                        P.O. Box 2848
                        Gainesville, Florida 32602
                        Phone: (352) 373-4669
                        Fax:   (352) 373-2885

CONTINUED NEXT VOLUME