# EXHIBIT

# V

*202-1- 17814*
*F*

# In the District Court of Appeal
## FIRST DISTRICT
## of Florida

BRIAN PATRICK HERLIHY }
             Appellant, }
    }
    }
    }
v.    }
    }
    }
    }
STATE OF FLORIDA }
             Appellee, }

CASE NUMBER   2000-2753-CFA

APPEAL NUMBER 1D02-4788

VOLUME XXII

Docket *CH*
05. 14-2003

2003 MAY 12   PH 2: 40

# TRANSCRIPT
# RECORD

## HONORABLE MARTHA ANN LOTT
### ACTING TRIAL JUDGE

### APPEAL FROM THE CIRCUIT COURT
### 8th JUDICIAL CIRCUIT FOR
### ALACHUA COUNTY, FLORIDA

**FOR APPELLANT**
HONORABLE C. RICHARD PARKER
PUBLIC DEFENDER
POST OFFICE BOX 2820
GAINESVILLE, FLORIDA 32602

**FOR APPELLEE**
HONORABLE CHARLIE CRIST
ATTORNEY GENERAL'S OFFICE
THE CAPITOL
DEPARTMENT OF LEGAL AFFAIRS
CRIMINAL APPEAL SECTION
TALLAHASSEE, FLORIDA 32399-1050

2433

202-1-17814

1    IN THE CIRCUIT COURT OF FLORIDA
     EIGHTH JUDICAL CIRCUIT
2    IN AND FOR ALACHUA COUNTY

3         CASE NO: 01-2000-CF-2753-A

4    TRANSCRIPT ON APPEAL          Volume XXII
         VOLUME XVIIII
5      (Pages 2433 - 2522)         1002-4788

6    STATE OF FLORIDA

7    vs.

8    BRIAN PATRICK HERLIHY,

9              Defendant.
                                    COPY
10   _____/
                                    Docket CH
                                    05-14-2003
11   Proceedings:      Jury trial

12   Before:           The Honorable Martha Ann Lott,
                       Circuit Judge
13
     Date:             September 24, 2002
14
     Time:             9:00 a.m.
15
     Place:            Courtroom 4-A
16                     Alachua County Courthouse
                       Gainesville, Florida
17
     Reporter:         Stacey K. Bryant,RPR
18                     Judicial Court Reporter

19   APPEARANCES:

20      Jeanne Singer, Assistant State Attorney
        Stephen Pennypacker, Assistant State Attorney
21      120 W. University Avenue
        Gainesville, Florida 32608
22        Appearing on behalf of the State of Florida

23      Gordon Groland, Esquire
        John Tedder, Esquire
24      Post Office Box 2848
        Gainesville, Florida 32602
25        Attorneys for defendant

Stacey K. Bryant, RPR
Judicial Court Reporter

INDEX TO PROCEEDINGS

INSTRUCTIONS BY THE COURT: ........................ 2438

RE-READING OF JURY INSTRUCTION 2.03: .............. 2464

FIRST QUESTION BY THE JURY: ....................... 2471

SECOND QUESTION BY THE JURY: ...................... 2481

```
 1               P R O C E E D I N G S

 2                    *  *  *  *  *

 3          (Outside the presence of the jury.)

 4          THE COURT:  Mr. Bailiff, do you know what

 5     arrangements will be made for lunch?

 6          MR. BAILIFF:  No.

 7          THE COURT:  Yes, sir, Mr. Groland?

 8          MR. GROLAND:  Just for the record we renew

 9     all our motions for JOA and all previous

10     motions made at this time.

11          THE COURT:  Good enough.

12          Anything from the state?

13          MS. SINGER:  Nothing, your Honor.

14          THE COURT:  I'm just waiting for the

15     bailiff so that we'll be able to give them any

16     -- here he comes now.  Any --

17          MR. GROLAND:  Your Honor, just for the

18     record, those motions are denied?

19          THE COURT:  Those motions are again

20     denied.  Thank you.

21          MR. TEDDER:  We object to the ruling, your

22     Honor.

23          THE COURT:  Yes, sir.

24          We'll give them any order forms for lunch

25     now and then they can fill them out at whatever
```

1    point, it will lessen the disruptions to their

2    deliberations.

3        MR. TEDDER:  Your Honor?

4        THE COURT:  Just one second.  About lunch,

5    lunch is gonna be provided from where, and do

6    they need to have order forms for that?

7        MR. BAILIFF:  Well, we can call up

8    Harry's.  Normally it would be Harry's, but

9    normally at dinnertime.  The only other thing

10   is Harry's, they had that yesterday.  I don't

11   think they want to do that two days in a row.

12   I'll have to make some arrangements.  That's

13   what we're in the process of doing now.  We

14   have a dinner menu, lunch menu from Harry's

15   which we can give to them, but they normally

16   don't.  It's their policy to only do dinner.

17       THE COURT:  Let's just do lunch at

18   Harry's.

19       MR. BAILIFF:  Do Harry's again?

20       THE COURT:  Yeah.  If we can go ahead and

21   get those order forms now, we can give them the

22   order forms.  That way they will not have to

23   have several disruptions, they can just let you

24   know when they want you to go get the lunch.

25       MR. BAILIFF:  Okay.

1    MR. TEDDER:  Your Honor, I just wanted to

2    renew our objection to the jury being given

3    jury instructions to read during the

4    instructions by the Court and taken back with

5    them to the jury room.  We want to renew that

6    objection now before whoever hands it to them

7    hands it to them.  So --

8    THE COURT:  All right.  Thank you.  That's

9    noted for the record.  The objection's

10   overruled.

11   MR. BAILIFF:  I'm having some menus from

12   Harry's brought up.

13   THE COURT:  Now, as you all know we do

14   have, I think, three people on the jury that do

15   smoke.  And, of course, they're gonna want to

16   take smoke recesses.  Is there anything that

17   you all want to put on the record, because I do

18   intend if their deliberations go over the

19   course of several hours to allow them to take

20   breaks to go smoke cigarettes.

21   MR. TEDDER:  Well, your Honor, I think you

22   can just before you send them out, if you can

23   advise them if they need to do that, that

24   they're gonna have to officially take a recess

25   and all deliberations have to stop.  None of

1   the others can discuss the case, nor the three

2   that go out to smoke discuss the case.

3       THE COURT:  Correct, I will do that.

4       MS. SINGER:  And, of course, as many

5   bailiffs as necessary to protect them from

6   having any contact.

7       THE COURT:  Correct, yes.  We will make

8   sure that both of those things are taken care

9   of.  You can go get and bring them on in.  Do

10  you think you will have menus before --

11      MR. BAILIFF:  Yes, ma'am.  They should be

12  up in just a few minutes.

13      THE COURT:  We'll go ahead and bring the

14  jurors in.

15      (Before the jury:)

16      THE COURT:  Good morning, ladies and

17  gentlemen.  Thank you again for appearing right

18  on time so we can get started on time.

19      Again, as I have done every day, I want to

20  inquire is there anyone on the panel who has in

21  any way gotten any information about these, the

22  evidence in this case, or the charges, or

23  anything about this case, other than the

24  evidence that has been provided for you during

25  the trial and in the courtroom?  All right.

1      Good enough.

2           Mr. Clerk, would you hand copies of the

3      jury instructions to all of the jurors?  Now,

4      ladies and gentlemen, you're not required to

5      read these instructions along with me.  Some

6      people find it easier to listen or to

7      comprehend if they're able to read along.  So

8      it's totally up to you.  If you do choose to

9      read along with me, I'll ask that you stay in

10     sequence with me and that you not read ahead.

11     But again, these instructions you will be

12     allowed to take into the jury room with you.

13     You are not required in any way to read along.

14     It's simply a matter of your personal

15     preference and what works best for you in terms

16     of comprehension.

17          The first page, of course, is simply the

18     title page.

19          Members of the jury, I thank you for your

20     attention during this trial.  Please pay

21     attention to the instructions I'm about to give

22     to you.

23          In this case Brian Herlihy is accused of

24     murder in the first degree.

25          Murder in the first degree includes the

1     lesser crimes of murder in the second degree,

2     murder in the third degree, manslaughter,

3     aggravated child abuse and child abuse, all of

4     which are unlawful.

5          A killing that is excusable or was

6     committed by the use of justifiable deadly

7     force is lawful.

8          If you find that Robert Quirello was

9     killed by Brian Herlihy, you will then consider

10    the circumstances surrounding the killing in

11    deciding if the killing was murder in the first

12    degree, or was murder in the second degree, or

13    murder in the third degree, or manslaughter, or

14    whether the killing was excusable, or resulted

15    from justifiable use of deadly force.

16         The killing of a human being is

17    justifiable homicide and lawful if necessarily

18    done while resisting an attempt to murder or

19    commit a felony upon the defendant, or to

20    commit a felony in any dwelling house in which

21    the defendant was at the time of the killing.

22         The killing of a human being is excusable

23    and therefore lawful under any one of the

24    following three circumstances:  One, when the

25    killing is committed by accident and misfortune

1    in doing any lawful act by lawful means with

2    usual, ordinary caution, and without any

3    unlawful intent; or, when the killing occurs by

4    accident and misfortune in the heat of passion,

5    upon any sudden and sufficient provocation; or,

6    three, when the killing is committed by

7    accident and misfortune resulting from a sudden

8    combat, if a dangerous weapon is not used and

9    the killing is not done in a cruel or unusual

10    manner.

11    A dangerous weapon is any weapon that,

12    taking into account the manner in which it is

13    used, is likely to produce death or great

14    bodily harm.

15    I now instruct you on the circumstances

16    that must be proved before the defendant may be

17    found guilty of first degree murder or any

18    lesser-included crime.

19    First degree murder:  There are two ways

20    in which a person may be convicted of first

21    degree murder.  One is known as premeditated

22    murder, and the other is known as felony

23    murder.

24    First degree premeditated murder:  Before

25    you can find the defendant guilty of first

1     degree premeditated murder, the state must

2     prove the following three elements beyond a

3     reasonable doubt:  Number one, Robert Quirello

4     is dead; number two, the death was caused by

5     the criminal act or agency of Brian Herlihy;

6     number three, there was a premeditated killing

7     of Robert Quirello.

8         An act includes a series of related

9     actions arising from, and performed pursuant to

10    a single design or purpose.

11        Killing with premeditation is killing

12    after consciously deciding to do so.  The

13    decision must be present in the mind at the

14    time of the killing.  The law does not fix the

15    exact period of time that must pass between the

16    formation of the premeditated intent to kill

17    and the killing.  The period of time must be

18    long enough to allow reflection by the

19    defendant.  The premeditated intent to kill

20    must be formed before the killing.

21        The question of premeditation is a

22    question of fact to be determined by you from

23    the evidence.  It will be sufficient proof of

24    premeditation if the circumstances of the

25    killing and the conduct of the accused convince

1    you beyond a reasonable doubt of the existence

2    of premeditation at the time of the killing.

3        If a person has a premeditated design to

4    kill one person, and in attempting to kill that

5    person actually kills another person, the

6    killing is premeditated.

