# EXHIBIT

# X

*ДО2-1-1781.*

*F*

# In the District Court of Appeal
## FIRST DISTRICT
## of Florida

BRIAN PATRICK HERLIHY  }
          Appellant,  }

}

       CASE NUMBER   2000-2753-CFA

}

}

       APPEAL NUMBER 1D02-4788

v.  }

}

       VOLUME XXIV

}

}

STATE OF FLORIDA  }
           Appellee,  }

Docket PH
05.14.2003
ATTORNEY
General

2003 MAY 12 PH 2:40
DISTRICT APPEALS
TALLAHASSEE

## TRANSCRIPT
## RECORD

### HONORABLE MARTHA ANN LOTT
ACTING TRIAL JUDGE

## APPEAL FROM THE CIRCUIT COURT
## 8th JUDICIAL CIRCUIT FOR
## ALACHUA COUNTY, FLORIDA

**FOR APPELLANT**
HONORABLE C. RICHARD PARKER
PUBLIC DEFENDER
POST OFFICE BOX 2820
GAINESVILLE, FLORIDA 32602

**FOR APPELLEE**
HONORABLE CHARLIE CRIST
ATTORNEY GENERAL'S OFFICE
THE CAPITOL
DEPARTMENT OF LEGAL AFFAIRS
CRIMINAL APPEAL SECTION
TALLAHASSEE, FLORIDA 32399-1050

202-1-17814
F

IN THE CIRCUIT COURT OF THE
EIGHTH JUDICIAL CIRCUIT, IN AND
FOR ALACHUA COUNTY, FLORIDA

STATE OF FLORIDA,          CASE NO.:   01-2000-CF-002753-A

          Plaintiff,

VS.                        *Volume XXIV*

                           / D02-4788

BRIAN HERLIHY,

          Defendant.
_____/

Docket CH
05-14-2003

PROCEEDING:       **Motion for Supersedeas Bond**

BEFORE:           The Honorable
                  Martha Ann Lott

DATE:             November 22, 2002

TIME:             9:00 a.m.

PLACE:            Alachua County Courthouse
                  Gainesville, Florida

REPORTED BY:      Laurie Ann Chaffin,
                  Registered Professional Reporter
                  Eighth Judicial Circuit Level III
                  Realtime Reporter

APPEARANCES:

**JEANNE SINGER, ESQUIRE**          GORDON H. GROLAND, ESQUIRE
Assistant State Attorney            Conflict Attorney
Post Office Box 1437                Post Office Box 2848
Gainesville, Florida 32602          Gainesville, Florida 32602
Appearing for the State             Appearing for the Defendant

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002535        0002268

1     *(Whereupon the following proceedings commencing at*
2     *9:15 a.m. were held, to-wit:)*
3            **THE COURT:**  Mr. Groland?
4            **MR. GROLAND:**  Yes, ma'am.
5            **THE COURT:**  Go ahead, Mr. Groland.  This is
6     Mr. Herlihy's case.
7            **MR. GROLAND:**  Your Honor, we have filed our motion
8     for a supersedeas bond in this case.
9            Without going into all the detail that is set
10    forth in the motion, we basically stand on the motion,
11    but I'd like to point out a couple of things.
12           Brian Herlihy is not barred by virtue of a prior
13    felony conviction of any kind.  He is not barred by the
14    nature of the offense that the jury found him guilty
15    for, so on its face he is not ineligible for a
16    supersedeas appellate bond in this case.
17           I've cited some case law and I've given copies of
18    the case law to the State.  The two cases that -- may I
19    approach?
20           **THE COURT:**  Yes.
21           **MR. GROLAND:**  The two cases that I just want to
22    furnish the Court, one is Younghans and Huie.  Our
23    position here is that the issues to be raised on appeal
24    are fairly debatable.  The appeal will be pursued in
25    good faith.  The grounds are not frivolous and we have

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002536        0002269

1    set forth in our motion a number of areas that will be

2    addressed on appeal that relate to both pretrial

3    motions that were denied as well as rulings that were

4    made by the trial court during the course of the

5    two-week trial.

