# EXHIBIT
# HH-1

21-6

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT OF FLORIDA

**BRIAN HERLIHY,**

          Appellant,

v.                                      CASE NO.   1D02-4766

STATE OF FLORIDA,

          Appellee.
_____/

ON APPEAL FROM THE CIRCUIT COURT
OF THE **EIGHTH** JUDICIAL CIRCUIT,
IN AND FOR **ALACHUA** COUNTY, FLORIDA

<u>**REPLY BRIEF OF APPELLANT**</u>
AND
<u>**ANSWER BRIEF OF CROSS-APPELLEE**</u>

NANCY A. DANIELS
PUBLIC DEFENDER
SECOND JUDICIAL CIRCUIT

**NADA M. CAREY**
ASSISTANT PUBLIC DEFENDER
FLORIDA BAR NUMBER **0648825**
LEON COUNTY COURTHOUSE
SUITE 401
301 SOUTH MONROE STREET
TALLAHASSEE, FLORIDA 32301
(850) 488-2458

ATTORNEY FOR APPELLANT

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS  . . . . . . . . . . . . . . . . . . ii

REPLY BRIEF OF APPELLANT/CROSS-APPELLEE . . . . . . . . . . 1

ARGUMENT

    THE TRIAL COURT ERRED IN RULING THE DEFENSE "OPENED
    THE DOOR" DURING THE CROSS-EXAMINATION OF CRYSTAL
    QUIRELLO AND FIREFIGHTER DENNIS MEREDITH AND
    ALLOWING THE STATE TO QUESTION THESE WITNESSES AS
    TO APPELLANT'S ALLEGED UNTRUTHFUL STATEMENTS

ANSWER BRIEF OF CROSS-APPELLEE  . . . . . . . . . . . . . . 9

ARGUMENT

    THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN
    EXCLUDING CATHY LONG'S TESTIMONY AS IRRELEVANT TO
    HERLIHY'S INTENT, THEN-EXISTING STATE OF MIND, OR
    KNOWLEDGE OF THE CONSEQUENCES..

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF FONT SIZE  . . . . . . . . . . . . . . . . 13

## TABLE OF CITATIONS

**CASES**                                                              **PAGE(S)**

Bozeman v. State, 698 So. 2d 629 (Fla. 4th DCA 1997)   . .  5,6

Brown v. State, 579 So. 2d 898 (Fla. 4th DCA 1991)   . . . .  4

Escobar v. State, 699 So. 2d 988 (Fla. 1997) . . . . . . . 10

Heath v. State, 648 So. 2d 660 (Fla. 1994) . . . . . . . . 10

Jones v. State, 440 So. 2d 570 (Fla. 1983) . . . . . . . . 11

Kelley v. State, 543 so. 2d 286 (Fla. 1st DCA 1989) . . . . 11

Kingery v. State, 523 So. 2d 1199 (Fla. 1st DCA 1988) . . . 10

McCrae v. State, 395 So.2d 1145 (Fla. 1980)   . . . . . . .  4

Robertson v. State, 829 So. 2d 901 (Fla. 2002) . . . . . .  5

Taylor v. State, 640 So. 2d 1127 (1st DCA 1994) . . . . . . 10

Thornes v. State, 485 So. 2d 1357 (Fla. 1st DCA),
    review denied, 492 So. 2d 1335 (1986)   . . . . . . . .  6


**CONSTITUTIONS AND STATUTES**

Florida Statutes (2000)
    Section 90.803(3)(a)   . . . . . . . . . . . . . . 9,10,11

**OTHER SOURCES**

Ehrhardt, Charles W. Florida Evidence (2004 ed.) . . . . 9,11

Florida Rules of Appellate Procedure
    Rule 9.210(a)(2)   . . . . . . . . . . . . . . . . . . 13

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT OF FLORIDA


BRIAN PATRICK HERLIHY,

      Appellant,

v.                **Case No.   1D02-4788**

STATE OF FLORIDA ,

      Appellee.

_____/


### REPLY BRIEF OF APPELLANT &
### ANSWER BRIEF AS CROSS-APPELLEE

#### ARGUMENT

#### ISSUE PRESENTED

THE TRIAL COURT ERRED IN RULING THE DEFENSE "OPENED THE
DOOR" DURING THE CROSS-EXAMINATION OF CRYSTAL QUIRELLO
AND FIREFIGHTER DENNIS MEREDITH AND ALLOWING THE STATE
TO QUESTION THESE WITNESSES AS TO APPELLANT'S ALLEGED
UNTRUTHFUL STATEMENTS

In his initial brief, Herlihy argued the trial judge erred
in ruling the defense opened the door to Herlihy's untruthful
statements to Crystal Quirello and Don Meredith because the
defense never offered any misleading testimony that the state was
entitled to correct.

