# EXHIBIT HH-2


B
7/1/04

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT OF FLORIDA

BRIAN HERLIHY,

    *Appellant/Cross-Appellee,*

v.                                    CASE NO. 1D02-4788

STATE OF FLORIDA,

    *Appellee/Cross-Appellant.*
_____/

Docketed
7/1/04
Florida Attorney General
pdt

On Appeal from the Circuit Court
of the Eighth Judicial Circuit,
in and for Alachua County, Florida

## STATE'S REPLY BRIEF AS CROSS-APPELLANT

CHARLES J. CRIST, JR.
ATTORNEY GENERAL

CHARLIE MCCOY
Senior Assistant Attorney General
Florida Bar No. 333646

Office of the Attorney General
The Capitol, Suite Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 922-6674 (fax)

*Counsel for Appellee/Cross-Appellant*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF CITATIONS | i |
| ARGUMENT | 1 |

### ISSUE II
*[State's Issue on Cross-Appeal]*
DID THE TRIAL COURT ABUSE ITS DISCRETION BY EXCLUDING HERLIHY'S ADMISSION TO A BAILIFF, AND THE BAILIFF'S ADMONISHMENT TO HIM, BOTH MADE DURING A CONVERSATION BEFORE THE MURDER?

|  |  |
|---|---|
| B. Preservation | 1 |
| C. Merits | 2 |
| CONCLUSION | 7 |
| CERTIFICATES OF SERVICE *AND* COMPLIANCE WITH RULE 9.210 | 7 |

## TABLE OF CITATIONS

**Cases** — Page(s)

Connor v. State, 803 So. 2d 598 (Fla. 2001),
  *cert. den.* 535 U.S. 1103 (2002) . . . 2

Escobar v. State, 699 So. 2d 988 (Fla. 1997),
  *cert. den.* 523 U.S. 1072 (1998) . . . 2-4

Griffin v. State, 866 So. 2d 1 (Fla. 2003) . . . 6

Heath v. State, 648 So. 2d 660 (Fla. 1994),
  *cert. den.* 515 U.S. 1162 (1995) . . . 1,3

Kelley v. State, 543 So. 2d 286 (Fla. 1st DCA 1989) . . . 4

Kingery v. State, 523 So. 2d 1199 (Fla. 1st DCA 1998) . . . 3

Taylor v. State, 640 So. 2d 1127 (Fla. 1st DCA),
  *rev. den.* 649 So.2d 235 (Fla. 1994) . . . 3

Terrell v. State, 27 S.W.3d 423, 426 (Ark. 2000) . . . 4

**Other Authority**

§90.104(1)(b), Florida Statutes . . . 1

§90.803(3)(a)1 & 2 , Florida Statutes . . . 2,3

§827.03(1)(a)&(b), & (2)(c), Florida Statutes . . . 6

## ARGUMENT

## ISSUE II

DID THE TRIAL COURT ABUSE ITS DISCRETION BY EXCLUDING HERLIHY'S ADMISSION TO A BAILIFF, AND THE BAILIFF'S ADMONISHMENT TO HIM, BOTH MADE DURING A CONVERSATION BEFORE THE MURDER?

### B. Preservation

Herlihy first asserts the State failed to preserve this issue by not proffering Deputy Long's testimony. (reply/x-answer brief, p.9). He mis-reads the record.

This issue was placed before the court by Herlihy's motion in limine; defense counsel described Long's testimony. (R26:2810-11). The prosecutor read directly from the two pertinent pages of Long's deposition, quoting the testimony at issue. (R26:2813-14). Done without objection, the State thus proffered the testimony. *See* Heath v. State, 648 So.2d 660, 665 (Fla. 1994), *cert. den.* 515 U.S. 1162 (1995) (rejecting State's point that exclusion of certain testimony was not preserved, when the trial court was "adequately informed as to the nature of the statement and made a ruling that it was inadmissible hearsay"). *See also* §90.104(1)(b), Florida Statutes (declaring reversible error may be predicated on exclusion of evidence, when among other things "the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked").

When it moved for reconsideration, the State moved in the alternative to proffer the testimony again. (R1:103). The trial court denied the State's motion without a hearing (R1:137), making

1

a live re-proffer moot. Herlihy cannot reasonably maintain the State waived the issue by affirmatively seeking a live re-proffer when it moved for reconsideration.