7        First degree felony murder:  Before you

8    can find the defendant guilty of first degree

9    felony murder, the state must prove the

10   following three elements beyond a reasonable

11   doubt:  Number one, Robert Quirello is dead;

12   number two, the death occurred as a consequence

13   of and while Brian Herlihy was engaged in the

14   commission of aggravated child abuse, or the

15   death occurred as a consequence of and while

16   Brian Herlihy was attempting to commit

17   aggravated child abuse; number three, Brian

18   Herlihy was the person who actually killed

19   Robert Quirello.

20       In order to convict of first degree felony

21   murder it is not necessary for the state to

22   prove that the defendant had a premeditated

23   design or intent to kill.

24       Second degree murder:  Before you can find

25   the defendant guilty of second degree murder,

1    the state must prove the following three

2    elements beyond a reasonable doubt:   Number

3    one, Robert Quirello is dead; number two, the

4    death was caused by the criminal act of Brian

5    Herlihy; number three, there was an unlawful

6    killing of Robert Quirello by an act eminently

7    dangerous to another and demonstrating a

8    depraved mind without regard for human life.

9        An act includes a series of related

10   actions arising from and performed pursuant to

11   a single design or purpose.  An act is

12   eminently dangerous to another and

13   demonstrating a depraved mind if it is an act

14   or series of acts that:   One, a person of

15   ordinary judgment would know is reasonably

16   certain to kill or do serious bodily injury to

17   another; and, two, is done from ill will,

18   hatred, spite, or an evil intent; and three, is

19   of such a nature that the act itself indicates

20   an indifference to human life.

21       In order to convict of second degree

22   murder it is not necessary for the state to

23   prove the defendant had an intent to cause

24   death.

25       Third degree murder:  Before you can find

1    the defendant guilty of third degree murder,

2    the state must prove the following three

3    elements beyond a reasonable doubt:  Number

4    one, Robert Quirello is dead; number two, the

5    death occurred as a consequence of and while

6    Brian Herlihy was engaged in the commission of

7    child abuse, or the death occurred as a

8    consequence of and while Brian Herlihy was

9    attempting to commit child abuse; number three,

10    Brian Herlihy was the person who actually

11    killed Robert Quirello.

12         It is not necessary for the state to prove

13    the killing was perpetuated with a design to

14    effect death.

15         Child abuse means the intentional

16    infliction of physical or mental injury upon a

17    child or an intentional act that could

18    reasonably be expected to result in physical or

19    mental injury to a child.

20         Manslaughter:  Before you can find the

21    defendant guilty of manslaughter, the state

22    must prove the following two elements beyond a

23    reasonable doubt:  Number one, Robert Quirello

24    is dead; number two, Brian Herlihy caused the

25    death of Robert Quirello by culpable

1    negligence.

2         However, the defendant cannot be guilty of

3    manslaughter if the killing was either

4    justifiable or excusable homicide, as I have

5    previously explained those terms.

6         I will now define "culpable negligence"

7    for you.  Each of us has a duty to act

8    reasonably towards others.  If there is a

9    violation of that duty, without any conscious

10   intention to harm, that violation is

11   negligence.  But culpable negligence is more

12   than a failure to use ordinary care towards

13   others.  In order for negligence to be culpable

14   it must be gross and flagrant.  Culpable

15   negligence is a course of conduct showing

16   reckless disregard of human life, or of the

17   safety of persons exposed to its dangerous

18   effects, or such an entire want of care as to

19   raise a presumption of a conscious indifference

20   to consequences, or which shows wantonness or

21   recklessness or a grossly careless disregard of

22   the safety and welfare of the public, or such

23   an indifference to the rights of others as is

24   equivalent to an intentional violation of such

25   rights.

 1          The negligent act or omission must have

 2     been committed with an utter disregard to the

 3     safety of others.  Culpable negligence to

 4     others is consciously doing an act or following

 5     a course of conduct that the defendant must

 6     have known or reasonably should have known was

 7     likely to cause death or great bodily injury.

 8          Aggravated child abuse:  To prove the

 9     crime of aggravated child abuse, the state must

10     prove the following two elements beyond a

11     reasonable doubt:  Number one, Brian Herlihy

12     committed aggravated battery upon Robert

13     Quirello, or maliciously punished Robert

14     Quirello, or knowingly or willfully committed

15     child abuse upon Robert Quirello, and in so

16     doing, caused great bodily harm, permanent

17     disability, or permanent disfigurement; number

18     two, Robert Quirello was under the age of 18

19     years.

20          In order to prove that an aggravated

21     battery was committed, the state must prove the

22     following:  Number one, Brian Herlihy

23     intentionally caused bodily harm to Robert

24     Quirello; number two, in so doing Brian Herlihy

25     intentionally or knowingly caused great bodily

1      harm, permanent disability, or permanent

2      disfigurement.

3          "Willfully" means knowingly,

4      intentionally, and purposefully.

5          "Maliciously" means done from ill will,

6      hatred, spite, or evil intent.

7          "Child abuse" means the intentional

8      infliction of physical or mental injury upon a

9      child, or an intentional act that could

10     reasonably be expected to result in physical or

11     mental injury to a child.

12         To prove the crime of child abuse, the

13     state must prove the following two elements

14     beyond a reasonable doubt:  Number one, Brian

15     Herlihy intentionally inflicted physical or

16     mental injury upon Robert Quirello, or

17     committed an intentional act that could

18     reasonably be expected to result in physical or

19     mental injury to Robert Quirello; number two,

20     Robert Quirello was under the age of 18 years.

21         Plea of not guilty; reasonable doubt; and

22     burden of proof.  The defendant has entered a

23     plea of not guilty.  This means you must

24     presume or believe the defendant is innocent.

25     The presumption stays with the defendant as to

1      each material allegation in the indictment,

2      through each stage of the trial unless it has

3      been overcome by the evidence to the exclusion

4      of and beyond a reasonable doubt.

5           To overcome the defendant's presumption of

6      innocence, the state has the burden of proving

7      the crime with which the defendant is charged,

8      and the defendant is the person who committed

9      the crime.

10          The defendant is not required to present

11     evidence or prove anything.

12          Whenever the words "reasonable doubt" are

13     used, you must consider the following:  A

14     reasonable doubt is not a mere possible doubt,

15     a speculative, imaginary, or forced doubt.

16     Such a doubt must not influence you to return a

17     verdict of not guilty if you have an abiding

18     conviction of guilt.  On the other hand, if

19     after carefully considering, comparing, and

20     weighing all the evidence there is not an

21     abiding conviction of guilt, or, if having a

22     conviction, it is one which is not stable, but

23     one which waivers and vacillates, then the

24     charge is not proved beyond every reasonable

25     doubt and you must find the defendant not

1        guilty, because the doubt is reasonable.

2            It is to the evidence introduced in this

3        trial and to it alone that you are to look for

4        that proof.  A reasonable doubt as to the guilt

5        of the defendant may arise from the evidence,

6        conflict in the evidence, or the lack of

7        evidence.

8            If you have a reasonable doubt, you should

9        find the defendant not guilty.  If you have no

10       reasonable doubt, you should find the defendant

11       guilty.

12           Weighing the evidence:  It is up to you to

13       decide what evidence is reliable.  You should

14       use your common sense in deciding which is the

15       best evidence and which evidence should not be

16       relied upon in considering your verdict.  You

17       may find some of the evidence not reliable or

18       less reliable than other evidence.

19           You should consider how the witnesses

20       acted as well as what they said.

21           Some things you should consider are:

22           Number one, did the witness seem to have

23       an opportunity to see and know the things about

24       which the witness testified?

25           Number two, did the witness seem to have

1      an accurate memory?

2           Number three, was the witness honest and

3      straightforward in answering the attorneys'

4      questions?

5           Number four, did the witness have some

6      interest in how the case should be decided?

7           Number five, does the witness' testimony

8      agree with the other testimony and other

9      evidence in the case?

10           Number six, has the witness been offered

11      or received any money, preferred treatment, or

12      other benefit in order to get the witness to

13      testify?

14           Number seven, had any pressure or threat

15      been used against the witness that affected the

16      truth of the witness' testimony?

17           Eight, did the witness at some other time

18      make a statement that is inconsistent with the

19      testimony he or she gave in court?

20           Nine, was it proved that the witness had

21      been convicted of a crime?

22           Ten, was it proved that the general

23      reputation of the witness for telling the truth

24      and being honest was bad?

25           You may rely upon your own conclusion

1    about the witness.  A juror may believe or

2    disbelieve all or any part of the evidence or

3    the testimony of any witness.

4         Expert witnesses:  Expert witnesses are

5    like other witnesses with one exception, the

6    law permits an expert witness to give his or

7    her opinion.

8         However, an expert's opinion is only

9    reliable when given on a subject about which

10   you believe him or her to be an expert.

11        Like other witnesses, you may believe or

12   disbelieve all or any part of an expert's

13   testimony.

14        The defendant not testifying:  The

15   Constitution requires the state to prove its

16   accusations against the defendant.  It is not

17   necessary for the defendant to disprove

18   anything, nor is the defendant required to

19   prove his innocence.  It is up to the state to

20   prove the defendant's guilt by evidence.

21        The defendant exercised a fundamental

22   right by choosing not to be a witness in this

23   case.  You must not view this as an admission

24   of guilt or be influenced in any way by his

25   decision.  No juror should ever be concerned

1     that the defendant did or did not take the

2     witness stand to give testimony in the case.

3          Defendant's statements:  A statement

4     claimed to have been made by the defendant

5     outside of court has been placed before you.

6     Such a statement should always be considered

7     with caution and be weighed with great care to

8     make certain it was freely and voluntarily

9     made.

10         Therefore, you must determine from the

11    evidence that the defendant's alleged statement

12    was knowingly, voluntarily, and freely made.

13         In making this determination you should

14    consider the total circumstances, including but

15    not limited to:  One, whether, when the

16    defendant made the statement, he had been

17    threatened in order to get him to make it; and,

18    two, whether anyone had promised him anything

19    in order to get him to make it.

20         If you conclude the defendant's

21    out-of-court statement was not freely and

22    voluntarily made, you should disregard it.

23         Rules for deliberation:  These are some

24    general rules that apply to your discussion.

25    You must follow these rules in order to return

1    a lawful verdict.

2         Number one, you must follow the law as it

3    is set out in these instructions. If you fail

4    to follow the law, your verdict will be a

5    miscarriage of justice. There is no reason for

6    failing to follow the law in this case. All of

7    us are depending upon you to make a wise and

8    legal decision in this matter.

9         Number two, this case must be decided only

10   upon the evidence that you have heard from the

11   testimony of the witnesses, and have seen in

12   the form of exhibits in evidence and these

13   instructions.

14        Number three, this case must not be

15   decided for or against anyone because you feel

16   sorry for anyone or are angry at anyone.

17        Number four, remember the lawyers are not

18   on trial. Your feelings about them should not

19   influence your decision in this case.

20        Number five, your duty is to determine if

21   the defendant has been proven guilty or not in

22   accord with the law. It is the judge's job to

23   determine a proper sentence, if the defendant

24   is found guilty.