6        And I'm not going to recite all of them, but I

7    will just say that it includes everything from allowing

8    certain experts to testify legally beyond their field

9    of expertise all the way to the issue that we spent a

10   lot of time on, that is whether or not the defense

11   actually opened the door so as to allow certain other

12   inflammatory, prejudicial testimony to come in and be

13   heard and considered by the jury and everything in

14   between, including and most specifically our motion to

15   suppress Brian Herlihy's statements, which were a

16   two-and-a-half to three-hour interrogation by the

17   Gainesville Police Department on August 2nd of 2000

18   when indeed, based upon the testimony, he was the

19   absolute focus of a criminal investigation that then

20   and there began.

21       He was never told during the interrogation that he

22   was free to leave, and in fact there was testimony

23   elicited from witnesses that while at the hospital,

24   just as the criminal investigation begun, he was

25   actually told by a uniformed officer from the

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002537  0002270

1    Gainesville Police Department that that officer's
2    supervisor told him he couldn't leave the area.  So he
3    was constructively in custody being detained.  He was a
4    suspect.
5         Nevertheless, he was taken to the Gainesville
6    Police Department by police car and interrogated on and
7    off by several detectives for a two-and-a-half to
8    three-hour period.  We filed a motion to suppress all
9    those statements and the Court denied that and I think
10   that would be one of the more significant issues on
11   appeal that will be addressed.
12        Aside from that, I think the Court has got to look
13   at the situation in terms of whether or not Brian
14   Herlihy is otherwise eligible to have a bond set in
15   this case in terms of his background.  I remind the
16   Court that he has only several misdemeanor convictions,
17   most of which were traffic related, and convictions for
18   no valid driver's license or driving with a suspended
19   driver's license.
20        I would be the first to admit he has had a lot of
21   activity in terms of being accused of various things
22   involving situations with ex-girlfriends and
23   injunctions and -- all of which were either dismissed
24   for one reason or another or nol prossed by the State,
25   but none of which actually resulted in a conviction,

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002538        000227

1   except I think there was one disorderly conduct

2   conviction for a disorderly conduct charge that he pled

3   to out of an incident involving a situation down in

4   South Florida.

5       There is no indication in any of his Florida cases

6   that he has ever failed to appear for court.  And in

7   fact on this case, when he was out on bond two times,

8   he came to every court appearance as required, so I

9   don't think there's any indication in the record that

10  he would flee.

11      Now, insofar as the Pennsylvania matter, which is

12  addressed --

13      MS. SINGER:  You have certified records from

14  Pennsylvania on the two failures to appear in that

15  case.

16      MR. GROLAND:  Let me finish.  That is addressed in

17  the PSI.  There's nothing under oath from Mr. Katz

18  about his description of events in great detail in the

19  PSI report.

20      Now, my examination of the records that the State

21  has supplied to the Court and have given me a copy of

22  just this week indicate his concerns.

23      MS. SINGER:  These are the certified originals,

24  Your Honor.

25      THE COURT:  That's fine.  Let Mr. Groland finish

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002539

0002272

1   and I know you have case law and argument to present.

2   Go ahead, Mr. Groland.

3   **MR. GROLAND:**  Thank you.  This concerns what

4   Mr. Katz indicates in the PSI as a capias outstanding

5   from 1996 from Pennsylvania for an incident -- a

6   two-day incident.  One thing happened on one day,

7   another thing happened on another day involving a

8   girlfriend there.

9   I will tell the Court that we have investigated

10   this and we have been told that in fact there were

11   cross-complaints filed by both Mr. Herlihy and the girl

12   in question.

13   That's not indicated in the PSI.  What is also not

14   indicated in the PSI, nor is it indicated in any of the

15   records that the State has just supplied to the Court,

16   is that Mr. Herlihy had any knowledge whatsoever of the

17   preliminary hearing that he is alleged to have not

18   appeared for in April of '96 following the incident

19   some seven months earlier.

20   There's no indication that he had notice of that

21   hearing, that he was ever officially noticed, and I

22   would like to put Mr. Herlihy under oath to tell the

23   Court, A, he wasn't noticed, and, B, he was never even

24   arrested on that charge.

25   Instead the police investigated it.  They talked

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-3730

0002540          0002273

1   to him, and I think the PSI actually indicates that he

2   was talked to by phone by the police in Pennsylvania,

3   told to come down to the police station.  When he came

4   down to the police station, they told him about the

5   charges that they were investigating and they did not

6   arrest him at that time.