With respect to Crystal Quirello's cross-examination, the
state concedes the first question asked, "would it be fair to say
that Brian was always good with the baby?," which elicited the
response, "I trusted him," did not open the door to Herlihy's

-1-

fabrications because "the same response had already been elicited on direct." Ans. Br. at 11. The state asserts, however, that a later question, "Crystal, it is true, is it not, that at no time during your relationship with Brian Herlihy when he was around you and Robbie and alone with Robbie did you have any suspicion at all that he might want to injure your son?," which elicited the exact same response, "no, sir, I trusted him," somehow did open the door to Herlihy's fabrications. The state asserts it would have been fair for defense counsel to ask Crystal if she had ever seen Herlihy behave as if he could injure her son, but that by asking Crystal if she ever had any suspicion of Herlihy, counsel implied her trust was based on what she had seen or personally knew.

First, defense counsel did ask Crystal if she had ever seen Herlihy behave as if he could injure her son. The whole impetus of this line of questioning was to place before the jury <u>Brian's behavior</u> towards Robbie. Defense counsel asked whether Brian was always good with the baby, "<u>did Brian ever do anything</u> that caused you to feel concerned about Brian being alone with the baby?, "Did you hear about him <u>doing anything</u> from anybody else during that time?", and "Did you ever, when Brian was with Robbie, <u>ever see anything like anger or aggression or lack of patience or frustration on Brian Herlihy's part toward Robbie</u>?," "And didn't you personally feel that he loved the baby?" Defense

-2-

counsel also brought out during this line of questioning that Brian had spent time with Robbie, played with Robbie, changed his diapers, fed him, and bought him presents.  The subject matter of the cross-examination was Brian Herlihy's treatment of Robbie, not Crystal's trust or the basis of her trust.

Second, defense counsel did not invite the answer, and the response did not invite juror speculation on any issue relevant to the state's case.  Crystal obviously wanted to get across that she trusted Brian since she said so three times during her testimony in response to "yes" or "no" questions.  She could have answered, "no, I trusted him," in response to a number of questions, including, "Did Brian ever do anything that caused you to feel concerned about Brian being alone with the baby."  If she had, the door wouldn't have been open to the fabrications any more than it was opened when she said "I trusted him" after the final question asked.  The jurors had no reason to speculate Crystal's trust was based on anything other than Brian's loving behavior with the baby.  The jurors had no way of knowing he also told her he was a pediatric nurse.  The jury was not misled about anything.  Even if the jury wondered if she trusted him for other reasons, and it borders on the absurd to think the jury would have done so, so what?  The door opens to rebut an inference or innuendo <u>that is unfair</u> to the other party.  Crystal's trust was not at issue.  The issue was Brian's behavior towards Robbie.  In

-3-

short, the only basis for admitting the fabrication was to prove bad character.

Brown v. State, 579 So. 2d 898 (Fla. 4th DCA 1991), which the state cites as controlling, is completely inapposite. In Brown, the defendant lied, saying he had quit his job as a law enforcement officer, when, in fact, he had been fired, thereby enhancing his credibility. See also McCrae v. State, 395 So.2d 1145 (Fla. 1980)(Where defense counsel's question on direct "attempted to mislead jury into believing the defendant's prior record was inconsequential, prosecutor entitled to elicit nature of prior felony to "correct the delusive innuendo"). Here, Crystal testified Brian was always good with the baby, was never aggressive or angry with Robbie, had never done anything to suggest he could harm the child, and she trusted him. There was no "delusive innuendo" that needed to be corrected.

The state's answer with regard to Don Meredith's testimony fails for the same reason. The state asserts the "defense question implied Herlihy always spoke consistently with his claim of accidental injury." Ans. Br. at 6. If the questioning did imply this, then so what? How does allowing Meredith to say Brian said he was a trained firefighter rebut this inference? What relevant issue was the jury misled about? The state also says Herlihy's statement about being a firefighter and not being able to save Robbie was relevant to show Herlihy was aware his

-4-

injuries were severe.   There is no dispute that Herlihy was aware
the injuries were serious and there was plenty of testimony to
show that - - he called 911, he was frantic, he reported the
child was not breathing well, he administered CPR.   Again, the
only basis for admitting the statement was to prove bad
character.