### C. Merits

One to three months before he killed the child, Herlihy voluntarily conversed with Cathy Long, a deputy sheriff working as a bailiff. He remarked that sometimes when the child would not quit crying, he felt like picking him up and shaking him. Long briefly attended to other business, and returned to admonish: "When that happens, just step back. Don't pick them up. Take a few minutes out." (R26:2814).

Herlihy's first contends his statement to Deputy Long does not fit the hearsay exception in §90.803(3)(a), Florida Statutes, because "[a]t the time he made the statement, he was not frustrated nor did he feel like shaking the baby." (reply/x-answer brief, p.9). To the contrary, Herlihy admitted his ongoing state of mind. Even in the relative calm of speaking to Long, he was aware he "sometimes" felt like shaking the baby. Herlihy did NOT say he "used" to feel like shaking the child, or he "once" felt like shaking the child. Instead, he admitted to "sometimes" feeling that way. His current state of mind was revealed; the baby's crying was merely the triggering event.

Also, this point cannot be squared Escobar v. State, 699 So.2d 988, 998 (Fla. 1997), cert. den. 523 U.S. 1072 (1998); *partially abrogated on other grounds*, Connor v. State 803 So.2d 598 (Fla. 2001), cert. den. 535 U.S. 1103 (2002). There, the court concluded

2

Escobar's statement to a witness, that he "carried a gun and he "would [e.s.] kill a police officer before he would go back to jail," was admissible under §90.803(3)(a)1 & 2; as it was relevant to motive and then-existing state of mind, and to explaining subsequent conduct. *Id.* at 998.

The court noted the statement was made before the crime, to a neighbor (*id.* at 994 & 998), but did not further explain. However, nothing indicates Escobar was in a murderousrage, or cold-blooded but desperate mood, when he made the statement. Still, the statement was admissible to show his state of mind that, later confronted with the opportunity, he would kill an officer. By analogy to Escobar,[1] Herlihy's statement to Long was admissible.

Next, Herlihy claims his statement was not one of "intent" but of how he had felt in the past. (reply/x-answer brief, p.11). Such contention ignores reality. Long saw him taking care of the child he later killed. Herlihy said the baby was very colicky and cried a lot. (R26:2813, lines 20-3).

Under these circumstances, Herlihy candidly admitted his ongoing mental state, triggered by unstoppable crying--something certain to occur again. To use his terminology, only "simpleminded" (reply/x-answer, p.5) jurors would assume he was

---

[1] Escobar is more recent than Heath, in which the disputed statement was made a week after the crime. 648 So.2d at 665. It was decided by a higher court than were Taylor v. State, 640 So.2d 1127, 1138 (Fla. 1st DCA) (sustaining exclusion based on "remoteness in time" of statements), *rev. den.* 649 So.2d 235 (Fla. 1994); and Kingery v. State, 523 So.2d 1199 (Fla. 1st DCA 1998) (hearsay testimony about victim's statements made 5 hours before shooting improperly used to negate claim of self-defense).

3

talking just about the past. *Cf.* Terrell v. State, 27 S.W.3d 423, 426 (Ark. 2000) (observing, in a shaken baby death case, that a "jury need not lay aside its common sense in evaluating the ordinary affairs of life"). Because he was talking about his on-going state of mind, the statement was admissible under §90.803(3).

Herlihy did not speak as definitively as did the defendant in Escobar. He did not say he "would" or "was going to" shake the child if he could not get him to stop crying. However, given the real-world certainty the child would cry uncontrollably again, and the fact nothing he said indicated his feeling had changed; this lack of definitiveness went to weight, not admissibility. (*See* the cases cited at page 34 of the State's answer/cross-initial brief.)

Herlihy does not address the State's main point, that Long's statement to him was not hearsay as it was not being offered for the truth of the matter. Instead, he accurately quotes Kelley v. State, 543 So.2d 286 (Fla. 1st DCA 1989), for the proposition that "evidence is not *ordinarily* admitted under the state of mind exception to prove the state of mind or motive of someone other than the declarant." [e.s.]. *Id.* at 288. However, as the quoted language implies, such evidence can be admitted to prove another's state of mind under these, non-ordinary circumstances:

> 1) the defendant claims self defense under circumstances which can be rebutted by the victim's statements that he feared the defendant; 2) the defendant claims the victim committed suicide; or 3) the defendant claims the victim's death was accidental.