25        Six, whatever verdict you render must be

1  unanimous.  That is, each juror must agree to
2  the same verdict.
3       Seventh, it is entirely proper for a
4  lawyer to talk to a witness about what
5  testimony the witness would give if called to
6  the courtroom.  The witness should not be
7  discredited by talking to a lawyer about his
8  testimony.
9       Eight, your verdict should not be
10  influenced by feelings of prejudice, bias, or
11  sympathy.  Your verdict must be based on the
12  evidence and on the law contained in these
13  instructions.
14       Cautionary instructions:  Deciding a
15  verdict is exclusively your job.  I cannot
16  participate in that decision in any way.
17  Please disregard anything I may have said or
18  done that made you think I preferred one
19  verdict over another.
20       Verdict:  You may find the defendant
21  guilty as charged in the indictment, or guilty
22  of such lesser-included crime as the evidence
23  may justify, or not guilty.
24       If you return a verdict of guilty, it
25  should be for the highest offense which has

1    been proven beyond a reasonable doubt.

2         If you find that no offense has been

3    proven beyond a reasonable doubt, then, of

4    course, your verdict must be not guilty.

5         Only one verdict may be returned as to the

6    crime charged.  This verdict must be unanimous;

7    that is, all of you must agree to the same

8    verdict.  The verdict must be in writing and

9    for your convenience the necessary forms of

10   verdict have been prepared for you.

11        They are as follows:

12        You don't have a copy of that, ladies and

13   gentlemen, there is only one verdict form and I

14   have it.  Of course, you will have it in the

15   jury room.  I'm gonna read it to you from here.

16   Of course, you can't see it, but you'll be able

17   to follow along with me.  The top of the page

18   is simply the style of the case and indicates

19   this is the Eighth Judicial Circuit Court in

20   Alachua County.  It has the case number and

21   indicates that this is the case of the State of

22   Florida vs. Brian Patrick Herlihy.  Then it has

23   the verdict form that you're to fill out.

24        It says:  We, the jury, find as follows as

25   to the defendant, Brian Herlihy, in this case.

2457

1     And then it has seven options and you are to

2     select one of those options.  They are:

3        Number one, the defendant, Brian Patrick

4     Herlihy, is guilty of murder in the second --

5     excuse me, in the first degree as charged in

6     the indictment;

7        Number two is, the defendant, Brian

8     Patrick Herlihy, is guilty of murder in the

9     second degree, a lesser-included offense;

10       Number three, the defendant, Brian Patrick

11     Herlihy, is guilty of murder in the third

12     degree, a lesser-included offense;

13       Number four, the defendant, Brian Patrick

14     Herlihy, is guilty of manslaughter, a

15     lesser-included offense;

16       Number five, the defendant, Brian Patrick

17     Herlihy, is guilty of aggravated child abuse, a

18     lesser-included offense;

19       Number six, the defendant, Brian Patrick

20     Herlihy, is guilty of child abuse, a

21     lesser-included offense;

22       Number seven, the defendant, Brian Patrick

23     Herlihy, is not guilty.

24       And then at the bottom it says:  So say we

25     all, and it is to be dated, whatever day of

1    September the verdict is reached, 2002, at

2    Gainesville, Alachua County, Florida and is to

3    be signed by the foreperson of the jury.

4         In just a few minutes you will be taken to

5    the jury room by the bailiff.  The first thing

6    you should do is to elect a foreperson.  The

7    foreperson presides over the deliberations like

8    a chairperson of a meeting.  It is the

9    foreperson's job to sign and date the verdict

10   form, when all of you have agreed on a verdict

11   in this case.  The foreperson will bring the

12   verdict back to the courtroom when you return

13   and, of course, either a man or a woman may be

14   foreperson of a jury.

15        Your verdict finding the defendant either

16   guilty or not guilty must be unanimous.  The

17   verdict must be the verdict of each juror, as

18   well as of the jury as a whole.

19        In closing let me remind you that it is

20   important that you follow the law spelled out

21   in these instructions in deciding your verdict.

22   There are no other laws that apply to this

23   case.  Even if you do not like the laws that

24   must be applied, you must use them.  For two

25   centuries we have agreed to a Constitution and

Stacey K. Bryant, RPR
Judicial Court Reporter

1    to live by the law.  No one of us has a right

2    to violate rules we all share.

3        Now, as I indicated a little bit

4    yesterday, the time for deliberations is

5    entirely up to you, and we are prepared to

6    accommodate that.  You may or may not have

7    noticed that the windows to this courtroom have

8    been closed.  That is because the bed is so

9    large and because you have a right to examine

10   all of the evidence in this case, that evidence

11   will be placed in the jury room with you so

12   that you can examine it, but you will be

13   allowed to enter this courtroom and to use this

14   courtroom space for your deliberations as you

15   need to.

16       Because you will be under the protection

17   of the bailiff, so to speak, the bailiff will

18   be in the courtroom.  The rest of us will

19   probably clear the courtroom.  I have other

20   matters to attend to, and we will all be on

21   call to you.

22       So the way that will work is you'll be in

23   the jury room.  If you choose to examine the

24   bed, for instance, you'll simply ring the bell.

25   The bailiff will then make sure that the

1    courtroom is cleared, and he or she will step

2    outside this front door.  And then you may use

3    this space as you see fit to examine evidence,

4    or even for your discussions.  And then when

5    you move back into the jury room, you simply

6    knock on that door as you would ring the bell,

7    to alert the bailiff, and he will again make

8    sure that if this room is needed for any other

9    purpose, that it remains secure and you remain

10   protected in the deliberation environment.

11        I believe we have coffee and water there.

12   I know some of you smoke and may choose to take

13   recesses, which I have allowed for with the

14   agreement of the attorneys.  I have to warn all

15   of you that if it is necessary to take a recess

16   and split up for that reason, deliberations

17   will have to cease until such time as you're

18   all together again.  And, of course, there can

19   be no partial deliberations during the smoke

20   recess or anything like that.  And, of course,

21   there can be no comment whatsoever about the

22   trial to the bailiff or in front of the

23   bailiff.

24        Do we have the menus?

25        MR. BAILIFF:  Yes, your Honor.

1          THE COURT:  In case you get ready to order

2     lunch, you'll have the menus already.  At

3     whatever point you choose, as a jury, to decide

4     that you want to go ahead and order lunch, if

5     you choose to, you may simply fill those out,

6     ring the bell, hand them to the bailiff, and

7     say go get us some lunch, and that will be

8     delivered back to you.

9          We will not reconvene for that purpose.

10          If your deliberations continue throughout

11     the afternoon, of course, the same smoke recess

12     issue will remain and all you'll have to do in

13     that regard is to ring the bell, say we need to

14     take a smoke recess, and the bailiff will

15     arrange for one bailiff to stay here with the

16     majority, and one bailiff to escort smokers

17     down for a short break, and then escort you

18     back up as you have done throughout the trial.

19          If we get to the point of dinner I will

20     inquire of you what arrangements you might want

21     to be prepared for, just in case deliberations

22     go on into the evening and require you to be

23     sequestered overnight.  That's totally outside

24     of anything, other than speculation at this

25     point.  But by dinnertime you may be prepared

2462

1 to address that as a possibility and you may

2 have some sense of that.

3  Just be advised that we have made

4 arrangements and we can accommodate that as we

5 go and we don't have to have any advance

6 notice.

7  MS. SINGER:  Your Honor, may I approach?

8  THE COURT:  Yes.

9  (Sidebar conference:)

10  MS. SINGER:  I'm not sure about whether or

11 not the court administration has a tape

12 recorder or a boom box.  If they don't, we'll

13 go back to the office and have one delivered

14 that they can use during the deliberations as

15 well.  I was under the understanding that court

16 administration also had a boom box.  The one

17 that was used in court was our boom box.

18  MR. GROLAND:  That's fine.  Any way you

19 want to do it.

20  MS. SINGER:  I don't think -- if you want

21 to address that.

22  THE COURT:  I'll tell them there will be

23 one on this table if they want to use it.

24  MS. SINGER:  I'll go ahead and call the

25 office.

```
1          MR. TEDDER:  Your Honor, I was just gonna
2     say we ought to wait unless they request it.
3          THE COURT:  No, I'm gonna provide it.
4          MR. TEDDER:  Also, your Honor, you read
5     this instruction "when it was committed."
6          THE COURT:  I'm sorry.
7          MR. TEDDER:  You omitted to say "was
8     committed" that line on that instruction.
9          MR. GROLAND:  I was gonna bring that up
10    after the jury went in, but you did not say
11    that.  I noted that also.
12         THE COURT:  I can give the entire
13    instructions again.
14         MR. TEDDER:  That's what we would ask you
15    to do.
16         THE COURT:  Okay, all of them from
17    beginning to end or this whole page?
18         MR. TEDDER:  This whole thing?
19         MR. GROLAND:  Or that paragraph.
20         MR. TEDDER:  She omitted to say "was
21    committed."
22         MS. SINGER:  Whatever the Court deems is
23    appropriate.
24         THE COURT:  Ms. Singer, you're gonna go
25    ahead.
```

1      MS. SINGER:  Mr. West is gonna go get

2   that.

3           (Sidebar conference concluded.)

4           THE COURT:  Ladies and gentlemen, it's

5   come to my attention I omitted a couple of

6   words, and simply in an abundance of caution to

7   make sure that all the instructions are given,

8   I'm going to read that page over again.  It is

9   the page that is titled 2.03.

10          It's about nine pages from the back.  I'll

11  give everybody a chance to locate this.

12          Do you have it?  Okay.

13          Plea of not guilty; reasonable doubt; and

14  burden of proof:  The defendant has entered a

15  plea of not guilty.  This means you must

16  presume or believe the defendant is innocent.

17  The presumption stays with the defendant as to

18  each material allegation in the indictment

19  through each stage of the trial, unless it has

20  been overcome by the evidence to the exclusion

21  of, and beyond a reasonable doubt.

22          To overcome the defendant's presumption of

23  innocence, the state has the burden of proving

24  the crime with which the defendant is charged

25  was committed, and, the defendant is the person

1    who committed the crime.  The defendant is not

2    required to present evidence or prove anything.

3         Whenever the words "reasonable doubt" are

4    used, you must consider the following:  A

5    reasonable doubt is not a mere possible doubt,

6    a speculative, imaginary, or forced doubt.

7    Such a doubt must not influence you to return a

8    verdict of not guilty if you have an abiding

9    conviction of guilt.

10        On the other hand, if after carefully

11   considering, comparing, and weighing all the

12   evidence, there is not an abiding conviction of

13   guilt, or if having a conviction, it is one

14   which is not stable, but one which waivers and

15   vacillates, then the charge is not proved

16   beyond every reasonable doubt and you must find

17   the defendant not guilty because the doubt is

18   reasonable.

19        It is to the evidence introduced in this

20   trial and to it alone that you are to look for

21   that proof.  A reasonable doubt as to the guilt

22   of the defendant may arise from the evidence,

23   conflict in the evidence, or the lack of

24   evidence.  If you have a reasonable doubt, you

25   should find the defendant not guilty.  If you

1    have no reasonable doubt, you should find the

2    defendant guilty.