7       Then seven months later, it is noticed for

8   preliminary hearing and he doesn't appear.  There's an

9   indication in the records that his bond was forfeited,

10  which is inconsistent with the other -- and I'm saying

11  this because I'm expecting the State is going to point

12  it out.  It's inconsistent with the other records that

13  we have observed and it's also inconsistent with what

14  Mr. Herlihy is about to tell the Court, that he was

15  never arrested and he fully understands the

16  ramifications of coming before the Court now, being put

17  under oath and lying about the situation.

18      So I'd like to ask him just those two questions

19  and I would ask the Court to put him under oath.

20      **THE COURT:**  Raise your right hand.

21      **THE DEFENDANT:**  Yes, ma'am.

22              **BRIAN HERLIHY,**

23  called as a witness, having been first duly sworn, was

24  examined and testified on his oath as follows:

25

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 334-5273

0002541                    0002274

1          ### DIRECT EXAMINATION

2     **BY MR. GROLAND:**

3          Q     Okay.  Brian, you know what I'm talking about to

4     the judge about the incident in 1995 involving a girl by the

5     name of Chris Chicarella *(phonetic)*?

6          A     I believe that's the last name.  I'm very aware of

7     it, yes, sir.

8          Q     Okay.  Did you talk to the police?

9          A     They basically called my aunt's house and I did

10    speak to the police.

11         Q     Okay.  Did you go down to the police department?

12         A     With my aunt and uncle, yes.

13         Q     Okay.  Were you arrested that day?

14         A     Nope.  They took a statement from me.

15         Q     Okay.  Were you ever arrested in connection -- you

16    examined the PSI?

17         A     Yes, sir.

18         Q     All right.  Those cases alluded to in the PSI,

19    were you ever at any time arrested for those offenses that

20    they described in the presentence report?

21         A     No, sir.  In fact I went back home --

22         Q     Home is where?

23         A     South Florida -- six months later and I never

24    heard anything out of it.

25         Q     Okay.  Were you ever notified by any person or any

1   official notice in the mail or by telephone or any way that

2   in fact there was a preliminary hearing set in that case in

3   April of 1996?

4       A    No.  In fact, my aunt works for a constable for

5   the local area and we had advised him of what had happened

6   and told him about the reciprocal charges and told him I had

7   to go back to South Florida because of my neck injury and

8   whatnot and he was going to stay on it if we heard anything.

9   We never heard anything about it from the constable.

10          MR. GROLAND:  All right.

11          MS. SINGER:  I have one question.

12          THE COURT:  Yes, go ahead.

13                    CROSS-EXAMINATION

14  BY MS. SINGER:

15      Q    Mr. Herlihy, when you went to the police station

16  and talked to them, did you put up a bond?

17      A    No.

18      Q    You did not put up a bond of any type?

19      A    No, my aunt and uncle -- ma'am, no, I did not put

20  up a bond.

21      Q    Did you hire a bondsman to put up a bond for you?

22      A    Ma'am, I did not put up a bond, so I did not hire

23  a bondsman.

24      Q    Did your aunt and uncle put up a bond for you?

25      A    There was no bond.  I just talked to the police

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002543

0002276

1    with my aunt and uncle.  There was no bondsman.

2        Q    All right.  The record reflects that the bond was

3    forfeited for your failure to appear, so who would have put

4    up a bond for you then?

5        A    Ma'am, there was never a bond issued, so no one

6    put up a bond.  My aunt and uncle went down there with me to

7    make a statement and that was it.

8            **MS. SINGER:**  No further questions.

9            **THE COURT:**  All right.  Mr. Groland, anything

10           else?

11           **MR. GROLAND:**  Your Honor, as I indicated, there is

12           a number of references in the PSI report to incidents

13           involving past relationships.  I would point out

14           nothing in terms of his dangerousness to the community.

15           There's nothing indicating any weapon used, there's

16           nothing in there indicating any injury to any person,

17           except there was an incident in Florida in the 1990s

18           where Mr. Herlihy and some other gentleman got into

19           some fisticuffs.  I think the PSI indicated there were

20           minor injuries to both parties, Mr. Herlihy and the

21           other person, and the case was ultimately nol prossed

22           after a PTI referral, which apparently, from what I

23           glean, he completed successfully.

24               I don't think there is any indication that he is a

25           danger to the community if he were to be left out on

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002544        0002277

1  appeal and the Huie case, which I just furnished Your

2  Honor, addresses the issue of dangerousness.

3      And in that case, the person who was seeking a

4  supersedeas bond was actually convicted of an assault.