The state also argues the fabricated statements weren't
prior bad acts, and the <u>Robertson/Bozeman</u>[1] rule doesn't apply
because the jurors had no way of knowing Brian's statement that
he was a pediatric nurse at Shands was false.   Ans. Br. at 14-15.
The jurors would have to be simpleminded not to know the
statement was false.   The jurors would know the statement was
false because Crystal did <u>not</u> say, "I trusted him <u>because he was</u>
a pediatric nurse," but, rather, "I trusted him because <u>he told</u>
<u>me</u> he was a pediatric nurse."   Second, since he attempted to
revive the child and the child was taken to Shands, if he really
were a nurse, that information would have come out during the
trial.   Furthermore, the trial judge found, and the state agreed,
the fabrications were improper character evidence, irrelevant,
and prejudicial, which is why they were excluded in the state's
case-in-chief.   The only valid basis for admitting them would be
if the door were opened with misleading testimony.

---

[1] <u>Robertson v. State</u>, 829 So. 2d 901 (Fla. 2002); <u>Bozeman v.</u>
<u>State</u>, 698 So. 2d 629 (Fla. 4th DCA 1997).

For the same reason, the state's reliance on <u>Thornes v.</u>
<u>State</u>, 485 So. 2d 1357 (Fla. 1st DCA), <u>review denied</u>, 492 So. 2d
1335 (1986), is misplaced.  In <u>Thornes</u>, the issue was simply
whether the testimony sought on redirect was within the scope of
cross-examination.  <u>Thornes</u> did not involve otherwise
inadmissible testimony, as here.  Indeed, the excluded testimony
in <u>Thornes</u> "related to the critical issue of whether or not the
prosecution's purported sole eyewitness was present at the scene
of the shooting" and "was competent proof of a relevant and
material fact."  <u>Id</u>. at 1359.

The state also asserts <u>Bozeman v. State</u>, 698 So. 2d 629
(Fla. 4th DCA 1997), is inapplicable because the disputed
testimony on redirect did not imply any bad acts or impugn
Herlihy's character.  Evidence that a person has lied about his
employment, falsely held himself out as a pediatric nurse and
firefighter, falls under prior bad acts, or bad character
evidence.  <u>Bozeman</u> is on all fours with this case, and here, as
in <u>Bozeman</u>, defense counsel's questions were "innocuous" and
"hardly the type of deceptive conduct by a defendant that opens
the door to evidence of prior bad acts."  <u>Id</u>. at 631.

At page 24, the state asserts defense counsel's questions to
Crystal were "broad and vague."  The questions were neither broad
nor vague.  The questions were precise and specifically
formulated to elicit a "yes" or "no" answer.

-6-

Finally, the state asserts the error was harmless because the evidence at trial showed Robbie's injuries were characteristic of impact and shaking and were not caused by rebleeding of a pre-existing chronic subdural hematoma because the medical examiner did not find evidence of a chronic subdural hematoma during the autopsy. This was the testimony of some of the state's experts; however, the defense experts said the injury was consistent with a rebleed of a chronic subdural hematoma and the injuries could have occurred just as Brian described. Furthermore, even some of the state's witnesses said the radiographic evidence showed Robbie had a pre-existing chronic subdural hematoma. In determining whether an error may be deemed harmless, the question is whether the state has shown beyond a reasonable doubt the error did not contribute to the conviction. Here, the improper evidence that Brian had lied about being a nurse and a firefighter may well have tipped the scales towards conviction. The jury may have concluded that if he fabricated facts about his employment, he also fabricated the story about how he found Robbie wedged in the bed. The state makes much of Helen Legall's testimony regarding Brian's pre-arrest statements that he swung the baby, rough-housed with the baby. However, Legall taped only 20 minutes of the hours-long conversation with Brian, and conveniently, the most damaging statements were not recorded. Furthermore, even under Legall's version of the

-7-

statements, Brian said the baby was laughing when he was swinging him.  This court cannot gauge how the jury viewed this evidence, or whether the improper testimony contributed to its view to appellant's detriment.  The state has not shown beyond a reasonable doubt the errors did not contribute to the verdict. Appellant is entitled to a new trial.

## ANSWER BRIEF ON CROSS-APPEAL

### Issue Presented

**THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN EXCLUDING CATHY LONG'S TESTIMONY AS IRRELEVANT TO HERLIHY'S INTENT, THEN-EXISTING STATE OF MIND, OR KNOWLEDGE OF THE CONSEQUENCES.**

The state has not preserved this issue because the state never proffered the testimony. In its motion for reconsideration, the state asked the trial court to reconsider its ruling, or in the alternative, to proffer the testimony. Because the state never sought to proffer Cathy Long's testimony at trial, it has waived the issue for review.

Even if preserved, Long's testimony is inadmissible under the state of mind exception to the hearsay rule. Under section 90.803(3)(a), Florida Statutes (2000), a statement of the declarant's "then-existing mental or emotional condition" is admissible when offered to prove the declarant's state of mind "at that time or at any other time when such state is an issue in the action."