*Id.*

4

Among other things, Herlihy urged in closing that the child aspirated on milk. (R21:2277). Pointedly, defense counsel argued, in conjunction with explaining the child's alleged pre-existing injuries, that the child was found wedged in between the mattress and bedframe. (R21:2278-9, 2284). Defense counsel described testimony to the effect that re-bleeding of a prior injury caused a seizure, in turn causing the child to become trapped in the bed; or that the child rolled into the "crevice" between the mattress and the bedframe, thereby causing a seizure. (R21:2294, 2315, 2320). Counsel then argued Herlihy shook the baby to revive, not injure. (R21:2353). Counsel clarified that Herlihy found the child wedged between the mattress and the bedframe, and that a prior injury (chronic subdural hematoma) caused the child to vomit and then suffocate. (R21:2368-9).

All of these possibilities are variations on a theme-- accident. Therefore, Long's statement to Herlihy, which warned him against shaking the baby, was admissible and relevant to rebut his claim of accident. In particular, knowledge that shaking was injurious would rebut the claim of shaking to revive without intending to harm. Deputy Long was not the victim. However, if the victim's statement can be admitted when the defendant claims accident, then it follows that her statement was admissible.

In a short paragraph not accompanied by cites to authority, Herlihy next asserts the probative value of Long's testimony was outweighed by the danger of unfair prejudice. Without citing the

5

record, he mentions the defense argued such in "its motion for reconsideration." [sic]. (reply/x-answer brief, p.12).

Nothing more is argued. Mere reference to a point raised below does not preserve an issue on appeal. See <u>Griffin v. State</u>, 866 So.2d 1, 7 (Fla. 2003) (noting that Griffin attempted to incorporate all claims, etc. from his postconviction motion into his brief, and declaring: "However, merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.") [internal quote & cite omitted]. Herlihy's "unfair prejudice" claim has been waived.

Herlihy's last point contends this issue will not be relevant on any retrial, as he was "acquitt[ed] of any intent to injure the child." (reply/x-answer brief, p.12). Stated correctly, he was acquitted for the greater offenses of first and second degree murder, but convicted for the lesser included offense of manslaughter. Shown as still-lesser offenses were aggravated child abuse and child abuse. (R1:170). "Child abuse" as defined by §827.03(1)(a)&(b), Florida Statutes, requires intentional acts. "Aggravated" child abuse, as defined by §827.03(2)(c), requires knowing or willful abuse causing great bodily harm.

Herlihy contends the child's death was an accident. If he did so on any retrial, Long's testimony would be relevant to show he knew shaking the baby was injurious, and relevant to prove aggravated child abuse and child abuse. If the State attempts to adduce Long's testimony, the trial court will address any objection

6

based on undue prejudice; but in light of the evidence then-adduced. Herlihy's conjecture about the relevance of Long's testimony on retrial is not a ground to affirm the disputed ruling.

## CONCLUSION

The court's ruling which allowed the disputed re-direct exam by the State must be affirmed, thereby upholding Herlihy's conviction and mooting Issue II. If the State's issue on cross-appeal is reached, the trial court's exclusion of Deputy Long's testimony must be reversed.

## CERTIFICATES OF SERVICE AND COMPLIANCE WITH RULE 9.210

I certify a copy of this CROSS-REPLY BRIEF has been sent by U.S. mail to Herlihy's attorney: **NADA M. CAREY**, Assistant Public Defender, Leon County Courthouse, 301 South Monroe Street, Suite 401, Tallahassee, Florida 32301; on July 1st, 2004. I also certify this brief complies with Fla. R. App. P. 9.210.

Respectfully submitted,

**CHARLES J. CRIST, JR.**
**ATTORNEY GENERAL**

_/s/ Charlie McCoy_
CHARLIE MCCOY
Senior Assistant Attorney General
Florida Bar No. 333646
Office of the Attorney General
The Capitol, Suite Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300