3         Now, it's also been brought to my

4    attention that audiotapes were placed in

5    evidence, and a tape player will be provided

6    for you in case you need to examine those bits

7    of evidence by turning on the machine.  Other

8    than that, I'm going to release the alternates

9    at this time.  As you know, it is necessary

10   that everybody be, not only healthy, but

11   attentive throughout the course of the trial.

12   And in the event that no one has to be excused

13   for any reason, and no one does in this case, I

14   can now, at this point, release the alternates.

15        Ms. Mahamery, and Ms. Williams, you're the

16   alternates in this case.  I want to thank both

17   of you very much for all of the time and work

18   that you've put into this case, and I'm gonna

19   release you at this point.

20        Of course, if you want to stay and find

21   out what the final verdict is, you are welcome

22   to wait with the rest of us who will be waiting

23   for the jury to return with a verdict.  But if

24   you have other business and you want to leave

25   the courthouse, of course, you're free to go.

1      Do either one of you have any personal property

2      that's in the jury room?

3           JUROR MAHAMERY:  Yes, I have my purse.

4           THE COURT:  You may retrieve them at this

5      time and you can keep your notebooks and

6      dispose of them as you see fit.

7           (Pause in the proceedings.)

8           THE COURT:  And I will also tell you that

9      although the majority of the evidence is gonna

10     be moved into the jury room, you may move it

11     back and forth as you see fit, and you need not

12     be concerned with where you leave it.  If you

13     choose to leave it in this courtroom, this

14     courtroom will remain secured because of

15     evidence being in here.

16          So I will ask at this time that the

17     evidence, other than the bed, be moved into the

18     jury room, that the verdict form, along with

19     the lunch, you can lay this verdict form back

20     there also.

21          THE CLERK:  It may be a moment, your

22     Honor.  I have to sort through and make sure.

23          THE COURT:  Yes, I understand.

24          THE CLERK:  All right, your Honor.

25          THE COURT:  Take it into the jury room.

1          MR. BAILIFF:  That's all the evidence.

2          THE COURT:  That's everything?

3          THE CLERK:  Yes, ma'am.

4          THE COURT:  Ladies and gentlemen, thank

5     you very much.  You will have a tape recorder

6     on this table available to you.  I expect it

7     will be shortly after we break.  You may retire

8     to the jury room.

9          (Whereupon, the jury retired to deliberate

10    upon their verdict.)

11         MR. BAILIFF:  Should we give them gloves?

12         THE COURT:  Yes.  Do you have gloves

13    available?

14         MR. BAILIFF:  Yeah, we do.

15         THE COURT:  Thank you.

16         All right.  Is there any objection to the

17    instructions as read?

18         MR. TEDDER:  Not other than the ones we

19    raised previously, your Honor.

20         THE COURT:  And those have been addressed.

21         Anything else we need to put on the

22    record?

23         MR. TEDDER:  Yes, ma'am.  Your Honor, I

24    would ask that the court file be removed from

25    the courtroom as well.

```
 1            THE COURT:  The court file will be
 2     removed.  This entire bench will be cleared.
 3            Any other property?
 4            Madam Court Reporter, what's gonna be the
 5     status of your equipment?
 6            THE COURT REPORTER:  I'm gonna take my
 7     computer and I'm gonna leave my number.  And
 8     I'll be back at my office.
 9            THE COURT:  Good.  Then you take the
10     computer and the disks?
11            THE COURT REPORTER:  And all my notes.
12     I'll take all my notes.
13            THE COURT:  Mr. Clerk, you're gonna clear
14     your area?
15            THE CLERK:  Yes, ma'am.
16            MR. TEDDER:  May we return to our offices?
17            THE COURT:  Will you be available within
18     15 minutes?
19            MR. GROLAND:  Absolutely.  We can walk in
20     five minutes.
21            THE COURT:  Good.
22            MR. GROLAND:  Do we need to leave our
23     phone number with somebody?
24            THE COURT:  Absolutely.  Yes, you need to
25     leave the phone number where you can be reached
```

```
 1         immediately, direct line with the bailiff.
 2              State can return to their office so long
 3         as they can get back here within 15 minutes
 4         with a phone call.
 5              I will be on the bench in 2D.
 6              MS. SINGER:  Could we have that witness
 7         mediation room for the family members that we
 8         had where the witnesses were asked to sit?
 9              THE COURT:  We can find out if it's
10         available.  And certainly if it is --
11              MS. SINGER:  Otherwise, I know the family
12         will be right outside.  I don't know if the
13         Court wants them outside of the courtroom.
14              THE COURT:  I will be glad to see what
15         mediation space might be available.  If it's
16         not already booked, I'm sure we can have use of
17         it for both the victim's family, and have a
18         space available for the defendant's family.
19              And the jail can be available within 15
20         minutes?
21              JAIL PERSONNEL:  Yes, your Honor.
22              THE COURT:  Okay.  Anything else we need
23         to address?
24              MR. GROLAND:  No.
25              THE COURT:  All right.  We're gonna stay
```

1      on the, I'm gonna stay on the bench until

2      Mr. West gets back with that tape recorder.

3      We'll go ahead and clear this.

4           (Recess pending jury verdict.)

5           THE COURT:  All right.  We're on the

6      record.

7           We have a written question from the

8      jurors.  It says:  May we have a tape recorder,

9      an easel, a large tablet, and black markers?

10      May we also have a list which cross references

11      what evidence is in each bag/folder?

12           As to the first question, of course, we

13      already have a tape recorder for them.  Is

14      there any objection to an easel, large tablet,

15      and colored markers being provided?

16           MS. SINGER:  No objection from the state.

17           MR. TEDDER:  I don't object to a tablet

18      being provided to them.

19           MR. GROLAND:  To write on?

20           MR. TEDDER:  So they can write on it.

21           MR. GROLAND:  I mean, maybe I'm

22      misunderstanding, just something to write on?

23           THE COURT:  Right.

24           MR. GROLAND:  I have no objection.

25           THE COURT:  Well, can you and Mr. Tedder

1    come to some agreement?

2         MR. TEDDER:  He's lead counsel, your

3    Honor, whatever he says.

4         MR. GROLAND:  No objection, Judge.

5         THE COURT:  Okay.  Good enough.  I'll

6    direct court administration provide an easel,

7    large tablet, and markers, whatever color they

8    have.

9         Now, as to the request that they be

10   provided a list of cross references of the

11   evidence, obviously there was some, over 75

12   items from the state, and a number of items

13   from the defense.  Is there any objection to

14   giving them a list of the items in evidence if

15   the clerk has such a list?

16        MR. GROLAND:  We've got everything, a list

17   with every number on it.

18        THE CLERK:  I could have a list, but it

19   does also list items marked for identification

20   and what they are.

21        MS. SINGER:  And they're not in evidence.

22        MR. GROLAND:  Can we make a copy of the

23   list and then just white out, on the Xerox --

24   in other words, make a Xerox copy, white out

25   the items marked for identification only, that

1    have not been put into evidence, and then make

2    another copy of it and give them another copy,

3    and give them that copy?

4         THE CLERK:  If you guys just want to

5    review it and make sure it's okay.

6         THE COURT:  Yeah.  Is that agreeable?

7         MS. SINGER:  I have no problem with that.

8         THE COURT:  Go ahead and make that list,

9    Mr. Clerk.

10        MS. SINGER:  That may take some time,

11   though.  Are you gonna bring the jury out to

12   respond to their questions, to let them know

13   that may take some time?

14        THE COURT:  No.  I'm going to bring them

15   out one time, give them the answers, give them

16   the items and send them back in.

17        MS. SINGER:  Okay.  So we need to do that

18   at this time.

19        MR. PENNYPACKER:  You want the tape

20   recorder out here to go back in there?

21        THE COURT:  When I bring them out I will

22   tell them that they may move it if they wish

23   to.

24        MS. SINGER:  Okay.  Where are we?

25        (Pause in the proceedings.)

1     MS. SINGER:  Everything I marked.  No,

2  I.D. is evidence off the record.

3     I still have it.

4     THE COURT:  Are you ready to tell me where

5  you are on this?

6     MS. SINGER:  Yes.  There are two ways we

7  can do this, Judge.  We can actually blacken

8  it, which would suggest something that they

9  don't have, or if you allow us to just cut and

10  paste on the second piece of paper, we can

11  literally cut out the sections that don't

12  apply, and Xerox another copy that's not on

13  here.

14     MR. GROLAND:  I think the way I suggest is

15  even better.  White it out, Xerox it, in other

16  words, I'm not saying white out on the

17  original, but make a Xerox copy, white out what

18  needs to be whited out, and then re-Xerox it.

19  It will just look like there are spaces in

20  between.

21     THE COURT:  This is just a computer

22  generated printout?

23     THE CLERK:  Yes, ma'am.

24     THE COURT:  So we can white out on this

25  one.

1          THE CLERK:  Yeah.

2          MR. GROLAND:  And then make a Xerox and it

3     won't even be noticeable.

4          THE COURT:  Whose got the Wite-Out?

5          MS. SINGER:  If you'll let me go over to

6     court administration, I just need to cut a

7     piece of paper.

8          THE CLERK:  Maybe we'll just keep this

9     original, delete the lines on the computer,

10    print another one.  It will come -- so it will

11    look like nothing is changed, and then I can

12    just add them back into the computer using

13    this, if that's --

14         THE COURT:  That's fine.

15         MS. SINGER:  That's good.

16         MR. GROLAND:  That's good.

17         MS. SINGER:  That's even better because it

18    will look like it's in order.

19         MR. GROLAND:  Right.  Why didn't you speak

20    up before?

21         THE CLERK:  I just thought about it.

22         MR. GROLAND:  I'm just kidding.

23         THE CLERK:  The printer ran out of paper,

24    your Honor.  I'm gonna run outside and print

25    the last.  I apologize.

1          THE COURT:  But you've corrected it?

2          THE CLERK:  Yes, ma'am.

3          THE COURT:  I'm gonna ask that the state

4     and defense come look over his shoulder at the

5     computer and make sure that they agree that

6     this is the list to be printed while we're

7     waiting for the paper to get here.

8          This is the corrected list?

9          THE CLERK:  This is the corrected, the

10    back half of it hasn't printed yet, because

11    it's waiting for paper.

12         THE COURT:  Okay.  S.J., we're having

13    printing problems.

14         (Pause in the proceedings.)

15         THE COURT:  Where is he going?

16         CLERK:  He is going downstairs to print.

17    It's cutting off.  He had to go ahead and take

18    that identification stuff out of the computer.

19    When we went back to print it, this is what

20    we're getting.

21         THE COURT:  You have it, Mr. Clerk?

22         THE CLERK:  Yes, ma'am.

23         THE COURT:  Show it to the state and

24    defense right there, please.

25         (Pause in the proceedings.)

1      THE COURT:  State and defense agree?

2      MR. GROLAND:  That's fine.

3      THE COURT:  Bring the jury in.

4      (Before the jury:)

5      THE COURT:  Come on back into the jury

6   box, please.

7      Ladies and gentlemen, as I am required to

8   do every time a request is made, I have

9   conferred with the state and the defense

10   regarding these requests and everyone has

11   agreed.