5  I can't recall if it was an armed robbery or an

6  aggravated assault with a firearm.  And the Court

7  indicated -- in denying the motion for supersedeas

8  bond, the trial court indicated in denying the motion

9  for supersedeas bond that, just by virtue of the nature

10  of the conviction, one could assume from that that that

11  person was dangerous and, you know, presented a clear

12  and present danger to the community.

13      But the appellate court pointed out, well, if that

14  were the case, anybody convicted of any kind of an

15  offense involving a gun or a firearm, you could make

16  that argument.  That just was unavailing and that was

17  pointed out by the appellate court.

18      So, in short and to sum up, I think we're not

19  disqualified.  We are qualified.  That this Court knows

20  full well after sitting with all of us for two weeks

21  there are a number of very, very legitimate issues that

22  will be pursued in this case on appeal.

23      It was a very, very involved case, a very

24  complicated case, there was a lot of expert testimony

25  and it will be an appeal that will be rigorously

1   pursued and we would ask the Court to allow a

2   supersedeas bond in the case.

3       We would point out that when he was charged with

4   first degree murder, the bond was set at $50,000.   He

5   was actually in violation of bond conditions and the

6   Court revoked the bond and then reset it at $50,000.

7       Then he was involved in an incident down in Miami

8   where he got into another situation with a girlfriend.

9   There was an injunction and he was alleged to have

10  violated that injunction by calling her after the

11  injunction was in place and asking for his clothing to

12  be returned.   That was in violation of the court order.

13      They charged him with a felony violation of

14  injunction.   He went to trial on that, and while that

15  case was pending, this Court -- I think it was Judge

16  Turner because Your Honor was not available -- this

17  Court increased his bond to one million dollars and

18  he's since been in jail and unable to post that one

19  million-dollar bond.

20      So given the fact that there was a fifty

21  thousand-dollar bond set when he was charged with first

22  degree murder, he is now convicted of manslaughter by

23  culpable negligence, an act that says it was an

24  accident of sorts, although criminal in nature, I would

25  ask the Court to allow a supersedeas bond to be set in

1    this case.  Thank you.

2         **THE COURT:**  Ms. Singer?

3         **MS. SINGER:**  Briefly, Your Honor.  Additional bail

4    after conviction under the Younghans case, which is the

5    case cited by the defendant, is not a matter of right,

6    but rests within the sole discretion of this trial

7    court.  And Younghans defines the factors that the

8    Court is to consider in setting a bond if the Court

9    decides to set any bond at all.

10        Obviously the purpose of the bond would be to

11   secure his attendance and also to protect the

12   community, as with any bond set at pretrial.

13        The Court then will look at the same factors the

14   Court looks at in any other case.  If the Court decides

15   that bond is appropriate, and of course we're arguing

16   that bond is not appropriate in this case, and we want

17   to list the factors and the reasons why bond is not

18   appropriate and that it's within the discretion of the

19   Court not to bring a bond in this case.

20        First, the Court under Younghans -- the Younghans

21   Court says the Court can consider the severity of the

22   punishment imposed and the defendant's position at

23   sentencing.

24        As the Court may remember in sentencing that

25   occurred I believe approximately two weeks ago Friday,

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

00002547      0002280

1  today, that the defendant at sentencing said, "I

2  couldn't take a deal for something I didn't do."

3      At that time the Court sentenced Mr. Herlihy to

4  the maximum period of incarceration under the law,

5  which is fifteen years Department of Corrections.

6      The Court can consider the severity of the

7  punishment imposed and the position of the defendant.

8  The defendant is telling us that he continues to

9  maintain that he didn't do this, he didn't deserve the

10  sentence, he's not guilty and we have imposed the most

11  severe sentence, so he has reasons not to return to

12  Court if his appeal is denied.

13      Secondly, the Court is to consider, or is

14  permitted to consider attachments to the community.

15  There are no attachments whatsoever to this community,

16  Alachua County.

17      The Court has reviewed at length a presentence

18  investigation which outlines the background of the

19  defendant, including his residence history in Dade and

20  Broward Counties and his criminal history in both of

21  those counties, along with his residence and history in

22  Allegheny, Pennsylvania.

23      And I apologize to the Court for interrupting

24  Mr. Groland, but I didn't know if the Court actually

25  got the documents in the court file that were being

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

000228

0002548

1    referred to.  And those are actually the

2    self-authenticating documents that we received from the

3    Allegheny court reflecting the warrants for failure to

4    appear on two separate cases on two separate days, Your

5    Honor.

6         And I don't know if the Court needs me to put that

7    on the record, but they were two separate dates he was

8    to appear.  In one case he was scheduled to appear on

9    April 24th of 1996, and in the separate case, he was

10   scheduled to appear on April 17th, 1996.  So he had two

11   separate occasions where he was required to be in

12   court.  On both occasions he did not appear in court.