Herlihy's statement does not fit within this provision, first, because it was not a statement of his then-existing state of mind. At the time he made the statement, he was not frustrated, nor did he feel like shaking the baby. The baby was happy and not crying when he spoke to Cathy Long. Under section 90.803(3)(a), the statement must relate to the person's "state of mind at the time the statement was made." Charles W. Ehrhardt,

-9-

Florida Evidence, at 769 (2004 ed.).  If the person is relating a
state of mind at some prior time, section 90.803(3) does not make
it admissible.  Id.; see Heath v. State, 648 So. 2d 660, 665
(Fla. 1994)(no error to exclude hearsay statement offered under
803(3)(a) state-of-mind exception where Heath's state of mind at
the time not at issue); Taylor v. State, 640 So. 2d 1127 (1ˢᵗ DCA
1994)(trial court did not abuse its discretion in excluding
hearsay statements of victim offered to refute appellant's claim
victim consented to sexual relations, where statements were made
some time before crime was committed); Kingery v. State, 523 So.
2d 1199 (Fla. 1ˢᵗ DCA 1988)(declarant's statements indicating his
peaceful and happy state of mind five hours before shooting not
admissible because not probative of his state of mind at time of
murder).

Herlihy's statement to Cathy Long also is not admissible
under Section 90.803(3)(a)(2), which provides a declarant's
statement of then-existing state of mind is admissible to prove
or explain the declarant's subsequent conduct.  Under this
provision, "[a] statement of intent to do an act in the future is
admissible as circumstantial evidence to infer the act was done."
Ehrhardt, at 770.  Although the cases cited by the state in its
brief fall under this exception, see Escobar v. State, 699 So. 2d
988 (Fla. 1997)(Statement of defendant "that he carried a gun
and he would kill a police officer before he would go back to

-10-

jail" admissible under 90.803(3)(a)(1),(2) as a "statement of a plan establishing appellant's then existing state of mind and explaining his subsequent conduct"); <u>Jones v. State</u>, 440 So. 2d 570 (Fla. 1983)(Defendant's statement seven days before murder that "he was tired of the police hassling him, he had guns, too and intended to kill a pig" admissible under 90.803(3)(b)(2)), Brian's purported statement to Long does not fall under this provision because it was not a statement of intent but rather a statement regarding how he had felt in the past.  The trial court correctly ruled the statement inadmissible under section 90.803(3).

The state also asserts Long's statement to Herlihy to step back and not pick up the baby is admissible to prove Herlihy knew shaking a baby could cause injury.  The state contends Herlihy "certainly" knew why Long was telling him to "take a break."  It is well-settled that under 90.803(3), the declarant's statement is not admissible to prove another person's state of mind. Ehrhardt, at 766; <u>see, e.g.</u>, <u>Kelley v. State</u>, 543 so. 2d 286, 288 (Fla. 1st DCA 1989)("Evidence is not ordinarily admitted under the state of mind exception to prove the state of mind or motive of someone else other than the declarant.").  The trial court correctly ruled it would be pure speculation to assume Long's statement to Brian "to take a break" proved Brian knew shaking was wrong or could be injurious.

-11-

Furthermore, even if Long's testimony were relevant, any probative value it had was outweighed by the danger of unfair prejudice. In its motion for reconsideration, the defense argued "the probative value, if any, was substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury." The trial judge did not abuse her discretion in excluding this testimony.

Finally, given Brian's acquittal of any intent to injure the child, this issue will not be relevant on retrial.

## CONCLUSION

Based on the foregoing argument, reasoning, and citation of authority in this and the Initial Brief, appellant asks this Court to reverse his conviction and remand for a new trial.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a copy of the foregoing has been furnished by delivery to Charlie McCoy, Assistant Attorney General, The Capitol, Plaza Level, Tallahassee, Florida , and a copy has been mailed to appellant, **BRIAN HERLIHY**, #G06137, Marion Correctional Institution, Post Office Box 158, Lowell, FL 32663-0148, on this date, June 29, 2004.

## CERTIFICATE OF FONT SIZE

I HEREBY CERTIFY THAT, pursuant to Florida Rule of Appellate Procedure 9.210, this brief is typed in Courier New 12 Point.

Respectfully submitted

**Nada M. Carey**
Assistant Public Defender
Fla. Bar No. 648825
Leon County Courthouse, Ste. 401
301 S. Monroe Street
Tallahassee, FL 32301
(850) 488-2458

**ATTORNEY FOR APPELLANT**

-13-