12      You have a tape recorder.  We advised you

13   of that earlier, and if you wish to take it

14   into the jury room, of course, you may do that.

15   I have requested, and we have for you, an

16   easel, a large tablet, and some different

17   colored markers.  We can set it up for you

18   unless somebody is willing and mechanically

19   inclined and would like -- doesn't have any

20   concern about being able to set it up, and, of

21   course, you can set it up in the courtroom or

22   in the jury room.

23      However, if you choose to set it up in the

24   jury room and make any marks on it, I'm gonna

25   ask that when you retire back to the jury

1    deliberation room, you take the pad of paper

2    with you so that anything you might choose to

3    write on it would remain private to the jurors'

4    deliberations.

5        We also have created a list as you have

6    requested that lists all of the items that have

7    been introduced into evidence, and you will be

8    allowed to utilize that any way that you see

9    fit.

10        And I understand that there has been a

11    request that some of you be able to take a

12    break outdoors.  So if you'll call for

13    assistance in that regard.

14        I think we've addressed everything on the

15    list at this point.  The request will be filed

16    by the clerk in the court file and would you

17    like -- you can tell me right now -- would you

18    like the easel set up in here or would you like

19    us to have the easel set up in the jury

20    deliberation room?

21        THE FOREPERSON:  Can we have access to the

22    courtroom?

23        THE COURT:  You have to ring the bell.

24        THE FOREPERSON:  We all have to come in

25    together, or can we come in and look at the bed

2479

1  without everyone being here?

2      THE COURT:  You could do that, so long as

3  there's no discussion, if that's what you're

4  asking.  If some of the people go downstairs --

5      THE FOREPERSON:  No, I'm speaking when we

6  go back into deliberations, can we come out

7  here and look at the bed as a group of 12

8  jurors without the court being here, in the

9  privacy of the room for us?

10     THE COURT:  Absolutely, that's what I

11 intended.

12     THE FOREPERSON:  Would you all like the

13 easel inside or outside?

14     THE JURY:  Outside.

15     THE COURT:  Good enough.  Let me explain

16 that again.  The bailiff will be in the

17 courtroom when you're in the deliberation room.

18 If you ring that bell and tell the bailiff you

19 want to utilize the courtroom, what he'll do

20 is, everyone else will leave -- or she,

21 depending on who's on duty at that time -- and

22 step outside that door, so then you all will

23 have this entire courtroom to preview evidence,

24 do whatever you want to with it, discuss it,

25 but everybody else will be outside.  That's the

 1     reason for the bell and clearing the courtroom.

 2     But, yes, you'll be able to move back and forth

 3     from the deliberation room into the jury room

 4     as a jury for deliberations, and it will be the

 5     bailiff's responsibility to make sure that

 6     everybody else is out.

 7          And then, as I said before, when you

 8     finish utilizing this space, if you choose to

 9     go back into the jury room to continue your

10     discussions, just knock on that door so that

11     the bailiff will then basically follow you and

12     we'll be able to hear the bell if you ring it

13     again.

14          Okay.  Does that make sense?

15          THE FOREPERSON:  Yes, ma'am.

16          THE COURT:  Good enough.

17          Now, if you'll step into the jury room and

18     we'll exit and we'll get you an escort to take

19     some of you downstairs.  Go ahead and set that

20     up.  Would you do that?

21          MR. BAILIFF:  Yes, your Honor.

22          (The jury retired to continue

23     deliberations.)

24          THE COURT:  Okay.  If you'll set that up

25     for them now before we go off the record.  Do

1    you have it set up?

2         Close the door for just one moment.

3         Just give me one moment.  Let me have

4    Mr. Herlihy and have the attorneys clear the

5    room so that the bailiff can take the jurors

6    through.

7         MR. GROLAND:  We can go back to our

8    office?

9         THE COURT:  Yes.

10        MR. PENNYPACKER:  Your Honor, can I excuse

11   myself?  I'm gonna have to go do other business

12   and probably will not be --

13        THE COURT:  Certainly.  State and defense

14   needs to have one lawyer on call and it's

15   totally up to you how many lawyers you have on

16   call, but I need just one.

17        All right.  You can go ahead and escort

18   those jurors who want to go downstairs.  Court

19   is in recess until we have another matter to

20   handle.

21        (Recess pending jury verdict.)

22        THE COURT:  All the jurors back?

23        MR. BAILIFF:  Yes, your Honor.

24        THE COURT:  We have a written question

25   from the jurors.

1       It says:  Your Honor, are all of the

2   indictments in a hierarchy?  Must we find guilt

3   for lesser-included charges to find guilt in a

4   higher level charge?

5       Next, may we also have a copy of Dr. Anne

6   Dickison's transcript, and the 911 tape?

7       And then:  Regarding aggravated child

8   abuse, we need clarification of two terms:

9   "knowingly" and "intentional act."

10      Now, taking the easy ones first.

11  Regarding the request for the two definitions,

12  state or defense have anything they want to say

13  in regard to that?

14      MR. TEDDER:  I'm sorry.  What was the

15  question again, your Honor?  I'm sorry.

16      THE COURT:  Regarding aggravated child

17  abuse we need clarification of two terms:

18  "Knowingly" and "intentional act."

19      MR. TEDDER:  Unless there's a definition

20  in the standard jury instruction, there should

21  be, I think, isn't there?  But I'm not sure.

22      "Knowingly" and "intentional act" is

23  pretty basic.  Unless they're -- I would say

24  unless there's a standard jury instruction

25  finding those two terms, the answer is no, they

1       can't have any further explanation.

2            THE COURT:  What's the state think?

3            MR. TEDDER:  Do you agree with that,

4       Gordon?

5            MR. GROLAND:  Yeah.

6            MS. SINGER:  Your Honor, I don't think

7       there's any instruction in the packet, and I

8       don't believe that there is a standard

9       instruction.  If the Court would allow me a

10      moment, there may be a standard instruction for

11      knowing and intentional, if Mr. Tedder would

12      allow me to just look in the back there.

13      Otherwise, I don't think we should invent one

14      at this time, but if there is one that we could

15      agree on, from the area of aggravated battery

16      or some other area, if there's one we could

17      agree on, then I would ask that that be read to

18      them.

19           The 911 tape is in evidence, so I don't

20      know -- that was a tape given to them actually

21      to review in evidence, so I don't know what the

22      issue is with that.

23           THE COURT:  We'll just take it one at a

24      time.  Let's look at the possibility of the

25      definitions.

1          MS. SINGER:  If the Court will give me

2     just a moment to look we'll see if it's in

3     another standard instruction.

4          THE COURT:  All right.

5          (Pause in the proceedings.)

6          MS. SINGER:  I looked through 784 and

7     there is no standard instruction there for

8     knowing and intentionally, your Honor.  I know

9     the term is used throughout the section for

10    assault and battery.

11         THE COURT:  Can you see if they have

12    another question?  Otherwise it will be a few

13    minutes.

14         MS. SINGER:  There is a section --

15         THE COURT:  Hold on a second, Ms. Singer.

16    Go ahead.

17         MR. BAILIFF:  They're all okay.

18         THE COURT:  Okay.

19         MS. SINGER:  There is a section on

20    burglary that reads:  The intent with which the

21    act is done is an operation of the mind, and,

22    therefore, is not always capable of direct and

23    positive proof that may be established by

24    circumstantial evidence by any other fact in a

25    case.  That would be in the burglary statute

1       810.02, standard jury instruction.  And they

2       title that proof of intent.

3              MR. TEDDER:  Wasn't the question they were

4       asking, though, for knowingly and willfully?

5              MS. SINGER:  They also have in trespass

6       under 810.08 willfully means intentionally and

7       purposefully.

8              THE COURT:  Willfully is not one of the

9       requested.

10             MS. SINGER:  Which was the other one?

11             THE COURT:  Knowingly.

12             MS. SINGER:  Oh, knowingly.  I'm sorry.

13             (Pause in the proceedings.)

14             MS. SINGER:  I'm almost through, your

15      Honor.

16             Many definitions for willfully, but yet I

17      have not seen for knowingly and intentionally.

18      And I just wanted to check at the very

19      beginning here to make sure that there isn't

20      any special instructions for justifiable use of

21      deadly force, a miscellaneous instruction in

22      here, if the Court will allow me a moment?

23             MR. GROLAND:  Your Honor, I was just going

24      to suggest if we're gonna be even thinking

25      about picking and choosing amongst the other

1      statutes that are not involved in this case, we

2      might want to think about just looking at a

3      Black's Law Dictionary and pulling out a

4      definition from there, instead of the burglary

5      statute.

6           THE COURT:  Black's Law Dictionary or

7      Webster's Dictionary.  We can consider all of

8      those, and then I'll hear from the state and

9      the defense, and then I'll make a decision.

10          MR. TEDDER:  Your Honor, could you read us

11     the questions again?  We couldn't quite

12     remember the first one about the hierarchy.

13          THE COURT:  I'll do that in just a minute.

14          Ms. O'Neal, could you go ahead into the

15     law library and get me a dictionary and a

16     Black's Law Dictionary?

17          MS. O'NEAL:  Yes, your Honor.

18          THE COURT:  Thank you.

19          Now, let's go back to the top, Ms. Singer.

20          MS. SINGER:  I don't find anything, your

21     Honor, and I've gone through almost every one

22     of them.

23          THE COURT:  The first question is:  Are

24     all of the indictments in a hierarchy or must

25     we find guilt for lesser-included charges to

1    find guilt in a higher level charge?

2         Does the state have any proposed response

3    to that?

4         MS. SINGER:  I think the Court should read

5    the instruction, or reread the instruction that

6    defines the verdict, 2.08.  If you return a

7    verdict of guilty, it should be for the highest

8    offense which has been proven beyond a

9    reasonable doubt.  If you find that no offense

10   has been proven beyond a reasonable doubt,

11   then, of course, your verdict must be -- read

12   in it's entirety, this, the instruction.

13        THE COURT:  Does the defense have any

14   recommendation or request?

15        MR. TEDDER:  I figure -- That does seem to

16   be the section of the jury instructions that

17   deals with that.

18        MS. SINGER:  The only other suggestion

19   is --

20        THE COURT:  Let Mr. Tedder finish, please.

21        MS. SINGER:  Oh, sorry.

22        MR. TEDDER:  I was gonna look to see what

23   the instruction on lesser-included offense is.

24   I mean, part of my -- the fact is that the

25   offenses are in a hierarchy.

1          THE COURT:  I understand that, Mr. Tedder.

2     All I need is your response.  Agree, disagree,

3     make a recommendation.

4          MR. GROLAND:  Well, I mean, I believe --

5     I'm not saying this is what we should tell the

6     jury, but I believe the answer is no, just in

7     general, to the question.  The question seems

8     to be in order to find --

9          THE COURT:  Are you proposing that we say

10    no?

11         MR. GROLAND:  No, I'm not.  I'm thinking

12    out loud.

13         THE COURT:  I don't need for you to think

14    out loud.  You can discuss it with Mr. Tedder

15    if you want to.