13        **THE COURT:**  Those were both in Pennsylvania?

14        **MS. SINGER:**  They were in Pennsylvania, Allegheny

15   County, which is actually the City of Pittsburgh.

16        **THE COURT:**  Go ahead.

17        **MS. SINGER:**  Thirdly, Your Honor, the Court can

18   take into consideration in determining the attachments

19   to community, the fact that the Court had considered

20   these attachments and his reliability in returning to

21   court when the Court considered bond pretrial when it's

22   presumed that the defendant is innocent and all

23   presumptions are in favor of the defendant.  Now, of

24   course, the presumptions have shifted to the defendant

25   being guilty and having sentence imposed.

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273
0002549          0002282

1        But before that, when Mr. Herlihy -- and all of

2    this is in the court file.  And there were numerous

3    bond hearings and I think the Court sat on several of

4    them and many documents have been filed.  If the Court

5    needs to refer to the documents, I can advise the Court

6    where they are in the court file.

7        But originally, when bond was set at $50,000,

8    Mr. Herlihy was arrested for stalking and disorderly

9    conduct.  He was released on bail down in Pembroke

10   Pines and our bond was still outstanding.  There was no

11   motion to revoke bond at that time.

12       He again harassed the same person and he was

13   arrested for aggravated stalking and placed in jail and

14   we filed a motion to revoke bond at that time.  A

15   capias was issued and a fifty thousand-dollar bond was

16   again imposed.  And he bonded out on that bond and he

17   was arrested again in Dade County, and at that time

18   Judge Turner heard the motion for the million-dollar

19   bond.  So he had had numerous opportunities to follow

20   the rules under his pretrial bond and obviously was

21   unable to do so.

22       I think it's also important to note that during

23   the course of his release on bond, back on

24   October 13th, 2001 when bond was originally set, the

25   defendant was ordered to have no contact with the

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

00002550            0002283

1    victim's family or extended family, he must reside in

2    Broward County with his parents at the address in the

3    court file and he was not to leave Broward County

4    without permission from the Court except to travel to

5    Gainesville, and his sole purpose of traveling to

6    Gainesville was to meet with his attorneys or make

7    court appearances in connection with the case.

8         It was discovered at motion to modify those bond

9    conditions that was filed by Mr. Groland on behalf

10   Mr. Herlihy on December 27th, year 2000 because

11   Mr. Herlihy did not want to live with his parents

12   anymore and Judge Chance said, "No, you must reside

13   with your parents."

14        It was then later discovered that in fact he was

15   not getting along with his dad.  This testimony was

16   offered under oath to this Court in April of 2002.  And

17   I don't know if the Court recalls this particular

18   hearing, but Mrs. Herlihy testified that her husband

19   and her son were not getting along, so they permitted

20   him to leave the residence and live with a girlfriend,

21   the same one that he later batters and stalks, and so

22   those conditions were not followed.  He was unable to

23   follow the conditions of bond while he was out on bond

24   pretrial when he was presumed innocent.

25        Secondly, the Court is aware of the fact that

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002551                    0002284

1      Mr. Herlihy either himself visited the grave site of

2      Robbie Carrillo, the deceased in this case, or sent

3      representatives of his family to the grave site, which

4      would perhaps not meet the conditions of having contact

5      with the victim or victim's family, but suggests

6      walking a fine line in following the Court's orders.

7          And once again when there's bond, supersedeas

8      bond, there's a presumption that he will not appear and

9      the defendant must show that he will appear on a bond.

10     And the fact that he was unable to follow orders or

11     that he walked a fine line in following orders suggests

12     that he would not be able to meet the conditions of any

13     bond pending appeal.

14         There are also other information that's been

15     provided to the Court that the Court can consider under

16     Younghans, and that is that the Court can consider the

17     probability of danger the defendant's release poses to

18     the community and the Court can consider his past

19     history and record which, as the Court is well-aware,

20     includes the number of injunctions and criminal

21     contacts of a violent nature that were reported in the

22     presentence investigation.  And also the Court can

23     consider the defendant's mental condition.