16         MS. SINGER:  I do want to make a

17    suggestion.  The way the question seems framed

18    to me, I think it should be said that they

19    check only one box.  Because it sounds, if I

20    read it, if I hear it as literally, that it

21    sounds like they're wondering if they have to

22    check all boxes, and if it's simply a matter of

23    how to check a box, since we didn't type on

24    there check one box only, that if it's just the

25    little -- the way you read it to me it was

1    almost like:  Do we check all boxes, or do we

2    check -- how many boxes do we check?  And I

3    think that would maybe clarify that.

4         MR. TEDDER:  It seems to me that what they

5    may be saying is can we convict of a higher

6    offense if we don't believe they proved beyond

7    a reasonable doubt what they perceive to be a

8    lesser offense.  And my answer to that, if

9    that's what they're asking is, no, they can't.

10   I would submit they can't convict him of

11   anything.  If they can't convict of the least

12   offense, they certainly shouldn't be able to

13   convict of anything higher.

14        THE COURT:  All right.  Now, let me ask

15   this:  Since they have all the instructions,

16   all of which are standard, all of which have

17   been approved by the supreme court, and since

18   we have been instructed not to make up

19   instructions as we go along on a case-by-case

20   basis, and since they have a copy of the

21   instructions that they have been given, is

22   there any objection by the state or the defense

23   to me saying to them in response to that

24   question:  All of the instructions on the law

25   applicable to the consideration of

1    lesser-included offenses have been given to

2    you.  There are no other instructions that we

3    can offer.  You are to choose one verdict, that

4    is, check one box.

5         Any objection to that?

6         MS. SINGER:  I have no objection to that.

7         THE COURT:  Does the defense have any

8    objection to that?

9         MR. TEDDER:  Can I just have one moment,

10   your Honor?

11        THE COURT:  Yes.

12        MR. GROLAND:  Your Honor, there is an

13   instruction that says:  In considering the

14   evidence you should consider the possibility

15   that although the evidence may not convince you

16   that the defendant committed the main crime of

17   which he is accused, there may be evidence that

18   he committed other acts that would constitute a

19   lesser-included crime.  Therefore, if you

20   decide that the main accusation has not been

21   proven beyond a reasonable doubt, you would

22   need next to decide if the defendant is guilty

23   of any lesser-included crime.  The lesser

24   crimes indicated in the definition of, are --

25        THE COURT:  I understand.  And that has

1    been read to them and they have a copy of it.

2           MR. TEDDER:  No, ma'am, it was not.

3           MS. SINGER:  No, that was not read because

4    that was not part of the homicide instruction.

5           MR. TEDDER:  That should be read.

6           MS. SINGER:  When we did the instructions,

7    the homicide instructions has a special section

8    for the lesser-included offenses.

9           THE COURT:  All right.

10          MS. SINGER:  So I have no problem with

11   reading that instruction so long as the verdict

12   instruction is also read to them, which is

13   instruction 2.08.

14          MR. GROLAND:  This instruction, your

15   Honor, for the Court's information, is 2.02(a).

16          THE COURT:  All right.  Good enough.

17          MS. SINGER:  I would like to just look at

18   it, because we may need to make sure the Court

19   has a list of --

20          MR. GROLAND:  Jeanne --

21          MS. SINGER:  I know, I agree with you

22   that's what it says.  I want the Court to know

23   what the list of the lessers were so that --

24   right now, all we need to do is write down for

25   the Court -- I know the Court may have it up

1      there, but if you're going to use this, since

2      we don't have it printed, you need to know what

3      we had on the verdict form, if you don't

4      already have it in your hand.  I'm sure you do,

5      but --

6           THE COURT:  I don't.  They were on mine, a

7      number of them.  Does that instruction require

8      this, all of the lesser-included offenses --

9           MS. SINGER:  Yes, it says the lesser

10     crimes indicated in the definition of, and then

11     you take first degree murder, that's it, are;

12     and it was second degree, third degree,

13     manslaughter, aggravated child abuse, and child

14     abuse.  That's what I recall.

15          MR. GROLAND:  Correct.

16          MR. TEDDER:  That's correct.

17          MS. SINGER:  I think we should write it

18     down for you so that we can agree.

19          THE COURT:  All right.  Good enough.

20     That's the instruction that I will give them in

21     response to that question.

22          MS. SINGER:  Would you also read 2.08

23     again, because I think it's not fair to give

24     them this instruction without giving them the

25     other instruction about how the verdict is

1    rendered?

2        THE COURT:  No.  I will not read 2.08

3    again.  They have that instruction.

4        MS. SINGER:  Okay.  Did you want me to

5    write down --

6        THE COURT:  Unless both the state and

7    defense stipulate that 2.08 should be read

8    again.

9        MR. TEDDER:  No.  I think if we're going

10   to read 2.02(a) to them, it should be given to

11   them in writing as well.

12       THE COURT:  It's gonna take some time to

13   get that printed.

14       Ms. Singer, can you arrange to have that

15   printed?

16       MS. SINGER:  I would be happy to go in

17   your office and type it.

18       THE COURT:  All right.

19       MS. SINGER:  Right now at this time we

20   have absolutely no one in our office to do it.

21   So I will sit down and type it on a computer

22   somewhere.  If that prints, I can type it right

23   on that computer.

24       THE COURT:  We can go into my office,

25   state and defense, and type that if you need

1    to.

2         In regard to the second question, the

3    question is:  May we also have a copy of

4    Dr. Anne Dickison's transcript and the 911

5    tape?  Is there any objection by state or

6    defense to me saying:  In regard to the

7    testimony of Dr. Anne Dickison or any other

8    witness, you must rely on your memory, no

9    transcript is available.

10        MR. GROLAND:  That would be our request.

11        MS. SINGER:  No objection.

12        THE COURT:  As to -- the 911 tape is in

13   evidence and you may review that with the tape

14   recorder.

15        MS. SINGER:  Is there any way the clerk

16   could tell them what number it was, because

17   maybe they, with all that is there --

18        THE COURT:  They have the list.

19        MR. TEDDER:  You've given them the list.

20        MS. SINGER:  Right.

21        MR. TEDDER:  The tape is in evidence.

22        MS. SINGER:  And if they come back and say

23   they don't have it?

24        MR. TEDDER:  They don't have it.

25        (Pause in the proceedings.)

1          THE COURT:  The definition of knowing is

2     followed by knowingly, and it's indicated that

3     knowingly is an adverb for knowing.  The

4     definition of knowing says:  Possessing

5     knowledge, information, or understanding,

6     clever, shrewd, suggestive of private

7     knowledge, as in a knowing glance, deliberate,

8     conscious, in the American Heritage Dictionary.

9          MR. GROLAND:  Could we hear Black's, your

10     Honor.

11          THE COURT:  I hope the print is a --

12     hopefully the print's a little larger.

13          Knowing, also followed by knowingly as an

14     adverb:  Having or showing awareness or

15     understanding, well informed, as in a knowing

16     waiver of the right to counsel, deliberate,

17     conscious, as in a knowing attempt to commit

18     fraud.

19          MS. SINGER:  I have no objection to either

20     being read, your Honor.

21          MR. GROLAND:  That's fine with us.

22          THE COURT:  To read the word "knowing",

23     the definition of the word "knowing"?

24          MS. SINGER:  From the Black's?

25          THE COURT:  From the Black's Law

1    Dictionary?

2        MR. GROLAND:  That's fine.

3        THE COURT:  Good enough.  I'll do that.

4        MS. SINGER:  There was another word.

5        THE COURT:  Yes, intentional act.

6        In Black's Law Dictionary there is a

7    definition for intentional act, which says an

8    act resulting from the actor's will directed to

9    that end.  An act is intentional when foreseen

10   and desired by the doer, and this foresight and

11   desire resulted in the act through the

12   operation of the will.

13       MS. SINGER:  Can we try Webster's on that

14   one, just to see, only because that sounds a

15   little legalese.  I would like to hear what

16   the --

17       MR. TEDDER:  It sounds pretty clear to me,

18   your Honor.

19       MS. SINGER:  Well, you haven't heard

20   Webster's yet.

21       THE COURT:  Intentional is defined as;

22   done deliberately, intended.

23       MR. GROLAND:  We prefer Black's.

24       MR. TEDDER:  Didn't they specifically ask

25   for intentional act?  It's defined in Black's

1      Law Dictionary.

2              THE COURT:  Ms. Singer?

3              MS. SINGER:  I oppose, but I have a

4      feeling the Court will be reading Black's.

5              THE COURT:  Black's Law Dictionary seems

6      to be applicable and the definitions of both

7      words will be read from Black's Law Dictionary.

8              Now --

9              MR. TEDDER:  Your Honor -- not to

10     interrupt -- we would also like them to receive

11     those definitions in writing as well.  They've

12     got everything else in writing, so if we give

13     these two definitions, they should be allowed

14     to take that with them as well.

15             MS. SINGER:  I'm gonna ask Mr. Tedder to

16     type the two new instructions.

17             MR. TEDDER:  I'll be happy to type them.

18             THE COURT:  Good enough.  Mr. Tedder will

19     type on my JA's computer.  Ms. Singer will type

20     on my computer and we will get all of this

21     typed and printed up as soon as reasonably

22     possible.  If you all will follow me to my

23     office.

24             (Brief recess.)

25             MR. TEDDER:  Your Honor, just in case

2498

1     you're wondering, Mr. Groland told me to go

2     ahead, and so obviously we're ready to proceed.

3          THE COURT:  Good enough.  Thank you for

4     letting me know.

5          MS. SINGER:  Your Honor, before we bring

6     the jury back, I think there was some

7     discussion outside of Mr. Herlihy and not on

8     the record regarding the definition of the one

9     of the two --

10         THE COURT:  Yes, there are two definitions

11    that were typed for the word "knowing."  I'm

12    going to read both of them into the record, and

13    state and defense can indicate to me which one

14    you want to agree on.

15         First definition, the shorter of the two

16    reads:  "Knowing:  Having or showing awareness

17    or understanding, well informed, deliberate,

18    conscious."

19         The second definition.  "Knowing:  Having

20    or showing awareness or understanding, well

21    informed, a knowing waiver of the right to

22    counsel, deliberate, conscious, a knowing

23    attempt to commit fraud."

24         MR. TEDDER:  We're requesting the first

25    one, your Honor, without the examples of

1          waiver.

2               MS. SINGER:  We have no problem with the

3          first one, your Honor.

4               THE COURT:  All right, the shorter one

5          will be read.

6               Now, just to make sure that the record is

7          clear and that we all agree, the second

8          definition that will be read is:  "Intentional

9          act:  An act resulting from the actor's will

10         directed to that end.  An act is intentional

11         when foreseen and desired by the doer, and this

12         foresight and desire resulted in the act

13         through the operation of the will."

14               That's as agreed?

15               MR. TEDDER:  Yes, ma'am.

16               MS. SINGER:  Yes.  I had opposed, your

17         Honor, but since it was ruled on, I am in

18         agreement to the language that was read, even

19         though I oppose the reading of that definition.

20               THE COURT:  Good enough.  The objection is

21         noted and continues, however, having been

22         overruled, this wording is approved as coming

23         from Black's Law Dictionary.