24         And how this comes into play, Your Honor, is that

25     the Court is aware, and there's been testimony

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002552          0002285

1    previously presented, that the defendant has

2    represented himself as being a Navy Seal, a

3    firefighter, an EMT, a nurse.  None of these facts are

4    true and correct.  They have not been verified.

5        The importance of this information in determining

6    whether a bond should be set is the fact that this

7    behavior suggests deceptiveness, it suggests that this

8    defendant is able to manipulate and pose himself as

9    others or to impersonate himself.  It also shows that

10   the defendant is willing to take risks and that such

11   behavior is conducive to taking the risk of fleeing

12   should his appeal be affirmed.

13       So to close, Your Honor, I believe there are at

14   least five reasons why bond should not be set in this

15   case:  Severity of the punishment imposed, defendant's

16   position as to that punishment, that he doesn't deserve

17   it, he shouldn't have to answer for it, no attachment

18   to the community, his past history while out on bond

19   and also his past history of representing himself as

20   persons he is not, which suggests that he would take

21   the risk to flee by representing himself as someone

22   else.

23       THE COURT:  I just have one question in regard to

24   the law.  I'm not seeing in these cases any basis for

25   the -- to consider that the defendant believes he

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5279

0002286

1    should not serve the sentence as a basis for the Court

2    to deny the motion for supersedeas bond.

3         **MS. SINGER:**  What I would say, Your Honor, is that

4    there has been no showing by the defendant, there's

5    been no testimony by the defendant that he said,

6    "Judge, if the appeal is affirmed, I understand I'm

7    responsible and accountable and I will turn myself in."

8         Instead, at the time of sentencing, what the

9    defendant told you was, "I didn't do it.  That's why I

10    didn't take a plea."  And so what that's telling the

11    Court is that, "I don't want to answer for this."  And

12    I think it's information that suggests that he will not

13    turn himself in if his appeal is affirmed.

14         **MR. GROLAND:**  And we disagree with that analysis,

15    Your Honor, absolutely, just to make sure the Court

16    understands.  Just very briefly in response, Your

17    Honor.

18         **THE COURT:**  Well, let me say first of all say that

19    as a matter of law I am finding that the defendant's

20    position in regards to the sentence is not a factor

21    that this Court can consider in relation to the

22    supersedeas bond.  Now, if there's anything in addition

23    to that you want to --

24         **MR. GROLAND:**  My client pointed out to me that he

25    wanted Your Honor to know that the reason why his

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002554      0002287

1    parents are not here is his dad has recently been

2    diagnosed with cancer and in fact is in surgery today

3    in Tampa and therefore that's why they're not here.

4        As far as his ties to the community, indeed he

5    does have ties to this community.  He's got friends

6    here, one of whom was actually interviewed and his name

7    escapes me.  What was his name?  Patrick Minor.  And

8    there's a statement from him about his knowledge of

9    Brian Herlihy in the presentence investigative report.

10   That's all I have.

11       **THE COURT:**  Okay.  The motion for supersedeas bond

12   is denied for the following reasons:

13       Number one, Mr. Herlihy has virtually no

14   attachments to this community, and in fact his criminal

15   history includes multi-jurisdiction and in fact

16   multi-states.

17       Number two, the severity of the sentence.  The

18   length of the sentence is such that the Court is

19   considering that in regard to denying the motion for

20   supersedeas bond.

21       Number three, Mr. Herlihy has multiple failures to

22   appear in other jurisdictions.

23       Number four, Mr. Herlihy has previously violated

24   conditions of the Court for release.

25       Number five, Mr. Herlihy has, in addition to the

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002555          0002200

1  violations of the conditions of pretrial release, also

2  been accused of additional criminal conduct while on

3  release pending trial or resolution of the case that is

4  before this Court.

5  Number six, Mr. Herlihy's criminal record and

6  history indicates a tendency to violence creating a

7  danger in the community.

8  Number seven, the nature of his history also

9  indicates a lack of impulse control supporting a

10  concern that he might be a flight risk.

11  And, number eight, Mr. Herlihy has a history, an

12  extensive history of deception, meaning that his

13  representation to the Court that he would reappear

14  cannot be relied upon in any manner whatsoever, and in

15  fact any information he might give to parole,

16  probation, to the Court could not be considered in

17  light of keeping tabs on him in the meantime.