24               And, as agreed, 2.02(a) when there are

25         lesser-included crimes or attempts, the

1    definition reads:  In considering the evidence

2    you should consider the possibility that

3    although the evidence may not convince you that

4    the defendant committed the main crime of which

5    he is accused, there may be evidence that he

6    committed other acts that would constitute a

7    lesser-included crime.  Therefore, if you

8    decide that the main accusation has not been

9    proved beyond a reasonable doubt, you will then

10   next" -- excuse me -- "you will next need to

11   decide if the defendant is guilty of any

12   lesser-included crime.  The lesser-included

13   crimes indicated in the definition of first

14   degree murder are:  Second degree murder, third

15   degree murder, manslaughter, aggravated child

16   abuse, and child abuse."

17        So that is agreed?

18        MR. TEDDER:  Yes, ma'am.

19        MS. SINGER:  Yes, ma'am.

20        THE COURT:  So when the jury comes back

21   in, I will read them their questions

22   sequentially if you'll give me the question

23   form back please, Mr. Clerk.

24        MS. SINGER:  They would have copies to

25   read along with the Court?

1      THE COURT:  Yes.  So these instructions

2  will be provided to them in response to the

3  questions as they have given.

4      So I will ask that the lesser-included

5  instruction be provided first.

6      Then, in regard to the second question as

7  to transcripts I will read the instruction that

8  I read to you earlier:  In regard to the

9  testimony of Dr. Anne Dickison, or any other

10  witness, you must rely on your memory.  No

11  transcript is available.

12      The 911 tape is in evidence and you may

13  review it with the tape recorder.

14      Then I will read to them the definitions

15  of the words knowingly, or in this case,

16  "knowing" and "intentional act".

17      Is that agreed to?

18      MR. TEDDER:  Yes, ma'am.

19      THE COURT:  Now, in addition, at this

20  time, of course, I've already had delivered to

21  them menus for their dinner, and it is quarter

22  till 7:00.  It will be some time before dinner

23  can be served to them.  They have not --

24      MR. BAILIFF:  They haven't come back with

25  anything, your Honor.

1          THE COURT:  I will ask that they give them

2     back right away.

3          I will also give them further instructions

4     in regard to deliberating into the evening.

5     Have arrangements been made if they choose to

6     deliberate and reach a verdict after the 10

7     p.m. lockup of the --

8          MR. BAILIFF:  I don't believe so.  I'll

9     make those arrangements.  I don't think that's

10    been arranged yet.

11         THE COURT:  You'll be able to go get a key

12    so they can get their vehicles?

13         MR. BAILIFF:  I'm not really sure.  I know

14    we checked on it last night, but things got

15    changed.

16         THE COURT:  I need to know so I can give

17    them instructions.  While we're inquiring about

18    that, we had discussed earlier --

19         MR. BAILIFF:  They close at midnight

20    tonight.  She'll check on the key.

21         THE COURT:  Okay.

22         MR. BAILIFF:  She'll call me back.

23         THE COURT:  All right.  Now we had a

24    discussion before we went to my office in

25    regards to whether or not to also advise them

1   that they are to check one box; that is, choose

2   one verdict.

3        MS. SINGER:  I would ask that that be

4   repeated to them.  I'm not sure it was said the

5   first time, to be honest with you.  Mr. Tedder

6   may remember better than I do, but the

7   question, I took it to the literal meaning,

8   which was if we find the highest, do we have to

9   check all the lowest, too, and I'm afraid that

10   if it's read that way, they could be confused,

11   your Honor, with the form itself.

12        MR. TEDDER:  Your Honor, the -- you've

13   already explained that to them.

14        THE COURT:  Yes, I did, in fact.  You want

15   me to repeat it or not?

16        MR. TEDDER:  No, ma'am.

17        THE COURT:  All right.  I will not.

18        All right.  Hopefully, you'll have an

19   answer before we're complete.  So have the jury

20   come back in.

21        MR. BAILIFF:  Yes, your Honor.

22        MS. SINGER:  Your Honor, I just want --

23        THE COURT:  Wait just a second.

24        MS. SINGER:  I just want to lodge an

25   objection to not repeating that.  It is not a

 1    standard instruction and if there is a verdict

 2    rendered and more than one box is checked, this

 3    case will be subject to mistrial, and we will

 4    have to try this entire case over.  There is

 5    not a standard instruction.  There is an

 6    instruction that this Court reviewed by going

 7    over the verdict form, and I would lodge an

 8    objection to not making a statement that only

 9    one box get checked.  It's not on the verdict

10    form, and it's not in the standard instruction

11    for them to go back to read.

12         THE COURT:  Are you convinced that giving

13    them this instruction again, over the objection

14    of defense counsel, will not result in an

15    appeal, an appealable issue?

16         MS. SINGER:  If the instruction is only

17    one, if the instruction is if there's any

18    confusion about how many boxes to check, you

19    only check one instruction -- one box.  If

20    that's the instruction and not reading anything

21    else, or going over the entire verdict form

22    again, I do not believe that that's going to be

23    an appealable issue.  Certainly if they check

24    more than one box we will be trying this case

25    again.

1      And there is nothing written in the

2    instructions and that instruction was given

3    verbally.

4         THE COURT:  Okay.  Mr. Tedder, is there

5    any legal argument you want to make as to why I

6    should not give them that instruction that they

7    are to check only one box?

8         MR. TEDDER:  Well, I mean, if you want,

9    that's fine.  You did, you said that yourself,

10   that's true, and -- but in the verdict form

11   2.08 it says they should check -- whether to

12   check -- if you return a verdict of guilty, it

13   should be for the highest offense which has

14   been proven beyond a reasonable doubt.  I think

15   this jury has enough common sense to know.

16        THE COURT:  They may, but the state is

17   specifically requesting that I give it over

18   your objection.  Therefore, if you have any

19   legal argument to make as to why I should not

20   give it over your objection, make it.

21        MR. TEDDER:  What exactly is your Honor

22   proposing to say to them?

23        THE COURT:  You are to check only one box

24   on the verdict form.

25        MR. TEDDER:  I would ask that you add to

1      that, if you're gonna give it, that you add to

2      that this must be your unanimous decision.

3             THE COURT:  All right.  This would be what

4      I would advise them.

5             Your decision must be unanimous and you

6      are to check only one box on the verdict form.

7      State have any objection to that?

8             MS. SINGER:  I have an objection to the

9      issue of this verdict must be unanimous,

10     because that has been read, and that has been

11     provided to them in writing, but I understand

12     the Court's direction here and I will be fine

13     with any decision the Court makes.

14            THE COURT:  Well then, since you object

15     and you're fine with it, I need something more

16     clear than that.

17            MS. SINGER:  I object.

18            THE COURT:  Okay.  Good enough.

19            Mr. Tedder?

20            MR. TEDDER:  I accept that.  I agree with

21     that, your Honor, that portion of the

22     instruction.

23            THE COURT:  Okay.  Good enough.  Go ahead

24     and bring the jury in.

25            (Before the jury:)

1          THE COURT:  I need the assistance of the

2     clerks, please, if you would both assist me for

3     just one moment.  Would you hand a copy of

4     these instructions to each of the jurors and

5     would you hand a copy to each attorney, please?

6          Ladies and gentlemen, as is required, I

7     have received your written questions and we

8     have reviewed it and come to an agreement as to

9     how you can be further instructed.

10          The first written question is:  Are all of

11     the indictments in a hierarchy or must we find

12     guilt for lesser-included charges to find guilt

13     in a higher level charge?

14          We have agreed that there is an additional

15     instruction that has been provided for you in

16     writing, and, of course, as before, I'm gonna

17     read it to you and you may keep that written

18     instruction.

19          The instruction is in regard to when there

20     are lesser-included crimes or attempts.

21          In considering the evidence you should

22     consider the possibility that although the

23     evidence may not convince you that the

24     defendant committed the main crime of which he

25     is accused, there may be evidence that he

1    committed other acts that would constitute a

2    lesser-included crime.  Therefore, if you

3    decide that the main accusation has not been

4    proved beyond a reasonable doubt, you will next

5    need to decide if the defendant is guilty of

6    any lesser-included crime.  The lesser crimes

7    indicated in the definition of first degree

8    murder are:  Second degree murder, third degree

9    murder, manslaughter, aggravated child abuse,

10   and child abuse.

11        Your decision must be unanimous and you

12   are to check only one box on the verdict form.

13        Your second question was:  May we also

14   have copies of Dr. Anne Dickison's transcript

15   and the 911 tape?

16        In response to that question, in regard to

17   the testimony of Dr. Anne Dickison or any other

18   witness, you must rely on your memory.  No

19   transcript is available.

20        The 911 tape is in evidence and you may

21   review that with the tape recorder.

22        The third question was in regards to

23   definitions and I need the clerk's assistance

24   again.  Would you give copies to each attorney

25   and would you give copies of each instruction

1           to all members of the jury?

2                THE CLERK:  Yes, your Honor.  You have

3           two.

4                THE COURT:  Everyone all right?

5                The third question was:  Regarding

6           aggravated child abuse, we need clarification

7           of two terms.  The first term is knowingly.  I

8           provided each of you with a definition of

9           knowing.  Each of you have it.  You will be

10          able to keep this written definition.

11               "Having or showing awareness or

12          understanding, well informed, deliberate

13          conscious."

14               The second definition that was requested

15          was for intentional act.

16               "An act resulting from the actor's will

17          directed to that end.  An act is intentional

18          when foreseen and desired by the doer, and this

19          foresight and desire resulted in the act

20          through the operation of the will."

21               Now, you'll be allowed to take these

22          definitions and further instructions with you,

23          and while we're in this break, as you know,

24          we've already given you the menus.  I don't

25          know if you've had a chance to finish those

1    yet.  Has everyone finished the menus?

2        MR. MANNING:  We'll have to look them over

3    and we'll have them for the bailiff in a

4    second.

5        THE COURT:  Good enough.  We'll give them

6    right back to the bailiff and we'll go ahead

7    and order dinner for you.

8        The information regarding the cars is

9    what?

10        MR. BAILIFF:  It's until 12 o'clock.  I

11    don't have access to the cars after

12    12:00 o'clock.

13        THE COURT:  All right.  Now, I suspect if

14    you continue deliberations as late as

15    11:00 p.m., then you will probably want to

16    retire to the hotel that we have available to

17    you and come back in the morning.  You are

18    entitled to deliberate all night if you want

19    to, although I wouldn't recommend that to you.

20    But, it is totally within your control, and I

21    would urge you to be considerate of each other

22    in making that joint decision.

23        However, your cars are in the parking

24    garage.  If you choose to recess, go into

25    sequestration overnight in the hotel, you will

1    be transported by law enforcement.  If any of

2    you think that even might be a possibility and

3    you would like to call family now or friends

4    and have some overnight bag brought to you,

5    I'll let you make those calls right now, just

6    in case.  You don't have to.  You can wait

7    until 10:00 or 11 o'clock if you choose to, and

8    then see how the deliberations seem to be

9    going.  But I want to give you that option in

10   case that might be more convenient for some

11   people and we can have that delivered here to

12   the courthouse, and be available to you just in

13   case.