18  For all of those reasons, the motion for

19  supersedeas bond is denied.

20  **MS. SINGER:** I will do the order and I know the

21  written factors under Younghans have to be included and

22  I will have them in there, Your Honor.

23  **THE COURT:** Thank you.  Anything else on behalf of

24  Mr. Herlihy this morning?

25  **MS. SINGER:** No, ma'am.

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002556      0002209

1    MR. GROLAND:  No, Your Honor.  And just for the

2    record, we object to the ruling.

3         THE COURT:  Certainly.

4    MR. GROLAND:  Your Honor, we're about to file --

5    can Mr. Tedder just be heard briefly, Your Honor, on

6    the notice of appeal?

7         THE COURT:  Certainly.

8    MR. TEDDER:  We just have it prepared.  We hope

9    you have an order.

10   MR. GROLAND:  We've got the notice of appeal here

11   that we are going to file in court, Your Honor.  I'd

12   like to have the -- ask the Court to consider

13   appointing the Public Defender's Office for the purpose

14   of pursuing the appeal.

15        THE COURT:  Mr. Herlihy would have to file, of

16   course, a financial affidavit so that I could make a

17   determination as to whether or not he is in fact

18   indigent, and of course I would be glad to consider

19   that and appoint the Public Defender's Office, if

20   appropriate.

21   MR. GROLAND:  Can you do that now?  Your Honor, he

22   doesn't have a penny to his name and he can be put

23   under oath and indicate that to the Court.

24        THE COURT:  I'm sure we have a financial affidavit

25   right here.  He is already under oath in this

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002557,   0002290

1      proceeding and he may fill it out.

2          MR. GROLAND:  Okay.

3          THE COURT:  And I'll be glad to take a look at it

4      as soon as he does.

5          MR. GROLAND:  Thank you.  And, Your Honor,

6      Mr. Tedder corrected me, reminds me that the issue for

7      credit for time down in Broward has not been concluded.

8      Ms. Singer --

9          MS. SINGER:  Yes.

10         MR. GROLAND:  -- we're still getting information

11     down there and it's difficult.  Broward County on the

12     issue of credit for time.

13         MS. SINGER:  Yes.

14         MR. GROLAND:  So I would like to just get back to

15     the Court on that.  Within the next week or so we

16     should have it.

17         THE COURT:  We'll set it as soon as you're ready.

18         MS. SINGER:  We also have a hearing on

19     December 20th for restitution costs, so by that time we

20     should have it.

21         (Whereupon the Court heard other matters to come

22  before it.)

23         MR. GROLAND:  Your Honor, may I approach with the

24     affidavit?

25         THE COURT:  Yes.  Mr. Herlihy, you are under oath.

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5273

0002558    000229

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Understanding of course you have been

3     incarcerated for a lengthy period of time, I have no

4     question regarding the information you provided and I

5     find you are indigent and am appointing the Public

6     Defender's Office.

7          THE DEFENDANT:  Thank you, Your Honor.

8          MR. GROLAND:  Thank you.

9          *(Whereupon the Court heard other matters to come*

10    *before it.)*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 374-5278

0002559        0002292

REPORTER'S CERTIFICATE OF ACCURACY

STATE OF FLORIDA  )

COUNTY OF ALACHUA )


        I, Laurie Ann Chaffin, Registered Professional

Reporter and Notary Public in and for the State of Florida

at Large, do hereby certify that the **MOTION FOR SUPERSEDEAS**

**BOND** was taken in re:  The Circuit Court of the Eighth

Judicial Circuit, in and for Alachua County, Florida,

01-2000-CF-002753-A, THE STATE OF FLORIDA, Plaintiff, versus

**BRIAN HERLIHY,** Defendant, on the 22nd day of November A.D.,

2002;

        That I was authorized to and did report the

foregoing **Motion for Supersedeas Bond,** and that the

transcript, numbered 1 through and including 25, constitute

a true and correct transcription of my stenographic notes

taken aforesaid, which were reduced to printing under my

personal supervision.

    **IN WITNESS WHEREOF,** I have hereunto affixed my hand the

16th of April, A.D., 2003.


                                Laurie Ann Chaffin, Registered
                                Professional Reporter and
                                Notary Public in and for
                                the State of Florida

Laurie Ann Chaffin
Registered Professional Reporter
Eighth Circuit Level III Realtime Reporter
Eighth Judicial Circuit
(352) 974-5270

0002293