14       At about 10:30, if I don't hear from you

15   earlier than that, I'll ask you to come back

16   into the courtroom so that you can give me

17   further instructions.  If, in fact, you decide

18   to continue deliberating, but you believe you

19   will reach a verdict tonight, then I want to

20   make sure that your cars are moved, so that you

21   don't end up being released here at 12:00 or

22   1 o'clock in the morning and have your cars

23   locked up.

24       Now in the unlikely event that that were

25   to happen, we could have all of you driven home

certainly.  So we still have a backup plan for

that, but we would try to accommodate every

foreseeable consequence.  So that's why I would

ask you to come back in at 10:30 so that we can

make those arrangements and we'll move the cars

if that is appropriate.  And at that point you

may well be in a position where you're ready to

decide to go ahead and sequester yourselves

overnight and then you will tell us what time

you want to come back in the morning to

continue.  And, obviously, you'll be fed

breakfast before you come back in the morning.

Now, with that, if there's anyone who

would like, as I said, to go ahead and

call -- Well, I'll let you get the menus first,

so that we can go ahead and order dinner, and

you won't be delayed too much longer before you

get something to eat.  And while that's coming

I'll let anyone who wants to go ahead and call

family and have something brought down here,

I'll ask that you have them come to the circle

drive that's on the south end of the

courthouse.  There's a little clerk's mailbox

there, but I'll make sure that someone is

available to meet them and pick up a suitcase

1    if they're coming.

2        All right.  So if you'll retire back to

3    the jury room and as soon as you're ready with

4    your menus, ring the bell, and at that time if

5    anybody needs to call their family you can come

6    out and do that.

7        A JUROR:  Can we ask a quick question?  If

8    we have an overnight bag in our -- here in the

9    lot, will we just give our, hand our keys over

10   to get someone to get those for us.

11       THE COURT:  We can do that or we can have

12   you escorted to pick it up and this would be a

13   reasonable time possibly to do that, or we

14   could wait until 10:30 really to do that,

15   because we'll have easy access to the lot at

16   that next recess that we'll take.

17       All right.  Thank you.

18       (Jury is out of the hearing of the court.)

19       THE COURT:  All right.  We'll be in recess

20   until we have something further from the jury,

21   or until 10:30.  I'll ask that the attorneys

22   and Mr. Herlihy be back no later than 10:30,

23   even if we don't have word from the jury by

24   then.

25       (Recess pending jury verdict.)

1        MR. GROLAND:  Do we have Mr. Herlihy?

2        MR. BAILIFF:  He's supposed to be on his

3   way up.

4        THE COURT:  All right.  Anything we need

5   to put on the record before we ask the jury to

6   come in?

7        MR. GROLAND:  No, ma'am.

8        THE COURT:  Any particular questions that

9   you want me to pose to them in regard to the

10  continuing deliberations?

11       Obviously, as I said earlier, I'm gonna

12  ask them if they would like to recess and be

13  sequestered for the remainder of the night.

14  And if they choose not to do that, of course,

15  we'll make some inquiry about moving vehicles,

16  et cetera, et cetera.

17       Anything else that we need to address that

18  you all know of?

19       Anything about what time we're gonna

20  reconvene in the morning that you want to

21  address with the Court before I ask them?  It

22  would be my intention to give them the option

23  of starting at 8:00, 8:30, or 9 o'clock.

24       MR. TEDDER:  If they want to indicate they

25  want to recess for the evening?

```
 1            THE COURT:  Correct.

 2            MR. TEDDER:  If they indicate they don't

 3     want to recess in the evening, you're not going

 4     to inquire about how far, how close they may or

 5     may not be with the verdict?

 6            THE COURT:  No.

 7            MR. TEDDER:  Of course not.  Okay.

 8            We'll just let them go, if they want to,

 9     and see what happens, your Honor?

10            THE COURT:  If we let them go?

11            MR. TEDDER:  If we let them go, if they

12     want to continue to deliberate, we're just

13     gonna let them go until they tell us they want

14     to stop or whatever?

15            THE COURT:  Yes.

16            MR. TEDDER:  That's fine with me.

17            THE COURT:  Ask them to come in.

18            They've indicated they want a few minutes.

19     If you'll just let me know.  I'll be in Judge

20     Monico's chambers.  I'll ask you all to remain,

21     because I believe the announcement that when

22     they say a couple minutes, they really mean a

23     couple minutes.

24            (Recess.)

25            THE COURT:  Go ahead and bring them in.
```

1    (Before the jury:)

2         THE COURT:  Ladies and gentlemen, I know

3    you've been working very hard on this case and

4    I appreciate that.

5         It is time that I ask a little bit,

6    without in any way invading your province of

7    the deliberations, if we should make

8    accommodations for you.  In reality, you can

9    leave the courthouse and go to the hotel that

10   we have arranged at any point of the night and

11   that can be handled.

12        But, in regard to the vehicles, we do need

13   to make arrangements if there would be a need

14   to have access to the vehicles.  So it's only

15   in that regard that I ask if you would like to

16   be sequestered at this time, or near this time,

17   if you are ready to make an announcement as to

18   that, whether or not you need to discuss that

19   particularly, or whether or not you would like

20   to continue your deliberations longer into the

21   night tonight.

22        So, do you know whether or not you are

23   ready to answer that question as a jury?

24        THE FOREPERSON:  Your Honor, we have

25   discussed it in the jury room.  The main

1    concern the jurors that have their vehicles in

2    the garage would like to get their clothes out,

3    some of them, have them brought to the

4    courtroom.  We would like to get those out.  We

5    also would like to deliberate a little longer,

6    if we could, and I don't have a time line on

7    that for you, ma'am, but we would like -- we

8    discussed this before we came out.

9         Some people also asked can they call their

10   husbands and whatever and say, definitely their

11   wives, whichever it may be, and say we're going

12   to be sequestered tonight, because we --

13        THE COURT:  Yes, you can do that.  If you

14   would like to deliberate a little longer,

15   thinking that there is some possibility of

16   reaching a verdict tonight, then I would want

17   to make sure that we went ahead and moved the

18   vehicles now so that you would have access to

19   them.  And we could move them, under escort,

20   you could move them from the garage to the

21   parking here at the courthouse, behind the

22   courthouse, that is semi-secure.  There's a

23   gate on it.

24        Yes, sir?

25        THE FOREPERSON:  Your Honor, we do not

1       think that we will be able to reach a verdict.

2            THE COURT:  Okay.  Then that's fine.

3       Then, in the event that you did, what would

4       happen is you might have to be driven home and

5       then we will get your cars tomorrow.  So,

6       because if we're after midnight we wouldn't be

7       able to.

8            THE FOREPERSON:  Yes, we understand.

9            THE COURT:  But that's fine.  We'll go

10      ahead and make arrangements to let you be

11      escorted now, if you choose to be -- I think

12      that would be best since we're already taking a

13      break -- to get any clothes you have in the

14      vehicles, just in case.  Then we'll leave them

15      in the parking garage because they'll be secure

16      there overnight.

17           And then at the point that you request

18      that you be transported to a hotel.  Of course,

19      the security will be able to do that for you.

20           The only other question would be at what

21      point do you want to reconvene here at the

22      courthouse?  Some reasonable options would

23      include -- of course, you'll be given breakfast

24      before you come back -- but you could come back

25      to the courthouse as early as 8 o'clock, come

1    back at 8:30, begin again at 9 o'clock.

2            THE FOREPERSON:  Could we have a moment?

3            THE COURT:  Certainly.

4            THE FOREPERSON:  We did not discuss that,

5    your Honor.

6            THE COURT:  Yes.  And you don't have to

7    tell me that.  I want to alert you to that so

8    that when you come back again you can let us

9    know what time you'll be ready to be

10   transported back, so that everybody can be

11   present and ready to continue what support we

12   can offer you.

13           So at this time I'll ask security -- oh,

14   yes, and in case of sequestration, which we're

15   anticipating at this point, security does have

16   a questionnaire for each of you to fill out in

17   case of medical emergency or something, to give

18   them contact information.  So if you'll fill

19   out that, and I'll ask that security handle

20   escorting those of you who have property in

21   your vehicles, and supervising those of you who

22   may need to make calls to family to let them

23   know that they may not see you tonight.  Okay.

24   Good enough.

25           Thank you all very much and we'll be on

1    standby.

2         MR. BAILIFF:  All right.  Court will be in

3    recess.

4         THE COURT:  Now, before we actually send

5    you back, let me say one more thing.  Although

6    we will be available to you, I am not going to

7    reconvene the courtroom unless requested by

8    state or defense when you choose to leave,

9    because, in reality, you'll be in continuing

10   deliberations and you'll be under security.

11   And then you'll be taken, basically the same,

12   it will be a longer recess of a different

13   nature, but from a courtroom perspective it's

14   the same kind of arrangements.

15        Does the state have any objection to that?

16        MS. SINGER:  No.

17        THE COURT:  Does defense have any

18   objection to that?

19        MR. GROLAND:  Just one second, your Honor.

20   Your Honor, can I just approach one second?

21        THE COURT:  Yes.

22        MR. GROLAND:  Just quickly.

23        (Sidebar conference:)

24        MR. GROLAND:  You have advised them.

25        MS. SINGER:  Not to read any newspapers,

1       watch any news, have any contact with anyone

2       who may have information about the case, or

3       otherwise, do any independent research while

4       there's --

5              MR. GROLAND:  We're on the same page about

6       that.

7              (Sidebar conference concluded.)

8              THE COURT:  And I have been reminded to

9       give you the same instruction again.  Since

10      we're not gonna come back into the courtroom,

11      of course, it's appropriate that I give it to

12      you at this time.  And that is, during any

13      recess, you must not discuss the case, or

14      attempt any form of deliberations.  Deliberate

15      only when you're altogether here at the

16      courthouse, so no discussion or comments while

17      you're going back and forth, no comments, of

18      course, to family and friends.

19             Arrangements have been made to basically

20      cut off contact at the hotel, however, in case

21      there's any possibility of newspaper, or T.V.

22      access, do not watch it, do not read it until

23      your deliberations are complete.

24             Now, with those repeated instructions,

25      thank you very much.  You may continue your

1    deliberations and security will assist you

2    before those deliberations with escorting to

3    your vehicles.

4         And court will be in recess.  I am going

5    to ask that state and defense, of course, and

6    the court reporter, and the clerk, remain on

7    standby until such time as we are alerted that

8    the jury has been sequestered, in case there is

9    any need to reconvene in the courtroom.

10        However, you may leave the courthouse.

11   That means you might take 15 minutes to get

12   back, but anybody who lives far away from the

13   courthouse has to stay here.

14        Thank you very much.

15        MR. BAILIFF:  Court will be in recess.

16        (Recess.)

17        MR. BAILIFF:  The Judge is not gonna

18   convene court.  We're just gonna bring the jury

19   in at 9:30, in a continuation of the

20   deliberations.

21        (Whereupon, the trial was recessed until

22   the following day, September 25, 2002, at 9:30

23   a.m.)

24                 * * * * *

25